## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**OMAROSA MANIGAULT NEWMAN,**

**Defendant.**

**Civil Action No. 1:19-cv-1868 (RJL)**

## PLAINTIFF UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant's opposition confirms the crux of Plaintiff's motion:  None of the discovery from which Plaintiff seeks protection bears on the *only* disputed issue in the case—whether Defendant's knowing failure to file a financial disclosure termination report for well over a year past the 30 day deadline to do so was "willful[]."  5 U.S.C. app 4 § 104(a)(1).  Instead of focusing on the merits of the relevant claim, Defendant seeks discovery of the President and other senior government officials and Plaintiff's former trial counsel in order to pursue conspiracy theories and establish facts as to which there is no dispute.  Plaintiff's Motion for a Protective Order should be granted.

## I.       The Scope of Permissible Discovery in this Action Is Narrow

An individual is liable under the Ethics in Government Act (EIGA) if she "knowingly and willfully fails to file or report any information that [she] is required to report" under the statute. 5 U.S.C. app. 4 §104(a)(1). Defendant does not dispute her failure to file a report within the time required by statute, or well beyond that time. Motion to Dismiss Plaintiff's Corrected Complaint for Failure to State a Cause of Action Upon Which Relief Can Be Granted ("Mot. to Dismiss") Ex. D. She does not dispute her awareness of the requirement that she do so. *Id.* She disputes only whether her lengthy failure to file was "willful." *See, e.g.*, Joint Status Report at 3, 5, ECF No.11. In these circumstances, the issue under dispute concerns Defendant's course of conduct in the face of numerous reminders about, offers of assistance with, and warnings about the consequences of failing to submit her termination report starting in December 2017. *See, e.g.*, Compl. ¶¶ 14-23, ECF No. 2-1; Mot. to Dismiss ¶ 14 & Ex. B, ECF No. 5; *id.* Exs. C & D. For the reasons set forth below and in Plaintiff's opening brief, none of the discovery at issue in the instant motion falls within that scope or is otherwise justified.

## II.      There Is No Basis for Taking the President's Deposition or Conducting Discovery into the White House's Referral of this Action

Defendant has the burden of establishing that "extraordinary circumstances" exist to be permitted to take the deposition of high-level government officials. *See, e.g.*, *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). This burden is especially robust when the official in question is the President of the United States. The Supreme Court "has held, on more than one occasion, that '[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery,' and that the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it."

*Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385 (2004) (citations omitted).

Defendant has wholly failed to meet this extraordinary burden in seeking the deposition of the President in this case.  She does not even attempt to establish that the President has *any* knowledge about the claim at issue in this case—her knowing and willful failure to timely file a termination report.  Indeed, Defendant does not suggest the President has any knowledge about her financial disclosure report *at all*.  For that reason alone, Plaintiff's motion to preclude the Defendant from taking the President's deposition should be granted.

The only basis Defendant has offered for deposing the President is an unsupported conspiracy theory premised on legally irrelevant and verifiably false premises.  Defendant claims that the President's testimony will support her contention that this litigation is retaliatory because the President tweeted that he was suing her for "violating [her] confidentiality agreement[]."  Defendant Omarosa Manigault Newman's Response to Plaintiff's Motion for Protective Order ("Opp'n") at 9, ECF No. 14.   In support of this argument, Defendant repeats the assertion from her motion to dismiss that "[t]his is the only lawsuit which exists between Mr. Trump, his agents or the United States Government and Ms. Manigault Newman."  *Id.*; Mot. to Dismiss ¶ 27.  The cited tweet, which expressly refers to violations of "confidentiality agreements," not EIGA, apparently refers to the arbitration that President Trump's campaign filed against Defendant claiming that she violated her *confidentiality agreement* with the campaign, in which Defendant is represented by the same counsel as in the instant case.[1]  *See Donald J. Trump for President, Inc.*

---

[1] Indeed, a website publishing pleadings from the arbitration indicates that the arbitration panel issued a ruling just two days before the referenced tweet, and just two weeks before Defendant filed her Motion to Dismiss in this case.  *See* Decision and Order Denying Protective Order, *Donald J. Trump for President, Inc. v. Omarosa Manigault Newman*, (American Arbitration Association     Aug.     29,     2019)     *available     at*     https://trumpsnda.com/wp-

*v. Omarosa Manigault Newman*, (American Arbitration Association Aug 14, 2018) *available at* https://trumpsnda.com/wp-content/uploads/2019/09/Statement-of-Claim-Final.pdf (last visited Nov. 27, 2019); Response to Statement of Claim for Breach of Written Contract, *Donald J. Trump for President, Inc. v. Omarosa Manigault Newman* (American Arbitration Association Sept.14, 2018) (signed by John M. Phillips) available at https://trumpsnda.com/wp-content/uploads/2019/09/Motion-to-Dismiss-Motion-to-Stay-and-Response-to-Statement-of-Claim-for-...1.pdf (last visited Nov. 27, 2019).

But the propriety of the referral of this matter, in any event, is not relevant to the willfulness of Defendant's EIGA violation.  As set forth in Plaintiff's motion, and unrebutted in Defendant's opposition, the referral of Defendant's failure to timely file her termination report was *mandatory*. 5 C.F.R. § 2634.701.  As such, nothing about the referral is relevant to the claim at issue.

Defendant seeks to avoid this conclusion in two ways.  Neither is valid.  First, Defendant contends that the referring official's "reasonable cause to believe" a violation by Defendant required more than knowing that she had failed to timely submit the form despite repeated reminders and outreach from ethics officials.  5 C.F.R. § 2634.701; *see, e.g.,* Def.'s Mot. to Dismiss Ex. B.  That is not the case.  *See, e.g., United States v. Hunter*, No. 1:14-cv-442-JEB (D.D.C. Aug. 27, 2014) (finding willfulness where defendant ignored "repeated letters . . . to remind him of his obligations" under EIGA).

More fundamentally, Defendant contorts the statute to suggest that the referral is an element of the claim, which it is not.  EIGA provides that "[t]he Attorney General may bring a civil action in any appropriate United States district court against any individual who knowingly and willfully falsifies or who knowingly and willfully fails to file or report any information that

---

content/uploads/2019/09/Decision-and-Order.pdf (last visited Nov. 27, 2019); *see generally* https://trumpsnda.com/omarosamanigaultnewman/.

such individual is required to report . . . ." 5.U.S.C. app 4 § 104(a)(1).[2]  An EIGA claim does not

require the *referral* to be substantiated for Plaintiff to prevail, so long as the *claim* is proven.  Thus,

the propriety of the referral has no bearing on the merits of the claim here and clearly does not

support a viable defense to Defendant's EIGA violation.  Discovery into this issue—including the

deposition of the President—should be prohibited.

### III.    There are No  "Exceptional Circumstances" that Warrant the Depositions of General Kelly or Administrator Dhillon

Defendant has similarly failed to meet her burden of establishing that exceptional

circumstances exist to justify the depositions of former White House Chief of Staff John Kelly and

current Acting Administrator of the Drug Enforcement Administration, Uttam Dhillon.  *See, e.g.,*

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3

(D.D.C. Sept. 4, 2015) ("[C]ourts recognizing this principle protecting high-ranking officials—

sometimes referred to as the 'apex doctrine'—require the party seeking to depose the official to

make a certain showing: '[T]o depose a high-ranking government official, a party must

demonstrate exceptional circumstances justifying the deposition—for example, that the official

has unique first-hand knowledge related to the litigated claims or that the necessary information

cannot be obtained through other, less burdensome or intrusive means.'") (citations omitted);

Plaintiff United States of America's Motion for Protective Order ("Mot.") at 5, ECF No. 13 (citing

cases).

---

[2] In her Opposition, Defendant concedes that she is not challenging the Department of Justice's decision to bring suit, but merely the referral.  Defendant is correct to abandon any attempt to challenge the Department's decision to bring suit; for the reasons set forth in Plaintiff's Motion, that decision is an exercise of prosecutorial discretion unreviewable in the circumstances here.  *See* Opp'n at 11 ("Nor is this a case in which we are questioning the prosecutors['] decision to file suit. Ms. Manigault Newman seeks information relating to the referral for prosecution, not the ultimate decision to prosecute.").

In her opposition, the only justification Defendant proffers for the depositions of General Kelly and Administrator Dhillon is establishing that her obligation to file a termination report under EIGA was not discussed at a December 2017 meeting. *See* Opp'n 6-8. But that information does not relate to the core issues in dispute, i.e. Defendant's failure to file a report in the face of the many reminders, warnings, and offers of assistance she received subsequent to this meeting. *See* Part I, *supra*. Moreover, it is not "unique first-hand knowledge related to the litigated claims" or information that "cannot be obtained through other, less burdensome or intrusive means." *Galan-Alvarez*, 2015 WL 5602342, at *3. Defendant herself attended the meeting and has already submitted into the record a recording that purports to capture the entire meeting with General Kelly and Administrator Dhillon that Defendant seeks to put at issue. *See* Mot. to Dismiss Ex. A. The depositions of these officials therefore is neither warranted under the apex doctrine nor proportional to the needs of the case, especially in light of the material already in Defendant's possession. *See Galan-Alvarez*, 2015 WL 5602342, at *3.

Defendant further suggests that because General Kelly is no longer White House Chief of Staff, she is not required to satisfy the "exceptional circumstances" standard. The apex doctrine, however, "is no less applicable to former officials than to current officials." *Galan-Alvarez*, 2015 WL 5602342, at *4. This is so because (1) "[t]he integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position" and (2) "'indiscriminate depositions of high-ranking government officials would . . . likely discourage' people 'from accepting positions as public servants' irrespective of whether those deposed were current or former officials." *Id.* (citations omitted). Accordingly, Defendant has failed to justify the deposition of General Kelly.

Defendant's argument with respect to Administrator Dhillon—that she is not required to satisfy the "exceptional circumstances" standard because the testimony sought from him concerns

his former position in the White House Counsel's office—actually cuts against her.  As the *current* head of a government agency, Administrator Dhillon's need to perform his duties without disruption is clear.  *See id.*  The depositions of General Kelly and Administrator Dhillon should be prohibited.

## IV.  Defendant Failed to Satisfy the Requirements to Depose Plaintiff's Former Trial Counsel

 "The practice of deposing opposing counsel . . . is generally disfavored in federal courts." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011). Defendant provides no basis to depart from the general rule here.

As set forth in Plaintiff's motion, opposing trial counsel's deposition is permissible only if "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information sought is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citation omitted).  Defendant has failed to make any such showing.

The only reason Defendant provides for seeking to depose Plaintiff's former trial counsel Ashley Cheung is that Ms. Cheung received emails from Defendant and her counsel about Defendant's personal effects left in the White House.[3]  However, in May 2019, when Defendant and her counsel first communicated with Ms. Cheung about Defendant's boxes of personal effects, Defendant's termination report was already well over a year late.  Moreover, Defendant had made clear a year earlier (when the report was already past due) that the boxes had nothing to do with her failure to file her termination report—admissions not addressed in her Opposition.  *See* Mot.

---

[3] Defendant offers no opposition to Plaintiff's request that she be precluded from taking the depositions of Plaintiff's current trial counsel and of former trial counsel James Gilligan.  *See* Mot. 8-11 and Proposed Order.  Accordingly, the motion should be granted as to these depositions.

at 10-11, 12-13 (noting Defendant's contention that the "only hold up [to completing the form] is the discrepancy of the date" and that from the boxes she "need[ed]" only "th[e] thumb drive with my [wedding] pictures on it").

Defendant's Opposition thus underscores that she cannot satisfy even the first prong of *Shelton*: All information Defendant claims Ms. Cheung has can be obtained from other sources. Defendant contends Ms. Cheung "communicated multiple times to [Defendant] and her counsel in regards to obtaining her boxes of financial information." Opp'n at 12. Defendant, her counsel, and the email communications themselves are alternative sources of the information Defendant seeks from Ms. Cheung. Accordingly, her deposition should not be permitted.[4]

Defendant—without citation to any authority—also appears to contend that Ms. Cheung's status as former, rather than current, trial counsel for Plaintiff requires a different analysis. Not so. The reasons depositions of opposing trial counsel are disfavored—that such depositions would "disrupt[] the adversarial system," "lower[] the standards of the profession," "add[] to the already burdensome time and costs of litigation," and contribute to a "'chilling effect' . . . on the truthful communications from the client to the attorney"—apply no less to the depositions of former counsel as to current counsel, and these burdens weigh strongly against Ms. Cheung's deposition here. *Shelton*, 805 F.2d at 1327.

Thus, whether under *Shelton* or Rule 26's proportionality standard, Ms. Cheung's deposition is unwarranted.

---

[4] Defendant also states that Ms. Cheung was "the only individual at the Department of Justice who spoke with [Defendant] prior to the filing of this action." Opp'n at 13. Defendant has conceded, however, that she is not challenging the Department of Justice's actions in bringing this action. *Id.* at 11.

**V.     Defendant's Termination Date Is Irrelevant Because Defendant Failed to Timely File Her Disclosure Report Under Any Possible Termination Date**

As set forth in Plaintiff's motion, Defendant's actual termination date is irrelevant to the case.  Under any possible termination date, Defendant's termination report, which she did not submit until *September 2019*, was long overdue.   In her opposition, Defendant nevertheless contends that discovery regarding her termination date is relevant because it "would have violated the EIGA had she submitted the termination financial report with the incorrect termination date." Opp'n at 14.  Even if true, *the fact of* "Defendant's actual termination date," *id.* at 13,  the subject on which she seeks discovery, has nothing to do with Defendant's submission of a report with incorrect information—an act within her control, not under the control of the individuals she seeks to depose. Defendant's dispute about her termination date thus provides no excuse for her failure to timely file her termination report.  Indeed, the termination report she eventually submitted contained no termination date at all—completely undermining her argument.[5]

**VI.    The Location and Chain of Custody of Defendant's Personal Effects Are Irrelevant**

Defendant argues that the location and chain of custody of the boxes of personal effects that she did not retrieve from the White House until July 2019 are relevant to the issue of the willfulness of her failure to timely file her termination report.

But the question here—unaddressed by Defendant in her Opposition—is whether depositions to establish the precise location or chain of custody of these boxes would be relevant or proportional to the needs of the case when there is no factual dispute (and indeed Plaintiff has offered to stipulate) that the boxes were in the custody of the White House, and not Defendant, from December 2017 to July 2019.  To pose this question is to answer it.  They are not.  *See* Fed. R. Civ. P. 26(b)(1) (factors assessing the proportionality of requested discovery include "the

---

[5] The "Termination Date" field on the report signed and submitted by Defendant in September 2019 was left blank.

importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, *the importance of discovery in resolving the*

*issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit*.")

(emphasis added).  Defendant's claim to the contrary is further undermined by the fact that until

recently, her only claimed need for the boxes was that she "need[ed] that thumb drive with my

[wedding] pictures on it."  Def.'s Mot. to Dismiss Ex. B.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiff United States of America's Motion

for Protective Order, the Court should grant this motion and enter Plaintiff's proposed order

precluding certain discovery in this action.


Dated: December 2, 2019               JOSEPH H. HUNT
                                      Assistant Attorney General

                                      ALEXANDER K. HAAS
                                      Branch Director

                                      JACQUELINE COLEMAN SNEAD
                                      Assistant Branch Director

                                      */s/ Christopher M. Lynch*
                                      Christopher M. Lynch
                                      D.C. Bar # 1049152
                                      Trial Attorney
                                      United States Department of Justice
                                      Civil Division,
                                      Federal Programs Branch
                                      1100 L Street, N.W.
                                      Washington, D.C. 20005
                                      Tel.: (202) 353-4537
                                      Fax: (202) 616-8470
                                      Email: christopher.m.lynch@usdoj.gov

                                      *Attorneys for Plaintiff*