## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:19-cv-1868 (RJL)** |
| **OMAROSA MANIGAULT NEWMAN,** | |
| **Defendant.** | |

## PLAINTIFF UNITED STATES OF AMERICA'S RENEWED MOTION FOR PROTECTIVE ORDER

In this action pursuant to the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 § 101 *et seq.*, there is only *one* disputed issue: whether the Defendant Omarosa Manigault Newman's knowing failure to timely file a financial disclosure termination report was "willful." Notwithstanding the narrow confines of the dispute, Defendant has expressed the intent to take numerous depositions of witnesses who have no ability to provide information bearing on this question, including both the President of the United States and Plaintiff's former trial counsel. In addition, Defendant has propounded interrogatories and document requests that likewise have no bearing on that issue and although requested to withdraw them, Defendant has refused.

Not only is the discovery Defendant seeks irrelevant to the dispute, but much of it is not permitted by law absent a heightened showing that Defendant cannot make. Specifically, Defendant cannot show that extraordinary circumstances warrant deposing high-ranking Executive Branch officials or former opposing counsel or that the Government's exercise of prosecutorial discretion here is subject to judicial review. Defendant also persists in obfuscating the issue before the Court by pursuing discovery concerning boxes of personal items that she failed to retrieve from the White House until after this action was filed that even she has contended is "irrelevant and inmaterial [sic]." Finally, Defendant also seeks to discover information surrounding her disagreement over whether her termination date was in January 2018 or earlier even though as of this action's filing, her termination report was well over a year overdue from even her own preferred termination date.

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Such an order is needed to protect the Government from the discovery that Defendant has pursued. Accordingly, Plaintiff moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c): (1) barring Defendant from deposing high-level Executive Branch officials and Plaintiff's trial counsel; and (2) precluding discovery regarding (a) Plaintiff's decision to bring this action, (b) Defendant's termination date, and (c) the location and chain of custody of personal effects Defendant left at the White House.

## FACTUAL BACKGROUND

Defendant, former Director of Communications for the Office of Public Liaison in the White House, was required by EIGA to file a financial disclosure report within 30 days of the termination of her employment. 5 U.S.C. app. 4 § 101(e). Defendant knew of this requirement. *See*

Motion to Dismiss Plaintiff's Corrected Complaint for Failure to State a Cause of Action Upon Which Relief Can Be Granted ("Def.'s Mot. to Dismiss") ¶¶ 13-15, ECF No. 5. Despite the repeated efforts by White House ethics officials to remind her of her obligation, to offer her assistance with the form, and to obtain her compliance—both before and after her report was due—Defendant did not file the required termination report.

On June 25, 2019, more than a year after Defendant failed to submit her termination report, Plaintiff brought this civil penalty action under EIGA. 5 U.S.C. app. 4 § 104(a)(1). The parties agree that the only issue in dispute is whether Defendant's failure to file her termination report was "willful." *See* Joint Meet and Confer Report at 5, ECF No. 11 (stating Defendant's Position that "Ms. Manigault Newman anticipates calling witnesses . . . in an effort to show that Ms. Manigault Newman did not 'willfully' fail to file her financial report."); *see generally* Def.'s Mot to Dismiss at 11-14 (disputing willfulness of Defendant's failure to file report).

Nonetheless, Defendant has indicated her intent to seek the depositions of President Trump, former White House Chief of Staff General John Kelly, the Acting Administrator of the Drug Enforcement Administration ("DEA") Uttam Dhillon, and Plaintiff's prior counsel in this action, Ashley Cheung and James Gilligan. *See* Declaration of Christopher M. Lynch in Support of Plaintiff United States of America's Renewed Motion for Protective Order ("Lynch Decl.") Ex. A (email from Defendant's counsel to Plaintiff's counsel asserting intent to depose President Trump, General Kelly, Administrator Dhillon, and Ms. Cheung); *id.* Ex. B (Defendant's Initial Disclosures listing President Trump, Gen. Kelly, Administrator Dhillon, Ms. Cheung, and Mr. Gilligan as potential witnesses). Defendant also contends that other individuals, including current Deputy Counsel to the President Scott Gast and Senior Associate Counsel to the President David Jones, have discoverable information related to the defense theories set forth in her unsuccessful motion to dismiss. *See id.* Specifically, Defendant contends (1) that this lawsuit stems from the President's

August 2019 tweet that he is "suing various people for violating their confidentiality agreements," Def.'s Mot. to Dismiss ¶¶ 26, 28; (2) that a putatively inaccurate termination date "contained on the first page of the electronic financial disclosure form prohibited Ms. Manigault Newman from completing the form," *id.* ¶ 10; and (3) that Defendant was prevented from completing the required report because "much of the information that [she] need[ed] to complete this termination report . . . was contained in" two boxes of personal effects that she retrieved from the White House in July 2019, *id.* ¶ 18.[1]

To obviate discovery into such irrelevant issues, Plaintiff proffered to stipulate that (a) "January 20, 2018, plus 30 days shall be used in this action as the filing deadline for Defendant's Executive Branch Personnel Public Financial Disclosure Report pursuant to Section 101(e) of the Ethics in Government Act, 5 U.S.C. app. 4 § 101(e)," and (b) "[t]wo boxes of the Defendant's personal effects remained in the White House from the end of Defendant's employment as Director of Communications for the Office of Public Liaison in the White House until July 12, 2019, when they were retrieved by the Defendant." Lynch Decl. Ex. C. Defendant, however, refused to agree to these stipulations. Lynch Decl. Ex. D. The United States therefore originally moved for protection from Defendant's contemplated discovery in 2019.[2] *See* Plaintiff's Motion for Protective Order, ECF No. 13. While that motion was pending, the Court issued a stay of discovery pending the Court's consideration of Defendant's then-pending Motion to Dismiss and denied the Government's motion for protective order as moot. *See* Minute Order of December 6, 2019. That stay lapsed upon the Court's denial of Defendant's motion to dismiss, and discovery since has

---

[1] For the reasons set forth below, these theories are both irrelevant and disproportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

[2] As of this filing, Defendant has not served a discovery request compliant with the Federal Rules of Civil Procedure for any of the depositions, but has propounded requests for admission and document requests. *See* Lynch Decl. Exs. E & F.

resumed. Because Defendant has refused to withdraw her discovery requests from which the Government sought protection, Plaintiff now renews its motion for protective order. *See* Lynch Decl. Exs. G & H.

## ARGUMENT

None of the challenged topics on which Defendant seeks discovery meets Rule 26's legal standard for permissible discovery. Under Rule 26, information that is not "relevant to any party's claim or defense *and* proportional to the needs of the case" is outside "the scope of discovery." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, the only issue in dispute is whether Defendant's failure to file the required termination report was willful. "An individual knowingly and willfully fails to comply with the EIGA's filing requirements when that individual 'intentionally disregards the statute or is indifferent to its requirements.'" *United States v. Gant*, 268 F. Supp. 2d 29, 33 (D.D.C. 2003) (citations omitted); *United States v. Hunter*, No. 1:14-cv-442-JEB (D.D.C. Aug. 27, 2014) (finding willfulness where defendant ignored "repeated letters . . . to remind him of his obligations" under EIGA). Thus, any permissible discovery should concern Defendant's course of action in the face of numerous reminders about, offers of assistance with, and warnings about the consequences of failing to submit her termination report.

Plaintiff therefore should be protected from discovery from high-level Executive Branch officials and Plaintiff's former trial counsel or about (a) Plaintiff's decision to bring this case, (b) Defendant's disagreement with her termination date, or (c) the location and chain of custody of Defendant's boxes of personal effects before she retrieved them. Accordingly, the Court should issue a protective order limiting the scope of discovery to Defendant's efforts (or lack thereof) to comply with her financial disclosure obligations and the efforts by White House personnel in that regard. *See* Fed. R. Civ. P. 26(c)(1).

I.    **Defendant Cannot Establish that "Extraordinary Circumstances" Warrant the Depositions of Any High-Ranking Executive Officials**

The Court should issue an order precluding Defendant from deposing the President of the United States, General John Kelly, and the Acting DEA Administrator from being deposed in this case. "[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quotation marks omitted); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify[.]"); *In re United States (Bernanke)*, 542 Fed. Appx. 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant"). Indeed, "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (citing *United States v. Morgan*, 313 U.S. 409 (1941)).

The reason for this standard is clear. "High ranking government officials have greater duties and time constraints than other witnesses" and, given the frequency that government policies and actions are litigated, their "time would be monopolized by preparing and testifying" if their testimony were not limited to extraordinary circumstances. *Kessler*, 985 F.2d at 512.

To meet the "extraordinary circumstances" standard, Defendant must "establish *at a minimum*, that the [officials] possess information essential to [her] case which is not obtainable from another source." *In re United States (Reno)*, 197 F.3d 310, 313-14 (8th Cir. 1999) (emphasis added and citations omitted). This information must be first-hand knowledge related to *the underlying claim being litigated. See Bogan v. City of Boston*, 489 F.3d 417, 423-25 (1st Cir. 2007) (high-ranking official's deposition is required only "where the official has firsthand knowledge

related to the claim being litigated"). "The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).

Defendant cannot meet that standard. The only issue in dispute in this case is whether Defendant's knowing failure to timely file her financial disclosure report was "willful." *See* 5 U.S.C. § 104(a)(1); Joint Status Report at 5, ECF No. 11. Defendant cannot show, however, that the President, General Kelly, or Administrator Dhillon has any first-hand knowledge bearing on that issue. Moreover, Defendant cannot claim that any of these high-level officials has information that cannot be obtained from other sources. Any such claim is belied by Defendant's Initial Disclosures which state the *identical* subject of "discoverable information" for each of the 15 witnesses identified. *See* Lynch Decl. Ex. B (identifying the President, General Kelly, Administrator Dhillon, and 11 other government officials as having knowledge of "Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report"). Because Defendant cannot meet the high standard for deposing high-level officials, the Court should order that she not be allowed to depose the President, General Kelly, and Administrator Dhillon.

## II.   There Is No Basis for Defendant to Obtain Discovery Regarding the Executive Branch's Decision to Bring this Action

Defendant should be precluded from seeking discovery into the Department of Justice's decision to bring this action and the Executive Office of the President's referral thereto. *See, e.g.,* Lynch Decl. Ex E at 3 ("Admit The President of the United States by and through himself or his office is the referring entity in this case."); *id.* Ex F at 5 ("Please produce any and all communication between the White House and Department of Justice in any way related to this case."); *id.* Ex. B (Defendant's Initial Disclosures listing "Executive Office of the President

employee whom [sic] allegedly referred this matter to the Department of Justice pursuant to 5 C.F.R. § 2634.701" as potential witness); *id.* Ex. A (email expressing the desire to depose "whoever appears on any and all referrals of this matter to the Department of Justice," and "anyone other than Donald J. Trump who controls the @therealdonaldtrump twitter account" and to seek "all referral documents and evidence."); Def's Mot. to Dismiss ¶¶ 26-28.

The Department's decision to file an EIGA action is an exercise of prosecutorial discretion that generally is unreviewable by the courts. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted) ("In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'")[3]; *United States v. Scott*, 631 F.3d 401, 406 (7th Cir. 2011) ("In order to ensure that prosecutorial discretion remains intact and firmly within the province of the Executive, judicial review over prosecutorial discretion is limited."); *United States v. Woods*, 576 F.3d 400, 409 (7th Cir.2009) (explaining that "[t]here is nothing that this court either could or should do about the prosecutorial discretion that is exercised at the charging stage"); *see also United States v. Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992) ("Though this was a claim for civil penalty rather than a criminal prosecution, the Government's interests here were essentially those that inform prosecutorial discretion in criminal matters."). Thus, Defendant should be foreclosed from seeking discovery on that subject.

Defendant's proposed discovery into the Department's decision to bring this action and the referral of this matter by the Executive Office of the President alternatively should be precluded

---

[3] In the rare circumstance where prosecutorial discretion is reviewable (not present here), the defendant must rebut the presumption that prosecutors act constitutionally by "clear evidence." *Armstrong*, 517 U.S. at 464.

as irrelevant. Neither topic has any bearing on the sole issue in dispute, namely, whether Defendant's failure to file her termination report was "willful." 5 U.S.C. app 4 § 104(a)(1); *Gant*, 268 F. Supp. 2d at 33. The irrelevance of the latter is also clear from the regulations implementing EIGA. By regulation, "[t]he head of each agency, each Secretary concerned, or the Director of the Office of Government Ethics, as appropriate, *must* refer to the Attorney General the name of any individual when there is reasonable cause to believe that such individual has willfully failed to file a public report or information required on such report, . . . required to be reported under this part." 5 C.F.R. § 2634.701(a) (emphasis added). Thus, regardless of any referring official's state of mind, the outcome would be the same: Defendant's failure to timely file her termination report should have been referred to the Department of Justice. For these reasons, this line of inquiry is neither relevant nor proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1). Accordingly, the Court should issue an order protecting the United States from such discovery.

## III. Defendant Cannot Satisfy the Requirements to Depose Plaintiff's Former Trial Counsel

The Court should preclude Defendant from deposing counsel who represented the United States when this Action was commenced.[4] *See* Lynch Decl. Ex. B (identifying Plaintiff's former trial counsel Ashley Cheung and James Gilligan as potential defense witnesses); *id.* Ex A (requesting deposition of Ms. Cheung). "The practice of deposing opposing counsel . . . is generally disfavored in federal courts." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011). As one circuit court explained, "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his

---

[4] Former counsel Ashley Cheung withdrew from this case when she took a position in a different office within the Department of Justice from the Federal Programs Branch, the office handling this case; James Gilligan served as Acting Branch Director until a permanent Branch Director was named.

or her opponent" because permitting such depositions "disrupts the adversarial system," "lowers the standards of the profession," "adds to the already burdensome time and costs of litigation," and contributes to a "'chilling effect' . . . on the truthful communications from the client to the attorney." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

Courts in this district have applied the Eighth Circuit's test in *Shelton v. American Motors Corp. See, e.g.*, *Guantanamera Cigar Co. v. Corporacion Habanos, SA*, 263 F.R.C. 1, 8-9 (D.D.C. 2009). Under the *Shelton* test, depositions of opposing counsel are permitted only "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information sought is crucial to the preparation of the case." *Shelton*, 805 F. 2d at 1327 (citation omitted).

Defendant cannot establish any of these three elements. Defense counsel has suggested that Defendant needs to probe former Plaintiff's counsel Ms. Cheung's use of the word "us" in the following statement in an email to Defendant: "The White House Counsel's Office has located documents that it intends to return to you. Please let us know whether you would like to pick up the documents in person or have them mailed to you . . . ." Def.'s Mot. to Dismiss ¶¶ 20-22 (emphasis omitted).

First, Defendant clearly has other means of determining who "actually possessed" her boxes of personal effects until she retrieved them in July 2019. *Id.* ¶ 21. Indeed, to obviate such discovery, Plaintiff offered to stipulate that "[t]wo boxes of the Defendant's personal effects remained in the White House from the end of Defendant's employment as Director of Communications for the Office of Public Liaison in the White House until July 12, 2019, when they were retrieved by the Defendant." Lynch Decl. Ex. C.

10

Second, that information is irrelevant to the sole issue in dispute, namely, the willfulness of Defendant's failure to file her termination report. The record before the Court contains Defendant's admission in 2018 that an allegedly incorrect date—not the boxes she left at the White House—were the reason she could not complete the form: *"I want to be crystal clear, that's the only hold up* [in completing the termination report], is the discrepancy of the date. After that, I can complete everything." Def.'s Mot. to Dismiss ¶ 14 & Ex. B (emphasis added). Defendant made this admission repeatedly on a call that she secretly recorded with then-Deputy White House Counsel in March 2018, when her termination report was already past due. At the time, she explained, "[l]et me be clear, as soon as that date is corrected then I can complete [the termination report]," *id.*, and "as soon as that date is changed, I can complete the report and everything can kind of go from there."[5] *Id.* As to the boxes, Defendant's then-contemporaneous statements were only that they might contain "a little thumb drive with all of my wedding photos on it, as I have told everyone . . . to anybody that will listen, that I need that thumb drive back with my pictures on it." *Id.* Ex. B. Defendant only recently has claimed that these boxes are relevant to her failure to timely file her termination report (although she also recently has taken the inconsistent position that the materials in the boxes are "irrelevant and inmaterial [sic]" to this litigation). *Id.* Ex. D; Lynch Decl. Ex. I at 3. Yet, even after finally retrieving the boxes in July 2019, she still has failed to submit a compliant termination report.[6]

---

[5] These statements by the Defendant are admissible as party statements under Federal Rule of Evidence 801(d)(2)(A). *See, e.g., United States v. Safavian*, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) (holding that "[t]he statements attributed directly to [defendant] come in as admissions by a party opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence.").

[6] Defendant submitted a termination report on September 11, 2019, the same date that she moved to dismiss this action, approximately 60 days after she retrieved the boxes. Although advised in writing in both September and November 2019 that her report was deficient, she still has not addressed the deficiencies as of this filing.

Finally, the location and chain of custody of the boxes clearly are not "crucial" to the preparation of Defendant's case as her prior admission and her own discovery responses attest. Moreover, there is no dispute that those boxes were not in Defendant's possession during the year and a half between Defendant's leaving the White House and the filing of this action. Lynch Decl. Ex. I at 3; *see id.* Ex. C (proposed stipulation). Defendant thus should not be permitted to depose the United States' counsel in this action on that subject. In short, discovery into the location and custody of Defendant's boxes does not advance any dispute of consequence in this case and cannot justify the disfavored step of deposing a party's trial counsel.

## IV. Discovery Regarding Defendant's Actual Termination Date and the Location of Boxes of Her Personal Effects Left at the White House Are Neither Relevant Nor Proportional to the Needs of the Case

Defendant has stated her intent to seek "depositions" regarding "the White House retaining her boxes of financial information and their refusal to change the termination date on the financial report itself."[7] Joint Status Report at 5.  Defendant has also issued discovery requests and requests for admission on these same topics. *See* Lynch Decl. Ex. E (Requests Nos. 21-23 and 25-28); *id.* Ex. F (Requests Nos. 3-5, 7-9, 11, and 13). Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether requested discovery is proportional, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Here, neither Defendant's termination date nor the location and chain of custody of her personal effects is relevant nor is

---

[7] Because Defendant describes all 15 witnesses in her initial disclosures as being in possession of the same generic information, it is not clear which particular witnesses Defendant might seek to question on each of these topics. Plaintiff therefore seeks an order that prohibits discovery on the described topics.

discovery on those topics proportional, because Defendant remains liable even accepting her position on each issue, and Plaintiff moreover has offered to stipulate to the facts that the requested discovery, at best, might establish. Accordingly, Defendant should not be permitted to depose any individuals or obtain other discovery for purposes of probing these issues.

### A.     Defendant's Termination Date Is Irrelevant Because Defendant Failed to Timely File Her Disclosure Report Under Any Possible Termination Date

Defendant's proposed discovery regarding her termination date is irrelevant and not proportional the needs of the case because Defendant is liable whether that date is December 19, 2017, or her preferred date, January 20, 2018. Def's Mot. to Dismiss Ex. B. (Former Deputy White House Counsel explaining to Defendant in or about March 2018 that he wanted to make "super clear" the report must be filed "within 30 days of whatever that [termination] date was, which we're past."). Regardless of her termination date, Defendant concededly did not file the required financial disclosure form within thirty days of either date, despite knowledge of her obligation to do so. Indeed, Defendant did not file any termination report within 630 days of December 19, 2017, or within 598 days of January 20, 2018, and to date, undisputedly more than two years after her termination report was due, Defendant still has not submitted a compliant termination report. No deposition that Defendant seeks about her termination date can shed light on whether her knowing decision not to file her termination report was "willful." The *fact* of the deadline—the only element of Plaintiff's claim to which the termination date is relevant—can be established through less burdensome means than depositions of government officials, including by the stipulation offered by Plaintiff but rejected by Defendant. *Id.* Thus, the Court should preclude discovery on the issue of Defendant's termination date.

### B.     The Location and Chain of Custody of Defendant's Personal Effects Are Irrelevant

Defendant also should be precluded from deposing government officials about the location

and chain of custody of the boxes of personal effects that Defendant retrieved from the White House in July 2019. *See, e.g.*, Lynch Decl. Ex. F at 5 ("Please provide a complete chain of custody and names of all people who packed, held, stored or carried Omarosa Manigault Newman's boxes at any point prior to my receipt thereof."). It is undisputed that the boxes remained at the White House between the time Defendant left the employ of the Executive Branch and July 2019. Although Defendant now claims that those boxes bear on her failure to file her termination report, *see* Def.'s Mot. to Dismiss Ex. D; *but see* Lynch Decl. Ex. I at 3 (Defendant describing contents of the boxes as "irrelevant and inmaterial [sic]"),[8] her then-contemporaneous statements were to the contrary. Tellingly, she still has not submitted a compliant report even though she has had possession of those boxes since July 2019. *See* Part III, *supra*. Unlike the issue of the boxes' location and chain of custody, which is irrelevant and undisputed, only Defendant can explain (contrary to her prior admissions) how the boxes bear on her failure to file the termination report. Her latest proffered explanation is that the boxes did not contain the "information I expected, needed or which I was entitled to." Lynch Decl. Ex. I at 3. In these circumstances, the burden of the proposed depositions about the boxes' location and chain of custody before Defendant retrieved them in July 2019 significantly outweighs any benefit and should not be permitted. Fed. R. Civ. P. 26(b)(1).

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and enter the attached proposed order precluding certain discovery in this action.

Dated: June 17, 2020                           JOSEPH H. HUNT

---

[8] Defendant's first assertion that the boxes of her personal effects had any bearing on her termination report appears to have been in May 2019, in response to a communication from the Department of Justice. *See* Def.'s Mot. to Dismiss Ex. D.

Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Christopher M. Lynch*
Christopher M. Lynch
D.C. Bar # 1049152
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4537
Fax: (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Plaintiff*

**CERTIFICATE OF CONFERENCE**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 7(m), the undersigned counsel hereby certifies that he conferred in good faith with Defendant's counsel regarding this discovery issue in an attempt to resolve the issue and was unable to further narrow the disputed issues. Defendant indicated that she would not withdraw the objectionable discovery requests.

Dated: June 17, 2020                                    */s/ Christopher M. Lynch*
                                                        Christopher M. Lynch

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:19-cv-1868 (RJL)** |
| **OMAROSA MANIGAULT NEWMAN,** | |
| **Defendant.** | |

**DECLARATION OF CHRISTOPHER M. LYNCH IN SUPPORT OF PLAINTIFF**
**UNITED STATES OF AMERICA'S RENEWED MOTION FOR PROTECTIVE ORDER**

I, Christopher M. Lynch, make the following Declaration pursuant to 28 U.S.C. §

1746, and state that under penalty of perjury the following is true and correct to the best of my

knowledge and belief:

1.      I am a Trial Attorney with the Federal Programs Branch of the Civil Division of

the United States Department of Justice and counsel for Plaintiff in this matter.

2.      Attached as Exhibit A is a true and correct copy of an email from John M.

Phillips, counsel for Defendant, to me, that I received on or about May 23, 2020.

3.      Attached as Exhibit B is a true and correct copy of Defendant's Initial Rule

26(a)(1) Disclosures, which were served on me on or about November 7, 2019.

4.      Attached as Exhibit C is a true and correct copy of an email I sent to John M. Phillips, counsel for Defendant, on or about November 1, 2019, including the proposed stipulation attached to the email.

5.      Attached as Exhibit D is a true and correct copy of an email I received from John M. Phillips, counsel for Defendant, on or about November 1, 2019.

6.      Attached as Exhibit E is a true and correct copy of Defendant, Omarosa Manigault Newman's First Request for Admissions to Plaintiff, served on me by email on or about November 18, 2019.

7.      Attached as Exhibit F is a true and correct copy of Defendant, Omarosa Manigault Newman's First Request for Production of Documents, served on me by email on or about November 18, 2019.

8.      Attached as Exhibit G is a true and correct copy of an email I sent to John M. Phillips, counsel for Defendant, on or about June 4, 2020.

9.      Attached as Exhibit H is a true and correct copy of an email from John M. Phillips, counsel for Defendant, to me, that I received on or about June 4, 2020.

10.      Attached as Exhibit I are Defendant Omarosa Manigault Newman's Verified Answers to Plaintiff's First Interrogatories, served on me by email on or About June 3, 2020.


Executed this 17th day of June, 2020.


_/s/ Christopher M. Lynch_
Christopher M. Lynch

Exhibit A

**Lynch, Christopher M. (CIV)**

| | |
|---|---|
| **From:** | John M. Phillips <jmp@floridajustice.com> |
| **Sent:** | Saturday, May 23, 2020 3:56 PM |
| **To:** | Lynch, Christopher M. (CIV); Cheung, Ashley (CIV) |
| **Cc:** | michele@floridajustice.com; 'Kirby Johnson'; jwgaattys@aol.com; Kunasek, Hannah G. EOP/WHO; Gast, Scott F. EOP/WHO; Jones, David M. EOP/WHO |
| **Subject:** | Re: USA v. OMN |

Since October, we have repeatedly requested depositions of:

> Donald J. Trump,
> Stefan Passantino, Esq.,
> Uttam Dhillon, Esq.,
> Irene Porada, former White House Chief of Staff,
> Gen. John Kelly
> Scott F. Gast

> And Ashley Cheung.

We await your response. We also request depositions of:

> Hannah Kunasek
> And whoever assisted her with the boxes,

> David Jones, as he also was on email and had something to do with the custody of the boxes. He may be who assisted Hannah. We have video of the transfer. We can provide if you need it.

> We also request whoever appears on any and all referrals of this matter to the Department of Justice.

> We request any and all witnesses who the Department of Justice anticipates calling at trial or by affidavit.

Mr. Trump has admitted Omarosa is the subject of retaliation, saying:

> "Yes, I am currently suing various people for violating their confidentiality agreements. Disgusting and foul mouthed Omarosa is one. I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book. Numerous others also!"

> We need to conduct discovery on this issue. Please provide anyone other than Donald J. Trump who controls the @realdonaldtrump twitter account.

We have repeatedly asked for and been ignored about:
-   Issues regarding inconsistencies of whether Omarosa would receive an Amended Form, as the financial disclosure form had an incorrect date. This is all discussed in the call and highly relevant. We need any

1

discovery and information about all of those meetings and how statements made in the Complaint so drastically differ from the recorded calls.

- Issues regarding delay of return and detailed custody of her Boxes. Please provide a complete chain of custody and names of all people who packed, held, stored or carried the boxes at any point prior to my receipt thereof.
- Claims have been made that there are deficiencies in the report. We need to know what they are and have asked repeatedly and been ignored. My client wants to review and update, if necessary. All delay is being caused on your end. However, we can't guess what you claim is deficient. Please provide all / every communication between the White House and Department of Justice in any way related to this case.

We've asked for all referral documents and evidence and expect same.

We request any proof, read receipts or other documentation of any and all email you claim Omarosa received from the White House or Department of Justice or their counsel, as well as any evidence whatsoever exhibiting any intent OTHER than her waiting for her boxes and a proper form to complete.

As a reminder, please be punctual to all meetings. I know 2 minutes isn't a lot to you, but it is time that adds up at the end of the day. I have three small children. I value those minutes more than I can ever put into words.


Thank You,

John

John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone:  FL: (904) 444-4444
                    GA: (912) 444-4444
Email:  jmp@floridajustice.com
Website: FloridaJustice.com

*Board Certified Specialist in Civil Trial Law by the Florida Bar
*Licensed to practice in Florida, New York, Georgia, Alabama and the District of Columbia

---

**From:** 'John Phillips' <jmp@floridajustice.com>
**Date:** Thursday, October 24, 2019 at 12:55 PM
**To:** "Lynch, Christopher M. (CIV)" <Christopher.M.Lynch@usdoj.gov>, "Cheung, Ashley (CIV)" <Ashley.Cheung@usdoj.gov>
**Cc:** "michele@floridajustice.com" <michele@floridajustice.com>, 'Kirby Johnson' <kirby@floridajustice.com>, "jwgaattys@aol.com" <jwgaattys@aol.com>, "Kunasek, Hannah G. EOP/WHO" <Hannah.G.Kunasek@who.eop.gov>, "Gast, Scott F. EOP/WHO" <Scott.F.Gast@who.eop.gov>, "Jones, David M. EOP/WHO" <David.M.Jones@who.eop.gov>
**Subject:** USA v. OMN

Sorry, title should have been USA v. Omarosa Manigault Newman, not Trump. Revised and resent.

As I understand local rule 5.3,

"Proof of service of papers required or permitted to be served, other than those for which a different method of proof is prescribed by the Federal Rules of Civil Procedure or by statute, shall be filed with such papers. The proof shall show the date and manner of service, and may be by certificate of an attorney of record or other proof satisfactory to the Court. Failure to make proof of service does not affect the validity of service. The Court may at any time allow the proof to be amended or supplied, unless to do so would unfairly prejudice a party."

I became aware of "Plaintiff's Opposition to Defendant's Motion to Dismiss" at the phone call. We co-filed the answer, and are filing a notice of appearance today just to be sure it is all clear. We are lead counsel now and heretofore. We were not served with the Response and do not see any certificate of service or notice of who was served whatsoever. Obviously, we disagree with the contents thereof. Please make sure I am served on anything related to this matter. Please provide proof of service and clarify my apparent misunderstanding of 5.3 that a certificate of service "shall be filed" with served papers.

As a follow up to our call, we have repeatedly requested depositions of:

> Donald J. Trump,
> Stefan Passantino, Esq.,
> Uttam Dhillon, Esq.,
> Irene Porada, former White House Chief of Staff,
> Gen. John Kelly
> Scott F. Gast
>
> And Ashley Cheung.

We await your response. We also request depsoitons of:

> Hannah Kunasek
> And whoever assisted her with the boxes,
>
> David Jones, as he also was on email and had something to do with the custody of the boxes. He may be who assisted Hannah. We have video of the transfer. We can provide if you need it.
>
> We also request whoever appears on any and all referrals of this matter to the Department of Justice.
>
> We request any and all witnesses who the Department of Justice anticipates calling at trial or by affidavit.

Mr. Trump has admitted Omarosa is the subject of retaliation, saying:

> "Yes, I am currently suing various people for violating their confidentiality agreements. Disgusting and foul mouthed Omarosa is one. I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book. Numerous others also!"
>
> We need to conduct discovery on this issue. Please provide anyone other than Donald J. Trump who controls the @realdonaldtrump twitter account.

We have repeatedly asked for and been ignored about:

- Issues regarding inconsistencies of whether Omarosa would receive an Amended Form, as the financial disclosure form had an incorrect date. This is all discussed in the call and highly relevant. We need any discovery and information about all of those meetings and how statements made in the Complaint so drastically differ from the recorded calls.
- Issues regarding delay of return and detailed custody of her Boxes. Please provide a complete chain of custody and names of all people who packed, held, stored or carried the boxes at any point prior to my receipt thereof.
- Claims have been made that there are deficiencies in the report. We need to know what they are and have asked repeatedly and been ignored. My client wants to review and update, if necessary. All delay is being caused on your end. However, we can't guess what you claim is deficient. Please provide all / every communication between the White House and Department of Justice in any way related to this case.

We've asked for all referral documents and evidence and expect same.

We request any proof, read receipts or other documentation of any and all email you claim Omarosa received from the White House or Department of Justice or their counsel, as well as any evidence whatsoever exhibiting any intent OTHER than her waiting for her boxes and a proper form to complete.

As a reminder, please be punctual to all meetings. I know 2 minutes isn't a lot to you, but it is time that adds up at the end of the day. I have three small children. I value those minutes more than I can ever put into words.


Thank You,

John

John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone:  FL: (904) 444-4444
             GA: (912) 444-4444
Email:  jmp@floridajustice.com
Website: [FloridaJustice.com](FloridaJustice.com)

*Board Certified Specialist in Civil Trial Law by the Florida Bar
*Licensed to practice in Florida, Georgia, Alabama and the District of Columbia

Exhibit B

JOHN M. PHILLIPS
Trial Attorney
KIRBY W. JOHNSON
Trial Attorney
J. W. GATTYS, ESQ.
Trial Attorney…

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     Plaintiff,                           Case No.:1:19-cv-1868 (RJL)

v.

OMAROSA MANIGAULT NEWMAN,

     Defendant,

_____/

## DEFENDANT'S INITIAL RULE 26(A)(1) DISCLOSURES

Pursuant to Red. R.Civ. P. 26(a)(1), Defendant Omarosa Manigault Newman, by and through her undersigned counsel submit the following disclosures:

**A.  Individuals Likely to Have Discoverable Information:**

Each of the following may have information regarding facts and events set out in the Corrected Complaint, and possibly related to the Defendant's Answers and Affirmative Defenses.

    1)      **Omarosa Manigault Newman**
                 c/o John M. Phillips, Esquire
                 4230 Ortega Boulevard
                 Jacksonville, FL 32210

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

2)      **Stefan Passantino, former Deputy Counsel to the President**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

3)      **John F. Kelly, former White House Chief of Staff**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

4)      **Donald J. Trump, President of the United States of America**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

5)      **Uttam Dhillon, Esq., former Deputy Counsel and Deputy Assistant to the President**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

6)      **Irene Porada, Human Resource Manager**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

7)      **Scott De la Vega, former Ethics Counsel**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

8)      **Deborah Raviv, former Ethics Counsel (detailee)**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

9)      **Alice Bartek-Santiago, former Ethics Counsel (detailee)**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

10)      **Unknown witness** (Executive Office of the President employee whom allegedly referred this matter to the Department of Justice pursuant to 5 C.F.R. § 2634.701)

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

11)      **Ashley Cheung, Esq.**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

12)      **Scott Gast, Senior Counsel and Special Assistant to the President**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

13)      **James Gilligan, Esq.**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

14)      **Marcia Lee Kelly, Deputy Assistant to the President**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

15)      **David Jones**

(Plaintiff's claims and circumstances surrounding the subject termination financial disclosure report).

Any and all witnesses identified by Defendants.

Any and all witnesses who may be identified through discovery.

**B.  Relevant Documents**

Defendant Omarosa Manigault Newman may use the following categories of documents in its possession, custody, and control to support its claims and defenses, other than solely for purposes of impeachment.

1)  Emails and correspondence exchanged between Ms. Manigault Newman and White House personnel.

2)  Recordings of conversations between Ms. Manigault Newman and White House personnel.

3)  Two boxes of financial information retained by the White House from December 13, 2017 until July 12, 2019.

4)  Social media correspondence regarding retaliation against Ms. Manigault Newman.

5)  Defendant's Financial Disclosure forms.

Any and all documents identified through discovery.

Defendant reserves the right to supplement, amend and otherwise modify this list after further discovery and investigation, and may rely upon additional materials.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will furnish a copy to Christopher M. Lynch, Esq., Joseph H. Hunt, Esq., James J. Gilligan, Esq., Jacqueline Coleman Snead, Esq., United States Department of Justice Civil Division, Federal Programs Branch, 1100 L. Street,

4

N.W.,   Washington,   D.C.      20005,   at   <u>Christopher.m.lynch@usdoj.gov</u>   ;

<u>Jacqueline.Snead@usdoj.gov</u> ;this **7th** day of November, 2019.

Respectfully submitted,

**Law Office of John M. Phillips, LLC**

<u>/s/ John M. Phillips</u>
**JOHN M. PHILLIPS, ESQUIRE**
DC Bar Number:  1632674
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
<u>jphillips@floridajustice.com</u>
michele@floridajustice.com
Kirby@floridajustice.com

**The Law Office of J. Wyndal Gordon, P.A.**

<u>/s/ J. Wyndal Gordon, Esq.</u>
**J. WYNDAL GORDON, ESQUIRE**
MD Bar Number: 23572
20 South Charles Street, Suite 400
Baltimore, MD  21201
(410)332-4121
(410)347-3144 facsimile
<u>jwgaattys@aol.com</u>
Attorneys for Defendant

Exhibit C

## Lynch, Christopher M. (CIV)

| | |
|---|---|
| **From:** | Lynch, Christopher M. (CIV) |
| **Sent:** | Friday, November 1, 2019 5:00 PM |
| **To:** | John M. Phillips; kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com |
| **Cc:** | Snead, Jacqueline Coleman (CIV) |
| **Subject:** | United States v. Omarosa Manigault Newman |
| **Attachments:** | Manigault - 2019.11.01 DRAFT Evidentiary Stip for Exchange.pdf |

Counsel,

In an effort to streamline discovery, we propose that the parties agree to the attached stipulations. One concerns the filing deadline for Defendant's termination report under EIGA and the second concerns the two boxes she retrieved from the White House in July 2019. Plaintiff believes that these stipulations obviate the need for the vast majority of the depositions you mentioned in the meet and confer and your subsequent email, i.e. Uttam Dhillon, Irene Porada, Gen. John Kelly, Scott F. Gast, Ashley Cheung, Hannah Kunasek "[a]nd whoever assisted her with the boxes," and David Jones. Please advise as to your client's position on these proposed stipulations.

Thank you.

**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312
Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov

1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:19-cv-1868 (RJL)** |
| **OMAROSA MANIGAULT NEWMAN,** | |
| **Defendant.** | |

## STIPULATION REGARDING FINANCIAL DISCLOSURE REPORT FILING DEADLINE AND CUSTODY OF DEFENDANT'S PERSONAL DOCUMENTS

The parties hereby stipulate and agree as follows:

1.  January 20, 2018, plus 30 days shall be used in this action as the filing deadline for Defendant's Executive Branch Personnel Public Financial Disclosure Report pursuant to Section 101(e) of the Ethics in Government Act, 5 U.S.C. app. 4 § 101(e). The parties have agreed to this date solely for the purpose of establishing the filing deadline for Defendant's Executive Branch Personnel Public Financial Disclosure Report in this action and for no other purpose.

2.  Two boxes of the Defendant's personal effects remained in the White House from the end of Defendant's employment as Director of Communications for the Office of Public Liaison in the White House until July 12, 2019, when they were retrieved by the Defendant.

Dated: November __, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            ALEXANDER K. HAAS
                                            Branch Director

                                            JACQUELINE COLEMAN SNEAD
                                            Assistant Branch Director

                                            */s/ DRAFT*
                                            Christopher M. Lynch
                                            D.C. Bar # 1049152
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division,
                                            Federal Programs Branch
                                            1100 L Street, N.W.
                                            Washington, D.C. 20005
                                            Tel.: (202) 353-4537
                                            Fax: (202) 616-8470
                                            Email: christopher.m.lynch@usdoj.gov

                                            *Attorneys for Plaintiff*


                                            */s/ DRAFT*
                                            JOHN M. PHILLIPS, ESQUIRE
                                            Law Office of John M. Phillips, LLC
                                            DC Bar Number: 1632674
                                            4230 Ortega Boulevard
                                            Jacksonville, FL 32210
                                            (904) 444-4444
                                            (904) 508-0683 (facsimile)
                                            Attorneys for Defendant
                                            jphillips@floridajustice.com
                                            michele@floridajustice.com
                                            Kirby@floridajustice.com
                                            (*Pro Hac Vice Application for Admission Pending*)

                                            J. WYNDAL GORDON, ESQUIRE
                                            The Law Office of J. Wyndal Gordon, P.A.
                                            Fed Bar No.: MD23572
                                            20 South Charles Street, Suite 400
                                            Baltimore, MD 21201
                                            (410)332-4121
                                            (410)347-3144 facsimile

                                                2

jwgaattys@aol.com

*Attorneys for Defendant*

Exhibit D

**Lynch, Christopher M. (CIV)**

| | |
|---|---|
| **From:** | John M. Phillips <jmp@floridajustice.com> |
| **Sent:** | Friday, November 1, 2019 5:08 PM |
| **To:** | Lynch, Christopher M. (CIV) |
| **Cc:** | kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com; Snead, Jacqueline Coleman (CIV) |
| **Subject:** | Re: United States v. Omarosa Manigault Newman |

We disagree with form and substance of the stipulation and that it eliminates the need for a deposition and request dates by Tuesday November 5, 2019.

Secondly, this is our third request for your law license information. You have an obligation to provide it.

Thank You,

John

John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone:  FL: (904) 444-4444
                   GA: (912) 444-4444
Email:  jmp@floridajustice.com
Website: FloridaJustice.com

*Board Certified Specialist in Civil Trial Law by the Florida Bar
*Licensed to practice in Florida, Georgia, Alabama and the District of Columbia


On Nov 1, 2019, at 5:01 PM, Lynch, Christopher M. (CIV) <Christopher.M.Lynch@usdoj.gov> wrote:


Counsel,

In an effort to streamline discovery, we propose that the parties agree to the attached stipulations.  One concerns the filing deadline for Defendant's termination report under EIGA and the second concerns the two boxes she retrieved from the White House in July 2019.  Plaintiff believes that these stipulations obviate the need for the vast majority of the depositions you mentioned in the meet and confer and your subsequent email, i.e. Uttam Dhillon, Irene Porada, Gen. John Kelly, Scott F. Gast, Ashley Cheung, Hannah Kunasek "[a]nd whoever assisted her with the boxes," and David Jones.  Please advise as to your client's position on these proposed stipulations.

Thank you.


**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312

Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov

<Manigault - 2019.11.01 DRAFT Evidentiary Stip for Exchange.pdf>

Exhibit E

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,                          Case No.:       1:19-cv-01868-RJL

v.

OMAROSA MANIGAULT NEWMAN,        **DEFENDANT'S REQUEST FOR**
                                               **ADMISSIONS TO PLAINTIFF**
                                               **UNITED STATES OF AMERICA**

      Defendant,

_____/

### DEFENDANT, OMAROSA MANIGAULT NEWMAN'S
### FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF

Comes now the Defendant, OMAROSA MANIGAULT NEWMAN, by and through her undersigned counsel pursuant to Fed. R. Civ. P. 36, and Local Civil Rules 26.2(d), hereby requests that Plaintiff, UNITED STATES OF AMERICA, admit the truth of the following:

1.    Admit on December 13, 2017, Ms. Manigault Newman met with former White House Chief of Staff, Gen. John Kelly, White House ethics attorney Stefan Passantino, Esq., White House ethics attorney Uttam Dhillon, Esq., and Human Resource Manager Irene Porada.

2.    Admit on December 13, 2017, General Kelly said, "I'd like to see this be a friendly departure…and you can go on without any type of difficulty in the future relative to your reputation."

3.    Admit Omarosa Manigault Newman spoke to White House ethics counsel, and asked Mr. Dhillon, "How do I make it to the one year mark? Which is 1/20…that's important to me…to make it to the one year mark."

1

4.      Admit White House ethics counsel Mr. Dhillon said, "I will see if that possible and then I'll bring Irene in to begin the paperwork process … So let's do this, I'll ask about keeping you [until] the twentieth."

5.      Admit that on December 13, 2017, Mr. Dhillon consented to a severance date effective of January 20, 2018.

6.      Admit on December 14, 2017, White House Press Secretary Sarah Huckabee Sanders released the following statement, "Omarosa Manigault Newman resigned yesterday to pursue other opportunities. Her departure will not be effective until January 20, 2018."

7.      Admit an erroneous electronic financial disclosure form was sent to Ms. Manigault Newman, falsely indicating a termination date as of December 13, 2017.

8.      Admit Omarosa Manigault Newman requested a corrected electronic financial disclosure form be sent to her with the correct severance date of January 20, 2018.

9.      Admit Omarosa Manigault Newman was told she would be sent a corrected electronic financial disclosure form be sent to her with the correct severance date of January 20, 2018.

10.      Admit Omarosa Manigault Newman was never provided with an amended electronic financial disclosure form with the correct severance date of January 20, 2018.

11.      Admit Ms. Manigault Newman advised the White House ethics counsel of the severance date discrepancy multiple times.

12.      Admit Ms. Manigault Newman spoke to White House ethics attorney, Stefan Passantino, Esq., where she said, "I want to be crystal clear, that's the only hold up, is the discrepancy of the date.  After that, I can complete everything."

13.     Admit the White House kept several boxes of Omarosa Manigault Newman's belongings until July 12, 2019.

14.     Admit Omarosa Manigualt Newman asked White House ethics attorney, Stefan Passantino, Esq., about her boxes and he said he was not attempting to be "nefarious," but insisted that the form be received before she received her boxes.

15.     Admit that White House ethics attorney, Stefan Passantino, Esq., told Omarosa Manigult Newman he would "report back whatever I hear. So, we will go from there," thereby giving her reliance that there would be an extension of the due date of the report until the proper date was determined and provided.

16.     Admit Ms. Manigault Newman emailed Mr. Passantino requesting information on where to "file a formal complaint about the fees and discrepancy in the report…"

17.     Admit Ms. Manigault Newman further asked Mr. Passantino whether to direct her inquiry to the Ethics Office or the Department of Justice.

18.     Admit Stefan Passantino did not respond to Ms. Manigault Newman's multiple email about the report and he never "reported back" to her regarding the discrepancy with the date on the financial disclosure form.

19.     Admit the United States of America became aware that Ms. Manigult Newman needed her boxes to file the Report before it initiated litigation against her.

20.     Admit that Ms. Manigult Newman's boxes were not provided until July 12, 2019.

21.     Admit The President of the United States by and through himself or his office is the referring entity in this case.

22.     Admit Mr. Trump has called Ms. Manigault Newman "wacky" [*see* tweet from @realdonaldtrump, August 13, 2017], said she "had zero credibility with the media," [*see* tweet

from @realdonaldtrump August 13, 2017], called her a "lowlife" [*see* tweet from @realdonaldtrump August 13, 2017], insinuated she was illegitimate [*see* tweet from @realdonaldtrump August 13, 2017], said "people in the White House hated her," [*see* tweet from @realdonaldtrump August 13, 2017], said she was "vicious, but not smart," [*see* tweet from @realdonaldtrump August 13, 2017], indicated he'd "rarely see her," [*see* tweet from @realdonaldtrump August 13, 2017], that she "begged me for a job, tears in her eyes," [*see* tweet from @realdonaldtrump August 13, 2017], called her "wacky and deranged," [*see* tweet from @realdonaldtrump August 13, 2017], called her a liar for saying there was a tape of him saying the "N-word," as he has never had that word in his vocabulary," [*see* tweet from @realdonaldtrump August 13, 2017], and made other false statements about Ms. Manigault Newman.

23.     Admit on August 31, 2019, President Donald J. Trump admitted to using lawsuits against people for allegedly violating confidentiality agreements.  He said, "Yes, I am currently suing various people for violating their confidentiality agreements.  Disgusting and foul-mouthed Omarosa is one.  I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book." [*see* tweet from @realdonaldtrump, August 31, 2019].

24.     Admit the United States of America is represented herein by the Department of Justice.

25.     Admit William Barr described his role as the head of the Department of Justice, "He is the President's lawyer."

26.     Admit Christopher Lynch is the President's lawyer.

27.     Admit Jacqueline Coleman Snead is the President's lawyer.

28.     Admit the White House or United States Government has failed to provide any notice of specific deficiency in the report filed by Omarosa Manigault Newman.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I electronically served a copy of the foregoing via Email on Christopher M. Lynch, Esq., Joseph H. Hunt, Esq., James J. Gilligan, Esq., Jacqueline Coleman Snead, Esq., United States Department of Justice Civil Division, Federal Programs Branch, 1100 L. Street, N.W., Washington, D.C.  20005, at Christopher.m.lynch@usdoj.gov ;   Jacqueline.Snead@usdoj.gov ;this **18th** day of November, 2019.

Respectfully submitted,

**Law Office of John M. Phillips, LLC**

<u>/s/ John M. Phillips</u>
**JOHN M. PHILLIPS, ESQUIRE**
DC Bar Number:  1632674
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
jphillips@floridajustice.com
michele@floridajustice.com
Kirby@floridajustice.com

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

      Plaintiff,                            Case No.:      1:19-cv-01868-RJL

v.

OMAROSA MANIGAULT NEWMAN,
      Defendant,

_____/

**DEFENDANT, OMAROSA MANIGAULT NEWMAN'S**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

      Pursuant to Federal Rules of Civil Procedure 26 and 34 and Local Civil Rules 26.2(d) and 30.4, Defendant, OMAROSA MANIGAULT NEWMAN, by and through her undersigned counsel hereby requests that Plaintiff, UNITED STATES OF AMERICA, produce or make available for inspection, examination, and copying the documents designated below and electronically stored information ("ESI") at the Law Office of John M. Phillips, LLC., 4230 Ortega Boulevard, Jacksonville, Florida  32210, within thirty (30) days from date hereof. Defendant also requests that Plaintiff serve a written response.

**INSTRUCTIONS**

      1.      Pursuant to Rule 34(b)(2)(B), if you object to a Request for Production, the grounds for each objection must be stated with specificity. Also pursuant to that Rule, if you intend to produce copies of documents or of ESI instead of permitting inspection, you must so state.

      2.      If, in responding to these Requests for Production, you encounter any ambiguities when construing a Request for Production or Definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

3.      Pursuant to Rule 34(b)(2)(C), an objection must state whether any responsive materials are being withheld on the basis of that objection.

4.      Whenever in these Requests for Production you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

        A.      If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5). This information should include (a) the type of document, (b) the general subject matter of the document, (c) the date of the document, and (d) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.  For ESI, a privilege log (in searchable and sortable form, such as a spreadsheet, matrix, or table) generated by litigation review software, containing metadata fields that generally correspond to the information set forth in the previous two sentences is permissible, provided that it also discloses whether transmitting, attached or subsidiary ("parent-child") documents exist and whether those documents have been produced or withheld.

        B.      If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and, in addition to the information requested in paragraph 4.A, above, please state the reason for withholding the document.

5.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby

disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

6.      It is intended that these Requests for Production will not solicit any material protected either by the attorney-client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced. If any Request for Production is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) will be required as to such material.

7.      Unless otherwise specified, these Requests for Production cover the period from December 1, 2017 to the present.

### DEFINITIONS

As used herein, the following terms shall have the meanings indicated.

1.      "ALL" and "ANY" are used interchangeably to mean "any and all."

2.      "COMMUNICATION" or "COMMUNICATIONS" refers to the transmittal of information by any means. For the purposes of these Requests for Production, "communication" includes any record of a communication, including, but not limited to, audio recordings of conversations.

3.      "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

4.      "DOCUMENT" or "DOCUMENTS" are defined to be synonymous in meaning and equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to, ESI. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

5.      "FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT" refers to the report required to be filed on or before the 30th day after termination of employment pursuant to the Ethics in Government Act, 5 U.S.C. app. 4 § 101(e).

6.      "TERMINATION" refers to the termination of Omarosa Manigault Newman's employment at the White House, as the term "termination" is used in 5 U.S.C. app. 4 § 101(e).

7.      "YOU" and "YOUR" refer to the Plaintiff, UNITED STATES OF AMERICA, as well as its agents, representatives, attorneys, or any others acting on its behalf.

## REQUEST FOR DOCUMENTS

1.      Please produce each and every email sent or received internally or between Omarosa Manigault Newman which in any way refers to the financial disclosure obligations.

2.      Please produce any documents, notes, computer entries or other written or digital files which in any way reflects or contains information about any communications, meetings, statements or memorialization Omarosa Manigault Newman which in any way refers to the financial disclosure obligations.

3.      Please produce each and every email sent or received internally or between Omarosa Manigault Newman which in any way refers to the return of her belongings.

4.     Please produce any documents, notes, computer entries or other written or digital files which in anyway reflects or contains information about any communications, meetings, statements or memorialization Omarosa Manigault Newman which in any way refers to the return of her belongings.

5.     Please provide a complete chain of custody and names of all people who packed, held, stored or carried Omarosa Manigault Newman's boxes at any point prior to my receipt thereof.

6.     Claims have been made that there are deficiencies in the report submitted. Please provide any and all notices, communications or documentation of same.

7.     Please produce any and all communication between the White House and Department of Justice in any way related to this case.

8.     Please produce any and all communications between the White House and Department of Justice which refers any other individuals for prosecution or investigation because of failure to file a financial disclosure.

9.     Please produce any and all referral or form submitted between the White House and Department of Justice in any way related to this case.

10.     Please produce any proof, read receipts or other documentation of any and all emails you claim Omarosa received from the White House or Department of Justice or their counsel.

11.     Please produce any and all communications (including, but not limited to, audio recordings of conversations) concerning the subject Severance or termination of Omarosa Manigault Newman.

12. Please produce any and all communications (including, but not limited to, audio recordings of conversations) concerning Omarosa Manigault Newman's Final Executive Branch Public Financial Disclosure Report.

13. Please produce all memos, correspondence or other writings on which William Barr relied referring to himself as the "President's Lawyer".

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically served a copy of the foregoing via Email on Christopher M. Lynch, Esq., Joseph H. Hunt, Esq., James J. Gilligan, Esq., Jacqueline Coleman Snead, Esq., United States Department of Justice Civil Division, Federal Programs Branch, 1100 L. Street, N.W., Washington, D.C.  20005, at Christopher.m.lynch@usdoj.gov ;   Jacqueline.Snead@usdoj.gov ;this **18th** day of November, 2019.

Respectfully submitted,

**Law Office of John M. Phillips, LLC**

/s/ John M. Phillips
**JOHN M. PHILLIPS, ESQUIRE**
DC Bar Number:  1632674
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
jphillips@floridajustice.com
michele@floridajustice.com
Kirby@floridajustice.com

# Exhibit G

## Lynch, Christopher M. (CIV)

**From:** Lynch, Christopher M. (CIV)
**Sent:** Thursday, June 4, 2020 2:21 PM
**To:** John M. Phillips
**Cc:** kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com; Snead, Jacqueline Coleman (CIV)
**Subject:** RE: United States v. Omarosa Manigault Newman, DDC No. 1:19-cv-1868 (RJL)


Mr. Phillips,

We disagree with each of the representations you make below, and we do not consent to the recording of any future calls between us.  To be clear, you terminated our call after 6 minutes when I requested that you return the discussion to the discovery issues that we had scheduled the meet and confer to discuss.

On the call, you did confirm that your client will continue to withhold discovery on the basis of a confidentiality agreement you contend your client entered with the Trump campaign notwithstanding that you yourself concede the agreement is inapplicable to our discovery requests.  Please provide the document on which you base those withholdings by close of business today.

We were unable to discuss this morning when you intend to produce the recordings that you agreed to produce last December but have not produced to date.  We also request that you produce all documents responsive to our requests.  Please let us know by close of business today when you intend to make those productions.

In addition, we were unable to discuss your own discovery requests on today's call.  We request that you withdraw your Requests for Production Nos. 3-5, 7-9, 11, 13, and your Requests for Admission Nos. 21-23, 25-28, for the reasons stated in our Responses to those Requests.  Please let us know by close of business today whether you intend to do so.

Finally, we will advise the White House ethics office that your client now wishes to resolve the deficiencies with her form.  Please let me know whether you need the contact information of the individual there who had reached out to you last Fall to assist you.

Best,

**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312
Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov


**From:** John M. Phillips <jmp@floridajustice.com>
**Sent:** Thursday, June 4, 2020 11:16 AM
**To:** Lynch, Christopher M. (CIV) <chlynch@CIV.USDOJ.GOV>
**Cc:** kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com; Snead, Jacqueline Coleman (CIV)

<jsnead@CIV.USDOJ.GOV>
**Subject:** Re: United States v. Omarosa Manigault Newman, DDC No. 1:19-cv-1868 (RJL)

We are happy to reschedule this call when you will agree not to interrupt me and unprofessionally talk over me. Professionalism is a must.

Please send us any other issues you have with discover . Let us know if you want to reschedule the call when you have the patience and professionalism to engage in it. All further calls will be recorded to protect us both.

I reiterate what I was saying when you interrupted me and spoke over me. Omarosa Manigault Newman desires to make amendments deemed required, as she has since before this frivolous suit was filed by Ms. Cheung, and again requests the records we've told you she needs and assistance to do so.

We've attempted to be reasonable and responsive throughout, including a meeting which was unilaterally cancelled by your office at the very initiation of this. Boxes were inappropriately kept and she still doesn't have all that she needs and that Mr. Passantino promised. Please advise how she can remedy this once again.


Thank You,


John


John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone: (904) 444-4444
Email:  jmp@floridajustice.com
Website: FloridaJustice.com


* Board Certified Specialist and Expert in Civil Trial Law
* Licensed to practice in Florida, New York, Georgia, Alabama, Texas and the District of Columbia

On Jun 2, 2020, at 7:10 PM, Lynch, Christopher M. (CIV) <Christopher.M.Lynch@usdoj.gov> wrote:


Counsel,

Pursuant to our agreement regarding service of discovery requests, please find attached:
1. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT OMAROSA MANIGAULT NEWMAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
2. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF

Thank you.

**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312

Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov

<2020.6.2 Pls First RFP Objections.pdf>
<2020.6.2 Pls First RFA Objections.pdf>

**Exhibit H**

**Lynch, Christopher M. (CIV)**

| | |
|---|---|
| **From:** | John M. Phillips <jmp@floridajustice.com> |
| **Sent:** | Thursday, June 4, 2020 3:05 PM |
| **To:** | Lynch, Christopher M. (CIV) |
| **Cc:** | kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com; Snead, Jacqueline Coleman (CIV) |
| **Subject:** | Re: United States v. Omarosa Manigault Newman, DDC No. 1:19-cv-1868 (RJL) |

Now wishes? More like has always wished. Please review the calls and really listen to them. Why the dishonesty here. She's constantly tried to work through this.

DC is a one-party consent state. How can you object? Why hide the U.S. Government's representations?

Your client, your employer, your executive in chief indicated publicly that this was retaliatory and that he's suing her and has an NDA. We don't think that is legal and don't think he / they / you can legally do this or enforce the NDA, but that doesn't mean she's not being sued for 400+ overbroad releases. It is a judge's opinion that matters on this. President Trump has a trap set up. We just want to avoid claims of breaches of contract, confidentiality or the like at all costs.

We will withdraw nothing. Happy to discuss same as indicated.

Thank You,

John

John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone:  FL: (904) 444-4444
                      GA: (912) 444-4444
Email:  jmp@floridajustice.com
Website: FloridaJustice.com

*Board Certified Specialist in Civil Trial Law by the Florida Bar
*Licensed to practice in Florida, New York, Georgia, Alabama, Texas and the District of Columbia

**From:** "Lynch, Christopher M. (CIV)" <Christopher.M.Lynch@usdoj.gov>
**Date:** Thursday, June 4, 2020 at 2:20 PM
**To:** 'John Phillips' <jmp@floridajustice.com>
**Cc:** "kirby@floridajustice.com" <kirby@floridajustice.com>, "michele@floridajustice.com" <michele@floridajustice.com>, "jwgaattys@aol.com" <jwgaattys@aol.com>, "Snead, Jacqueline Coleman (CIV)" <Jacqueline.Snead@usdoj.gov>
**Subject:** RE: United States v. Omarosa Manigault Newman, DDC No. 1:19-cv-1868 (RJL)

Mr. Phillips,

We disagree with each of the representations you make below, and we do not consent to the recording of any future calls between us.  To be clear, you terminated our call after 6 minutes when I requested that you return the discussion to the discovery issues that we had scheduled the meet and confer to discuss.

On the call, you did confirm that your client will continue to withhold discovery on the basis of a confidentiality agreement you contend your client entered with the Trump campaign notwithstanding that you yourself concede the agreement is inapplicable to our discovery requests.  Please provide the document on which you base those withholdings by close of business today.

We were unable to discuss this morning when you intend to produce the recordings that you agreed to produce last December but have not produced to date.  We also request that you produce all documents responsive to our requests.  Please let us know by close of business today when you intend to make those productions.

In addition, we were unable to discuss your own discovery requests on today's call.  We request that you withdraw your Requests for Production Nos. 3-5, 7-9, 11, 13, and your Requests for Admission Nos. 21-23, 25-28, for the reasons stated in our Responses to those Requests.  Please let us know by close of business today whether you intend to do so.

Finally, we will advise the White House ethics office that your client now wishes to resolve the deficiencies with her form.  Please let me know whether you need the contact information of the individual there who had reached out to you last Fall to assist you.

Best,

**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312
Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov

---

**From:** John M. Phillips <jmp@floridajustice.com>
**Sent:** Thursday, June 4, 2020 11:16 AM
**To:** Lynch, Christopher M. (CIV) <chlynch@CIV.USDOJ.GOV>
**Cc:** kirby@floridajustice.com; michele@floridajustice.com; jwgaattys@aol.com; Snead, Jacqueline Coleman (CIV) <jsnead@CIV.USDOJ.GOV>
**Subject:** Re: United States v. Omarosa Manigault Newman, DDC No. 1:19-cv-1868 (RJL)

We are happy to reschedule this call when you will agree not to interrupt me and unprofessionally talk over me. Professionalism is a must.

Please send us any other issues you have with discover . Let us know if you want to reschedule the call when you have the patience and professionalism to engage in it. All further calls will be recorded to protect us both.

I reiterate what I was saying when you interrupted me and spoke over me. Omarosa Manigault Newman desires to make amendments deemed required, as she has since before this frivolous suit was filed by Ms. Cheung, and again requests the records we've told you she needs and assistance to do so.

We've attempted to be reasonable and responsive throughout, including a meeting which was unilaterally cancelled by your office at the very initiation of this. Boxes were inappropriately kept and she still doesn't have all that she needs and that Mr. Passantino promised. Please advise how she can remedy this once again.


Thank You,


John


John M. Phillips, B.C.S.**
Phillips & Hunt
Telephone: (904) 444-4444
Email:  jmp@floridajustice.com
Website: FloridaJustice.com


* Board Certified Specialist and Expert in Civil Trial Law
* Licensed to practice in Florida, New York, Georgia, Alabama, Texas and the District of Columbia

On Jun 2, 2020, at 7:10 PM, Lynch, Christopher M. (CIV) <Christopher.M.Lynch@usdoj.gov> wrote:


Counsel,

Pursuant to our agreement regarding service of discovery requests, please find attached:
1. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT OMAROSA MANIGAULT NEWMAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
2. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF

Thank you.

**Christopher M. Lynch**
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11312
Washington, DC 20005
(202) 353-4537 (office)
(202) 616-8470 (fax)
Christopher.M.Lynch@usdoj.gov

<2020.6.2 Pls First RFP Objections.pdf>
<2020.6.2 Pls First RFA Objections.pdf>

# Exhibit I

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     Plaintiff,                            Case No.:1:19-cv-1868 (RJL)

v.

OMAROSA MANIGAULT NEWMAN,

     Defendant,

_____/

## DEFENDANT, OMAROSA MANIGAULT NEWMAN'S NOTICE OF SERVING VERIFIED ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES

Defendant, OMAROSA MANIGAULT NEWMAN, by and through her undersigned counsel and pursuant to Rule 26 and 33, Fed R. Civ. P., and Local Civil Rules 26.2(d) and 30.4, hereby gives Notice of Verified Answers to Plaintiff's First Interrogatories numbered 1 through 12.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Christopher M. Lynch, Esq., Joseph H. Hunt, Esq., James J. Gilligan, Esq., Jacqueline Coleman Snead, Esq., United States Department of Justice Civil Division, Federal Programs Branch, 1100 L. Street, N.W., Washington, D.C. 20005, at Christopher.m.lynch@usdoj.gov ; Jacqueline.Snead@usdoj.gov ;this **3rd** day of June, 2020.

Respectfully submitted,

**Law Office of John M. Phillips, LLC**

<u>/s/ John M. Phillips</u>
**JOHN M. PHILLIPS, ESQUIRE**
DC Bar Number:  1632674
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
<u>jphillips@floridajustice.com</u>
michele@floridajustice.com
Kirby@floridajustice.com

**The Law Office of J. Wyndal Gordon, P.A.**

<u>/s/ J. Wyndal Gordon, Esq.</u>
**J. WYNDAL GORDON, ESQUIRE**
MD Bar Number: 23572
20 South Charles Street, Suite 400
Baltimore, MD  21201
(410)332-4121
(410)347-3144 facsimile
<u>jwgaattys@aol.com</u>
Attorneys for Defendant

2

<u>**DEFENDANT OMAROSA MANIGAULT NEWMAN'S VERIFIED ANSWERS
TO PLAINTIFF'S FIRST INTERROGATORIES**</u>

1.  IDENTIFY ALL DOCUMENTS contained in the BOXES that YOU contend were
    necessary to complete YOUR FINAL EXECUTIVE BRANCH PUBLIC
    FINANCIAL DISCLOSURE REPORT.

    **ANSWER: Objection. Irrelevant and inmaterial. However, my office
    contained: White House and other business expenses, travel documents, trip
    receipts, mail receipts, other itemizations, quantifications and receipts, tax
    returns, forms and documents used to complete or attach to tax returns,
    contracts, NDA's, disclosures, pay stubs, records from work on the campaign,
    inauguration, transition and administration, information about other
    positions, appearances and requests, information about employment assets
    and income and retirement accounts, such as (but not limited to) IRA and
    Estate documents, thrift savings documents, SAG documents, information
    about past and present employment agreements, information about other
    sources of compensation, such as (but not limited to) W-2's, creditor and debt
    itemizations and accountings, reports, other related tax records and
    supporting documentation, information about other assets and income, such
    as television appearances, royalties, and more, information about student
    loans and other miscellaneous debts and liabilities, gift and travel records and
    more.**

    **I relied on the "boxes" containing all of the information that was in my office
    at the time I last saw it. Unfortunately, the boxes did not contain all of the
    information I expected, needed or which I was entitled to. It contained some
    information necessary to complete the report, which was provided as soon as
    I could.**

    **Please provide an accounting of what was removed and withheld, as well as a
    chain of custody of all of those who packed, stored and otherwise went through
    any documents or items left in my office for a full accounting of other items.**

2.  Identify ALL efforts YOU made to obtain information that YOU contend was
    necessary to complete YOUR FINAL EXECUTIVE BRANCH PUBLIC
    FINANCIAL DISCLOSURE REPORT.  For each effort identified, provide:

    a.  The date or dates of the effort;
    b.  Any individuals involved in the effort; and
    c.  A complete description of the effort.

3

**ANSWER:** At no time during any of the meetings regarding departure, or meetings which followed which discussed making sure the date was agreed, was the FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT discussed. On or about January 24, 2019, I first became aware of the obligation. At that time, I discussed the inability to complete the report, as the form was materially inaccurate and could not be changed on my end. Given my concern about potential retaliation and desire for full accuracy, the severance date needed to be agreed and corrected. I expressed this concern to multiple people over multiple communications, but specifically have provided communications with Stefan Passatino where he assured me he would consult the Chief of Staff and get back to me. I repeatedly told everyone I would file it as soon as this issue was settled and no one indicated that I should do otherwise.

This all began on December 19, 2017, when I was called into the Situation Room to be confronted by Chief of Staff General John Kelley. John Kelley had been very vocal about wanting to terminate me. I was locked in the Situation Room alone where my husband wasn't even allowed in. I was threatened. In addition to other comments, Chief of Staff General John Kelley said, "I'd like to see this be a friendly departure. There are pretty significant legal issues that we hope don't develop into something that, that'll make it ugly for you." Chief of Staff General John Kelley further said, "I think it's important to understand that if we make this a friendly departure we can all be, you know, you can look at your time here in the White House as a year of service to the nation. And then go on without any difficulty in the future relative to your reputation." It was ultimately agreed on December 19, 2019 that my effective departure date would be January 20, 2018.

On or about January 24, 2018, I spoke to Stefan Passatino. The White House kept several boxes of my belongings and records. He informed me a report was due. I asked if they were, "holding up my items in exchange for that report? Is that what I am hearing? Is that why my items…" Stefan cut me off and said, "yeah, yeah, not quite as nefarious as that. It's just process that we sort of have to do… sort of, everything is done… the, the, the form is not so much the issue… because that's sort of separate… the form we need done. Technically, we have to do… you know, there's a fine process. It gets bad later. I want to avoid all of that. Um, holding your stuff is more about the flip top and the ipad, but if you don't have it, you don't have it." Most importantly, he said, "Let me find out what is the story on the dates (of departure)." He said he would, "convey what I hear." I pointed out that I had only been communicating the date of January 20th because that's what was agreed. Stefan said he would, "call (me) on this number" once the date was figured out.

4

On March 26, 2018, I spoke to Deborah and said, "I just got an email. I spoke to Stefan Passatino about the fact that my termination report was incorrect. My final day was supposed to be January the 20th as was announced by the Press Secretary, the statement the President put out, and so this report has to be corrected and so if you all can correct the date, because the termination date is incorrect on the report, I can complete it." Deborah acknowledged the "HR department" was still saying the severance date was "December 19th." Deborah was informed by me, "<u>I am not going to file it with the wrong termination date</u>." And, I said, "Stefan actually said that he also… he was in the room with HR when they agreed to my resignation date being effective January 20th. I am not going to file a false report." I said, "<u>the moment that it's correct, I will file it</u>." And, "as soon as it's correct, I will file it." And, "I will not file the report without the correct information." Deborah said she could go in and change the date and she would need to "<u>talk to Stefan about that</u>."

I waited patiently in good faith and for assistance and at no time was willfully seeking to withhold the Report. The Report could not be completed accurately because of the date issue. Other parts thereof could not be completed because the White House and/or the Department of Justice was withholding boxes of pertinent information.

On April 23, 2019, Ashley Cheung with the Department of Justice emailed me informing me my report was overdue. On May 6, 2019, I replied:

> "I was always eager to get this termination report completed within the 30 days after my January 20th, 2018 separation from the administration.  However, as I had communicated with my ethics contact, Stefan Passantino, at the White House, I am still lacking some key information to complete the report.
>
> Specifically, in several calls and emails to Stefan, we discussed the need for the contents of seven boxes from my office that were seized by Uttam Dhillon, Irene H. Porada and Mr. Passantino, upon my departure.
>
> Much of the information that I need to complete this termination report — financial records, travel documents, emails and other important correspondence related to my employment on the Trump campaign, transition, inauguration and my tenure at the White House — is contained in those boxes.  These boxes are still in the possession of the White House.

**I am still hopeful that the White House will return my boxes and give me access to the data necessary to complete the report.   Please advise."**

On May 9, 2019, Ms. Cheung responded, " Ms. Manigault, Thank you for confirming that you received our letter and for indicating that you would like to resolve this matter and complete your termination report. <u>We will look into the situation and get back to you."</u>

On May 10, 2019, Ms. Cheung said, "Ms. Manigault, The White House Counsel's Office has located documents that it intends to return to you.  Please let <u>us</u> know whether you would like to pick up the documents in person or have them mailed to you.  If you would like them mailed to you, please provide your mailing address." (emphasis added to "us").

On May 15, 2019, I said, "Hi Ashley, I am copying my attorney John Phillips on this email. He will coordinate with you the return of my boxes and all else going forward.
Regards, Omarosa."

My lawyer, Mr. Phillips, immediately responded on May 15, 2019, "Please provide some description of the quantity of materials and proximate availability."

On May 16, 2019, Ms. Cheung said:

> "Mr. Phillips,
>
> Here is the point of contact with whom you can deal directly regarding the return of Ms. Manigault's personal effects:
>
> Scott Gast
> Senior Counsel and Special Assistant to the President
> (202) 456-3284
> <u>Scott.F.Gast@who.eop.gov</u>
>
> <u>We regard the return of your client's personal effects as unrelated to our claim under the Ethics in Government Act.</u>  Please confirm that your client is interested in resolving this matter without litigation and let us know your availability for a call to discuss."

6

On July 2, 2019, Mr. Phillips sent Ms. Cheung and Mr. Gast the following email:

> "On May 10, 2019, Ashley Cheung, "Trial Attorney for the U.S. Department of Justice" messaged Omarosa Manigault Newman. At that time, my client was finally made aware that "the White House Counsel's Office has located documents that it intended to return to (her)." Ms. Cheung, "Trial Attorney for the U.S. Department of Justice," asked, "Please let <u>us</u> know whether you would like to pick up the documents in person or have them mailed to you.  If you would like them mailed to you, please provide your mailing address." Omarosa Manigault Newman copied me and I requested information about the quantity of materials on May 15, 2019. In Ashley Cheung's email, we were told to let "us know," meaning the "U.S. Department of Justice." We did. Immediately.
>
> Thereafter, we were told by Ashley Cheung it was not "us," but "them," we need to contact- particularly "Scott Gast, Senior Counsel and Special Assistant to the President." We still haven't heard anything from "us" or "them" about return of the boxes. No calls. No shipments to my office. Nothing.
>
> On May 6, 2019, Omarosa Manigault Newman reiterated that she had repeatedly "communicated with my ethics contact, Stefan Passantino, at the White House, I am still lacking some information to complete the report." She had a "need for the contents of seven boxes from my office that were seized by Uttam Dhillon, Irene H. Porada and Mr. Passantino, upon my departure." She expressed a desire to complete the report as soon as the boxes were returned. She has never expressed a desire to not file the report. Ashley Cheung spent days resolving return of the boxes.
>
> My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> As such, we would like to pick all materials up then. We'd request the Department of Justice give Omarosa Manigault Newman 30 days from the date she receives all of the contents she is missing to complete the report and to stay the case until

> then. We'd then request dismissal with prejudice of the
> Complaint upon satisfactory completion of the report."

After several email threatening to sue me, on June 17, 2019, Mr. Phillips said, "Are we getting the boxes or not? That seems to be the primary issue here."

On June 25, 2019, Ms. Cheung filed a lawsuit against Omarosa Manigault Newman. She became aware of the subject lawsuit through articles and phone calls from reporters, as they were apparently informed before she was. At that time, she still didn't have a response from Mr. Gast, Ms. Cheung, Mr. Passantino, Deborah or anyone else and had not been informed that the date issue was resolved as promised. She also didn't have her property and records.

On July 3, 2019, Mr. Phillips again emailed Mr. Gast and Ms. Cheung:

> "Can you please stop delaying all of this and answer my
> question? My client hasn't been served, either. So despite
> all of the media your office obtained, thereof 's nothing
> to respond to.
> I'll include her. We need the boxes. You said you had
> them. The DOJ actually has no business with them
> without a subpoena or warrant. Did you get one? Or
> were        you        not        telling        the        truth?
> Once again, we request the Department of Justice give
> Omarosa Manigault Newman 30 days from the date she
> receives all of the contents she is missing to complete the
> report and to stay the case until then. We'd then request
> dismissal with prejudice of the Complaint upon
> satisfactory completion of the report. We'd request
> holding off service until while all of this worked out so we
> don't have to file a Motion for Sanctions because you've
> made false statements to the Court about my client. We
> want this worked out, but want the materials she needs
> to get it turned in as she has told the DOJ and White
> House."

On July 5, 2019, Mr. Phillips reiterated to Mr. Gast and Ms. Cheung:

> "This is another reminder that we seek the boxes which
> the Department of Justice (1) said, ", "Please let us know
> whether you would like to pick up the documents in
> person or have them mailed to you" and then said (2) we
> need to contact- particularly "Scott Gast, Senior Counsel

and Special Assistant to the President." Both are now ignoring us.

My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know the quantity of same. Please let us know whether the Department of Justice gives Omarosa Manigault Newman 30 days from the date she receives all of the contents she is missing to complete the report and to stay the case until then. We'd then request dismissal with prejudice of the Complaint upon satisfactory completion of the report.

This is exactly what has been done do her the entire time-delay, obfuscation and then retaliation. It's a simple request and my email has been entirely ignored by Mr. Gast and selectively ignored by Ms. Cheung. Please respond."

Finally on July 5, 2019, Mr. Gast responded: "Mr. Phillips, Please advise how you would like to arrange for the pickup of Ms. Manigault's belongings."

Mr. Phillips responded on the same day:

"I've said it several times. Your circular questioning is considered obfuscation. I'll copy it a third time.

My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know the quantity of same."

On July 6, 2019, Mr. Phillips again requested:

Please consider this as our daily reminder...

My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know the quantity of same so we will be adequately prepared.

9

**Failure to respond after repeatedly acknowledging possession will be considered civil theft and an unlawful government taking.**

**On July 6, Mr. Gast finally set the date for return of belongings, which was ultimately moved to July 12, 2019:**

**Mr. Phillips,**

**I have two boxes and one mailing tube of materials. Let's plan on meeting outside the Northwest Gate at the White House, at Pennsylvania Avenue and West Executive Avenue, at 2 pm on Thursday, July 11, for you to pick them up.**

**Scott**

**On August 31, 2019, Donald J. Trump used Twitter to say:**

**...Yes, I am currently suing various people for violating their confidentiality agreements. Disgusting and foul mouthed Omarosa is one. I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book. Numerous others also!**
**— Donald J. Trump (@realDonaldTrump) <u>August 31, 2019</u>**

**There are more communications and discovery is ongoing to find everything, but this is a substantial basis for our absolute defense to this action that at no times were my actions willful or intentional.**

3. Identify ALL efforts YOU made to complete YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT. For each effort identified, provide:

   a. The date or dates of the effort;
   b. Any individuals involved in the effort; and
   c. A complete description of the effort.

**ANSWER:    At no time during any of the meetings regarding departure, or meetings which followed which discussed making sure the date was agreed, was the FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT discussed. On or about January 24, 2019, I first**

became aware of the obligation. At that time, I discussed the inability to complete the report, as the form was materially inaccurate and could not be changed on my end. Given my concern about potential retaliation and desire for full accuracy, the severance date needed to be agreed and corrected. I expressed this concern to multiple people over multiple communications, but specifically have provided communications with Stefan Passatino where he assured me he would consult the Chief of Staff and get back to me. I repeatedly told everyone I would file it as soon as this issue was settled and no one indicated that I should do otherwise.

This all began on December 19, 2017, when I was called into the Situation Room to be confronted by Chief of Staff General John Kelley. John Kelley had been very vocal about wanting to terminate me. I was locked in the Situation Room alone where my husband wasn't even allowed in. I was threatened. In addition to other comments, Chief of Staff General John Kelley said, "I'd like to see this be a friendly departure. There are pretty significant legal issues that we hope don't develop into something that, that'll make it ugly for you." Chief of Staff General John Kelley further said, "I think it's important to understand that if we make this a friendly departure we can all be, you know, you can look at your time here in the White House as a year of service to the nation. And then go on without any difficulty in the future relative to your reputation." It was ultimately agreed on December 19, 2019 that my effective departure date would be January 20, 2018.

On or about January 24, 2018, I spoke to Stefan Passatino. The White House kept several boxes of my belongings and records. He informed me a report was due. I asked if they were, "holding up my items in exchange for that report? Is that what I am hearing? Is that why my items…" Stefan cut me off and said, "yeah, yeah, not quite as nefarious as that. It's just process that we sort of have to do… sort of, everything is done… the, the, the form is not so much the issue… because that's sort of separate… the form we need done. Technically, we have to do… you know, there's a fine process. It gets bad later. I want to avoid all of that. Um, holding your stuff is more about the flip top and the ipad, but if you don't have it, you don't have it." Most importantly, he said, "Let me find out what is the story on the dates (of departure)." He said he would, "convey what I hear." I pointed out that I had only been communicating the date of January 20th because that's what was agreed. Stefan said he would, "call (me) on this number" once the date was figured out.

On March 26, 2018, I spoke to Deborah and said, "I just got an email. I spoke to Stefan Passatino about the fact that my termination report was incorrect. My final day was supposed to be January the 20th as was announced by the Press Secretary, the statement the President put out, and so this report has to be corrected and so if you all can correct the date, because the termination

11

date is incorrect on the report, I can complete it." Deborah acknowledged the "HR department" was still saying the severance date was "December 19th." Deborah was informed by me, "<u>I am not going to file it with the wrong termination date</u>." And, I said, "Stefan actually said that he also… he was in the room with HR when they agreed to my resignation date being effective January 20th. I am not going to file a false report." I said, "<u>the moment that it's correct, I will file it</u>." And, "as soon as it's correct, I will file it." And, "I will not file the report without the correct information." Deborah said she could go in and change the date and she would need to "<u>talk to Stefan about that</u>."

I waited patiently in good faith and for assistance and at no time was willfully seeking to withhold the Report. The Report could not be completed accurately because of the date issue. Other parts thereof could not be completed because the White House and/or the Department of Justice was withholding boxes of pertinent information.

On April 23, 2019, Ashley Cheung with the Department of Justice emailed me informing me my report was overdue. On May 6, 2019, I replied:

> "I was always eager to get this termination report completed within the 30 days after my January 20th, 2018 separation from the administration. However, as I had communicated with my ethics contact, Stefan Passantino, at the White House, I am still lacking some key information to complete the report.
>
> Specifically, in several calls and emails to Stefan, we discussed the need for the contents of seven boxes from my office that were seized by Uttam Dhillon, Irene H. Porada and Mr. Passantino, upon my departure.
>
> Much of the information that I need to complete this termination report — financial records, travel documents, emails and other important correspondence related to my employment on the Trump campaign, transition, inauguration and my tenure at the White House — is contained in those boxes. These boxes are still in the possession of the White House.
>
> I am still hopeful that the White House will return my boxes and give me access to the data necessary to complete the report. Please advise."

12

On May 9, 2019, Ms. Cheung responded, " Ms. Manigault, Thank you for confirming that you received our letter and for indicating that you would like to resolve this matter and complete your termination report. <u>We will look into the situation and get back to you.</u>"

On May 10, 2019, Ms. Cheung said, "Ms. Manigault, The White House Counsel's Office has located documents that it intends to return to you.  Please let <u>us</u> know whether you would like to pick up the documents in person or have them mailed to you.  If you would like them mailed to you, please provide your mailing address." (emphasis added to "us").

On May 15, 2019, I said, "Hi Ashley, I am copying my attorney John Phillips on this email. He will coordinate with you the return of my boxes and all else going forward.
Regards, Omarosa."

My lawyer, Mr. Phillips, immediately responded on May 15, 2019, "Please provide some description of the quantity of materials and proximate availability."

On May 16, 2019, Ms. Cheung said:

> "Mr. Phillips,
>
> Here is the point of contact with whom you can deal directly regarding the return of Ms. Manigault's personal effects:
>
> Scott Gast
> Senior Counsel and Special Assistant to the President
> (202) 456-3284
> Scott.F.Gast@who.eop.gov
>
> <u>We regard the return of your client's personal effects as unrelated to our claim under the Ethics in Government Act.</u>  Please confirm that your client is interested in resolving this matter without litigation and let us know your availability for a call to discuss."

On July 2, 2019, Mr. Phillips sent Ms. Cheung and Mr. Gast the following email:

> "On May 10, 2019, Ashley Cheung, "Trial Attorney for the U.S. Department of Justice" messaged Omarosa

13

Manigault Newman. At that time, my client was finally made aware that "the White House Counsel's Office has located documents that it intended to return to (her)." Ms. Cheung, "Trial Attorney for the U.S. Department of Justice," asked, "Please let <u>us</u> know whether you would like to pick up the documents in person or have them mailed to you.  If you would like them mailed to you, please provide your mailing address." Omarosa Manigault Newman copied me and I requested information about the quantity of materials on May 15, 2019. In Ashley Cheung's email, we were told to let "us know," meaning the "U.S. Department of Justice." We did. Immediately.

Thereafter, we were told by Ashley Cheung it was not "us," but "them," we need to contact- particularly "Scott Gast, Senior Counsel and Special Assistant to the President." We still haven't heard anything from "us" or "them" about return of the boxes. No calls. No shipments to my office. Nothing.

On May 6, 2019, Omarosa Manigault Newman reiterated that she had repeatedly "communicated with my ethics contact, Stefan Passantino, at the White House, I am still lacking some information to complete the report." She had a "need for the contents of seven boxes from my office that were seized by Uttam Dhillon, Irene H. Porada and Mr. Passantino, upon my departure." She expressed a desire to complete the report as soon as the boxes were returned. She has never expressed a desire to not file the report. Ashley Cheung spent days resolving return of the boxes.

My client Omarosa Manigault Newman and I will be in Washington, DC  <u>July 11-12, 2019.</u> As such, we would like to pick all materials up then. We'd request the Department of Justice give Omarosa Manigault Newman 30 days from the date she receives all of the contents she is missing to complete the report and to stay the case until then. We'd then request dismissal with prejudice of the Complaint upon satisfactory completion of the report."

After several email threatening to sue me, on June 17, 2019, Mr. Phillips said, "Are we getting the boxes or not? That seems to be the primary issue here."

**On June 25, 2019, Ms. Cheung filed a lawsuit against Omarosa Manigault Newman. She became aware of the subject lawsuit through articles and phone calls from reporters, as they were apparently informed before she was. At that time, she still didn't have a response from Mr. Gast, Ms. Cheung, Mr. Passantino, Deborah or anyone else and had not been informed that the date issue was resolved as promised. She also didn't have her property and records.**

**On July 3, 2019, Mr. Phillips again emailed Mr. Gast and Ms. Cheung:**

> **"Can you please stop delaying all of this and answer my question? My client hasn't been served, either. So despite all of the media your office obtained, thereof 's nothing to respond to.**
>
> **I'll include her. We need the boxes. You said you had them. The DOJ actually has no business with them without a subpoena or warrant. Did you get one? Or were you not telling the truth? <u>Once again, we request the Department of Justice give Omarosa Manigault Newman 30 days from the date she receives all of the contents she is missing to complete the report and to stay the case until then. We'd then request dismissal with prejudice of the Complaint upon satisfactory completion of the report.</u> We'd request holding off service until while all of this worked out so we don't have to file a Motion for Sanctions because you've made false statements to the Court about my client. We want this worked out, but want the materials she needs to get it turned in as she has told the DOJ and White House."**

**On July 5, 2019, Mr. Phillips reiterated to Mr. Gast and Ms. Cheung:**

> **"This is another reminder that we seek the boxes which the Department of Justice (1) said, ", "Please let <u>us</u> know whether you would like to pick up the documents in person or have them mailed to you" and then said (2) we need to contact- particularly "Scott Gast, Senior Counsel and Special Assistant to the President." Both are now ignoring us.**
>
> **My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know**

the quantity of same. Please let us know whether the Department of Justice gives Omarosa Manigault Newman 30 days from the date she receives all of the contents she is missing to complete the report and to stay the case until then. We'd then request dismissal with prejudice of the Complaint upon satisfactory completion of the report.

This is exactly what has been done do her the entire time-delay, obfuscation and then retaliation. It's a simple request and my email has been entirely ignored by Mr. Gast and selectively ignored by Ms. Cheung. Please respond."

Finally on July 5, 2019, Mr. Gast responded: "Mr. Phillips, Please advise how you would like to arrange for the pickup of Ms. Manigault's belongings."

Mr. Phillips responded on the same day:

"I've said it several times. Your circular questioning is considered obfuscation. I'll copy it a third time.

My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know the quantity of same."

On July 6, 2019, Mr. Phillips again requested:

Please consider this as our daily reminder...

My client Omarosa Manigault Newman and I will be in Washington, DC <u>July 11-12, 2019.</u> Please advise of where we can pick up her belongings. Please let us know the quantity of same so we will be adequately prepared.

Failure to respond after repeatedly acknowledging possession will be considered civil theft and an unlawful government taking.

On July 6, Mr. Gast finally set the date for return of belongings, which was ultimately moved to July 12, 2019:

16

Mr. Phillips,

I have two boxes and one mailing tube of materials. Let's plan on meeting outside the Northwest Gate at the White House, at Pennsylvania Avenue and West Executive Avenue, at 2 pm on Thursday, July 11, for you to pick them up.

Scott

On August 31, 2019, Donald J. Trump used Twitter to say:

...Yes, I am currently suing various people for violating their confidentiality agreements. Disgusting and foul mouthed Omarosa is one. I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book. Numerous others also!
— Donald J. Trump (@realDonaldTrump) <u>August 31, 2019</u>

There are more communications and discovery is ongoing to find everything, but this is a substantial basis for our absolute defense to this action that at no times were my actions willful or intentional.

4. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 1 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Filer's Positions Held Outside United States Government."

ANSWER:   Omarosa Manigault Newman repeatedly indicated a desire to complete the form, but was waiting on the White House to provide her with a corrected form as the form provided to her had the wrong departure date. She also needed information and/or return of her records, which were not returned until after this lawsuit was filed. She considered the promises and assertions by the White House to be an extension of the deadline.

The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests,

17

information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.

I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.

Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.

5. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 2 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Filer's Employment Assets & Income and Retirement Accounts."

ANSWER:   The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.

18

**I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled. It contained some information necessary to complete the report, which was provided as soon as I could.**

**Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.**

6. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 3 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Filer's Employment Agreements and Arrangements."

**ANSWER:    The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.**

**I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled. It contained some information necessary to complete the report, which was provided as soon as I could.**

**Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.**

7. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 4 of YOUR FINAL EXECUTIVE BRANCH PUBLIC

19

FINANCIAL DISCLOSURE REPORT entitled "Filer's Sources of Compensation Exceeding $5,000.00 in a Year."

**ANSWER:   The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.**

**I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.**

**Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.**

8. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 5 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Spouse's Employment Assets & Income and Retirement Accounts."

   **ANSWER:   None known.**

9. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 6 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Other Assets and Income."

   **ANSWER:   The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other**

itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.

I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.

Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.

10. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 7 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Transactions."

ANSWER:    The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.

I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.

Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.

11. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 8 of YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT entitled "Liabilities."

ANSWER:   The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.

I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.

Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.

12. IDENTIFY ALL DOCUMENTS from the BOXES YOU contend were necessary to complete Part 9 of YOUR FINAL EXECUTIVE BRANCH PUBLIC

FINANCIAL   DISCLOSURE   REPORT   entitled   "Gifts   and   Travel Reimbursements"

**ANSWER:    The materials which were in my office which were necessary to review and incorporate included but were not limited to: White House and other business expenses, travel documents, trip receipts, mail receipts, other itemizations, quantifications and receipts, tax returns, forms and documents used to compete or attach to tax returns, contracts, NDA's, disclosures, pay stubs, records from work on the campaign, inauguration, transition and administration, information about other positions, appearances and requests, information about employment assets and income and retirement accounts, such as (but not limited to) IRA and Estate documents, thrift savings documents, SAG documents, information about past and present employment agreements, information about other sources of compensation, such as (but not limited to) w-2's, creditor and debt itemizations and accountings, reports, other related tax records and supporting documentation, information about other assets and income, such as television appearances, royalties, and more, information about student loans and other miscellaneous debts and liabilities, gift and travel records and more.**

**I relied on the "boxes" containing all of the information in my office at the time I last saw it. Unfortunately, the boxes did not contain all of the information I expected, needed or which I was entitled to. It contained some information necessary to complete the report, which was provided as soon as I could.**

**Please provide an accounting of what was removed and withheld, as well as a chain of custody of all of those who packed, stored and otherwise went through any documents or items left in my office for a full accounting of other items.**

23

## VERIFICATION AFFIDAVIT

_____
OMAROSA MANIGAULT NEWMAN

06/03/2020
Date

STATE OF FLORIDA

COUNTY OF DUVAL

BEFORE ME, the undersigned authority, personally appeared Omarosa Manigault Newman, who is personally known to me or who furnished identification in the form of _____, and who after being first duly sworn, deposes and says that the foregoing is true and correct to the best of his/her knowledge, information and belief, and that he/she subscribed his/her name hereto in certification thereof.

6/3/2020                          _____
Date                                  NOTARY PUBLIC

Michele M. Adkison
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG926972
Expires 10/28/2023

Michele M. Adkison
Type or Print Name

My Commission Expires: 10/28/23

I, John M. Phillips, Esq., have reviewed my client Omarosa Manigault Newman's Answers to Plaintiff's First Interrogatories and have provided objections in good faith.

_____
JOHN M. PHILLIPS, ESQUIRE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA,** |
| |
| **Plaintiff,** |
| |
| **v.** |
| |
| **OMAROSA MANIGAULT NEWMAN,** |
| |
| **Defendant.** |

Civil Action No. 1:19-cv-1868 (RJL)

## [PROPOSED] ORDER GRANTING PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR PROTECTIVE ORDER

Upon consideration of Plaintiff's Motion for Protective Order, any opposition, and the entire record in this case, it is hereby ordered that:

Plaintiff's Motion for Protective Order is GRANTED.

(1) Defendant is not permitted to take the depositions of:

    a)  President Donald J. Trump;

    b)  Former White House Chief of Staff John Kelly;

    c)  DEA Acting Administrator Uttam Dhillon; and

    d)  Plaintiff's current and prior trial counsel, including Ashley Cheung and James Gilligan.

(2) Defendant is not permitted to conduct discovery into the process by which this matter was referred to and/or authorized by the Department of Justice.

(3) Defendant is not permitted to conduct discovery regarding her termination date from her position as Director of Communications for the Office of Public Liaison in the White House.

(4) Defendant is not permitted to conduct discovery regarding the location or custody of the personal effects she left at the White House between December 2017 and July 2019.

(5) Plaintiff is not required to respond to Defendant, Omarosa Manigault Newman's First Request for Admissions to Plaintiff, Nos. 21-23 and 25-28.

(6) Plaintiff is not required to produce documents in response to Defendant, Omarosa Manigault Newman's First Request for Production of Documents, Nos. 3-5, 7-9, 11, and 13.

It is so ORDERED, this day, _____, 2020.

_____
The Hon. Richard J. Leon
United States District Judge