UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>OMAROSA MANIGAULT NEWMAN,<br><br>    Defendant. | Civil Action No. 1:19-cv-1868 (RJL) |

**PLAINTIFF UNITED STATES OF AMERICA'S
<u>REPLY IN SUPPORT OF MOTION TO COMPEL</u>**

In her Opposition to Plaintiff's Motion to Compel, Defendant once again concedes that she does not believe that her nondisclosure agreement (the "Agreement") with the Trump Campaign applies to the documents requested by Plaintiff in this case. That concession alone is fatal to her Opposition.

Defendant's position is further eviscerated by the Agreement itself, which she provided Plaintiff for the first time when she submitted it in support of her Opposition. Although Defendant has objected to producing virtually all documents requested by Plaintiff on the theory that doing so could subject her to suit for breach of the Agreement, the Agreement expressly *permits* Defendant to disclose information in the situation here: where she is under a "legal obligation to disclose" it. In short, the Agreement does not cover the documents requested by Plaintiff and

Defendant can produce documents in litigation even if they are covered by the Agreement. Her objections are meritless.

Nevertheless, as of this filing, Defendant has produced only six audio recordings—two of which Defendant had already publicly filed with the Court at the time she produced them—and *no* documents, based on the pretext that she will be subjected to "bad faith litigation" for breach of the Agreement if she complies with Plaintiff's requests.[1] As shown in Plaintiff's Motion, this objection would not excuse her discovery obligations if it were well-founded; it is even more inappropriate now that it has been shown to be pretext by Defendant's own submissions.

**I.  Defendant Cannot Evade Document Discovery Based on a Concededly-Inapplicable Nondisclosure Agreement with a Third Party.**

Defendant's objection to producing documents is premised entirely on the contention that the Trump Campaign may sue her for beaching the Agreement if she does so. This objection is meritless: The Agreement does not apply to the requested documents, and producing them would not breach the Agreement if they did. These facts, taken with Defendant's course of conduct in presenting this objection, make clear that her objection is merely pretextual.

**A.  The Agreement Undisputedly Does Not Apply to the Requested Documents**

As explained in Plaintiff's Motion, Defendant's Agreement with the Trump Campaign does not apply to the documents Plaintiff has requested in the instant case or excuse Defendant from her discovery obligations here.[2] While the Agreement pertains to information "with respect

---

[1] In addition to Plaintiff's First Requests for Production of Documents addressed in Plaintiff's Motion, Defendant has as of this filing responded to Plaintiff's Second, Third, and Fourth Requests for Production of Documents by asserting the same objection with respect to all of Plaintiff's requests at issue in those documents. Defendant has not produced *anything* in response to any requests in Plaintiff's Second, Third, and Fourth Requests for Documents.

[2] Defendant makes no effort to defend the boilerplate objections to certain requests in addition to the objection related to the Agreement discussed herein. She has thus waived these other objections, which are also meritless for the reasons set forth in Plaintiff's Motion to Compel. *Cf. Stewart v. Int'l Union, Sec., Police & Fire Professionals of Am.*, 271 F. Supp. 3d 276, 282 (D.D.C.

to the life, political affairs, and/or business affairs" of President Trump, his children, grandchildren, siblings, and their respective spouses, Agreement ¶ 6.a, ECF No. 19-2, Plaintiff's requests seek materials related to Defendant's failure to file her required financial disclosure report and her putative defenses in this case. *See, e.g.,* Lynch Decl. Ex. A (Defendant's Responses to Plaintiff's First Request for Production of Documents) at 3, ECF No. 18-1 (noting request for "ALL COMMUNICATIONS . . . CONCERNING YOUR FINAL EXECUTIVE BRANCH PUBLIC FINANCIAL DISCLOSURE REPORT (including, but not limited to, YOUR obligation to file a FINAL EXECUTIVE BRANCH PUBLIC DISCLOSURE REPORT within 30 days of your TERMINATION)."); *see generally id.* at 1-5. The requested documents are expected to include: (a) communications from the Office of White House Counsel requesting that Defendant file her financial disclosure report, reminding her of the deadline to file it, and offering her assistance completing it (Request 2); (b) Defendant's bank records and other financial documents, as well as Defendant's communications with her financial institutions (Requests 3 & 4); and (c) Human Resources and benefits-related paperwork relating to Defendant's termination from the White House (Request 1). *See, e.g.*, *id.* at 1-5; Def's Mot. to Dismiss ¶¶ 13-16 & Exs. B & C. It is inconceivable that such documents would implicate the President or his family. Indeed, Defendant does not dispute this: In her Opposition, she states that she "agrees with the ultimate conclusion reached by the Government on this issue." Opp'n at 3. The Agreement undisputedly does not restrict disclosure of the documents requested by Plaintiff.

### B.   The Agreement Does Not Prevent the Production of Documents

Plaintiff's putative concern that she may be sued for breaching the Agreement is unfounded

---

2017) ("It is well understood in this Circuit . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (internal quotation marks and citations omitted); *see* Mot. to Compel at 3-4, ECF No. 18. These objections should be overruled.

for another, equally significant reason. The Agreement itself—which was provided to Plaintiff for the first time when Defendant filed her Opposition to the instant motion—sets forth the conditions Defendant must follow when she comes under "any legal obligation to disclose any" information protected by the Agreement. Agreement ¶ 1.e, ECF 19-2. In other words, even when documents *are* subject to the Agreement, the Agreement acknowledges that there may be a need to produce such documents and sets forth conditions for doing so *without* breaching it. Under these provisions, Defendant must

> (i) provide the Company with written notice of any legal obligation to disclose any Confidential Information as soon as you become aware of such obligation, (ii) not make any disclosure notwithstanding such obligation until the Company (or the appropriate Trump Person) has had a reasonable opportunity to seek an appropriate protective order or similar relief, (iii) fully cooperate and join with the Company (and the appropriate Trump Person) in any request for a protective order or similar relief, (iv) exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information in the event no such protective order or similar relief is obtained . . . .

*Id.* But as explained in Plaintiff's Motion, Defendant has not requested that Plaintiff stipulate to a protective order protecting the documents' confidentiality nor sought one from the Court at any time since Plaintiff served its First Requests for Production of Documents on October 24, 2019.[3] *See* Mot. at 5-6. Nor has Defendant otherwise sought confidential treatment of the documents. Indeed, Defendant has not even indicated that she provided the Trump Campaign with notice of the discovery requests in this case. If she actually believed the materials at issue could be covered by the Agreement, she should have followed the procedures detailed in the Agreement by providing "written notice" to the Trump Campaign so that the Campaign could decide whether to seek a protective order or other relief. Thus, *whether or not* any document at issue is protected by

---

[3] Defendant's response claims that she would be submitting a motion for protective order "concurrently" with her Opposition to Plaintiff's Motion, Opp'n at 9, but no such motion has been filed as of the filing of this reply.

4

the Agreement, the Agreement does not by its terms prevent disclosure in this litigation. If Defendant is subjected to litigation because she has failed to follow the procedures set forth above, that is her own fault; it is not grounds to excuse Defendant's discovery obligations.[4]

### C. Defendant's Course of Conduct Is Inconsistent with a Genuine Attempt to Comply with Her Discovery Obligations and Her Obligations to Third Parties

That the Agreement (a) does not cover the documents at issue here and (b) does not preclude disclosure of documents it protects is more than sufficient to overcome Defendant's objection to producing documents in this litigation. But her conduct in this litigation dispels any doubt that her objection is merely pretextual.

*First*, as noted above, Defendant has not sought a protective order in this action and apparently has not followed the Agreement's procedures related to the production of covered documents. That she has invoked the Agreement but not complied with it, *see* Agreement ¶ 1.e, reveals her objection for what it is—a transparent attempt to avoid unfavorable discovery.

*Second*, more than a year after the Trump Campaign initiated an arbitration against her for breaching the agreement, Defendant herself *publicly filed* in this litigation the recording she contends was made in the Situation Room of the White House and now claims is subject to the

---

[4] The pending arbitration between Defendant and the Trump Campaign, in which the latter contends that Defendant breached the Agreement, does not make her objection any more plausible. The text of the Statement of Claim in that arbitration makes clear that the arbitration does not relate to Defendant's "disclosure" of any materials in discovery or litigation, but rather to *public statements* Defendant made in her book and on various television appearances. *See* ECF No. 19-1 (Statement of Claim) ¶¶ 13, 14, 18, 21, 22 ("Ms. Manigault-Newman materially breached the Agreement by, among other things, disclosing Confidential Information and making disparaging statements about Trump Persons," (a) "[i]n an episode of the television program *Celebrity Big Brother*"; (b) in the book "entitled, 'UNHINGED: An Insider's Account of the Trump White House by Omarosa Manigault Newman' (the 'Book')"; (c) "during an interview with NBC's *Meet the Press* to promote the Book"; (d) "during an interview with *The Today Show* to promote the Book"; and (e) "in a[n] . . . interview on MSNBC's '*Velshi & Ruhle*' to promote the Book."); *see id*. ¶ 17 ("Excerpts from the Book containing Confidential Information and disparaging statements, in violation of the Agreement, have been published on the internet at numerous websites.").

arbitration. She also claims that another recording she has produced in this litigation is already the subject of the arbitration, and she has made additional materials public (including at least one email that is responsive to Plaintiff's requests) in filings in this litigation. In other words, Defendant has disclosed materials to both Plaintiff and the public when she believes those materials may advantage her, while seeking to selectively shield all other materials Plaintiff has requested in this litigation. This use of the Agreement "as both a sword and a shield" is improper. *Anderson v. Nixon*, 444 F. Supp. 1195, 1199 (D.D.C. 1978). Defendant "cannot have it both ways." *Id.*

*Third*, Defendant does not explain why—even if (contrary to her own contention) the Agreement governed certain responsive documents—she has yet to produce *any* documents aside from six audio recordings. Her categorical refusal to produce any other documents is improper. She does not—and could not—claim that *every* document responsive to Plaintiff's requests relates in any way to the President, his businesses, or his family members. Indeed, although her Opposition is nearly devoid of description of any particular documents that Defendant is currently withholding or any articulation of a conceivable nexus between those documents and the Agreement, she concedes that some documents have none. *See, e.g.,* Opp'n. at 6 (noting Defendant had responsive communications with Ivanka Trump among the "numerous communications" Defendant has not produced).[5] Defendant for the first time now claims she will produce certain

---

[5] Defendant also erroneously suggests that Plaintiff is seeking discovery materials related to her communications with former government counsel on this matter while also seeking to preclude that same counsel's deposition. Plaintiff has requested documents related to Defendant's efforts to obtain documents that she contends were necessary to complete her financial disclosure report—for example, communications with her bank and credit card companies requesting her statements (assuming Defendant ever made any such efforts). By contrast, the deposition of Plaintiff's former trial counsel is both improper and unnecessary for the reasons set forth in Plaintiff's Motion for Protective Order, ECF No. 17, at 9-12. However, if the Court precludes discovery into the issue of the personal effects left by Defendant in the White House, Plaintiff will withdraw or limit its discovery requests related to this material. *See generally id.*

6

documents responsive to one of the requests that Plaintiff served in October 2019.  Opp'n at 7.  That she is now, over nine months after Plaintiff's request and a month after Plaintiff moved to compel, withdrawing her objection with respect to one category of documents is telling.  In the case of these documents, and every other document that is undisputedly not subject to the Agreement, Defendant is currently in violation of her discovery obligations for having failed to produce them.  This is so *regardless* of any objection she has made on the basis of the Agreement.

In short, Defendant's Agreement with the Trump Campaign is no protection from her discovery obligations here.  She should be ordered to produce all non-privileged responsive documents to Plaintiff.

## II.    An Agreement with a Third Party Does Not Excuse Defendant's Failure to Comply with Her Discovery Obligations

As demonstrated above, the specific agreement Defendant signed with the Trump Campaign does not apply to excuse Defendant's failure to comply with her discovery obligations in this case.  But this would also be true *regardless* of the content of the specific agreement, because, as explained in Plaintiff's motion, a party cannot escape her obligations under the Federal Rules by making a private agreement with nonparties to the litigation.  *See, e.g., Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 540 (D. Kan. 1989).

Defendant provides no authority whatsoever for the alternative proposition that a party to litigation may avoid its discovery obligations by voluntarily entering a nondisclosure agreement with a third party.  With good reason—the proposition is absurd.  If it held, parties could protect any document they wished from future litigation simply by making agreements with friendly counterparties to shield documents from disclosure.  This ability to prospectively immunize particular non-privileged documents from discovery would circumvent the principles underlying Rule 26.  *See, e.g., In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004) ("The Federal Rules of

Civil Procedure encourage the exchange of information through broad discovery."); *Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-CV-962-J-39JBT, 2014 WL 12616965, at *2 (M.D. Fla. May 30, 2014) ("[T]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.").

Defendant's only arguments in response are that (a) the "trial court has broad authority in discovery matters" and that (b) *Bohannon* is distinguishable because an action is already pending against her for violation of her nondisclosure agreement, rather than simply prospective. Neither argument is persuasive. As to the first, the Court unquestionably has broad authority in discovery matters, but the mere invocation of that proposition cannot support the wholesale jettisoning of one party's obligations to produce documents under the Federal Rules. As to the second, the distinction is irrelevant—as explained above, the principle does not turn on whether an action to punish a party's violation of its voluntarily-assumed nondisclosure obligations is pending or merely potentially impending; the issue is that voluntarily assuming obligations not to disclose documents cannot take precedence over one's obligations to produce documents as a party to litigation under the Federal Rules.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's Motion to Compel and order Defendant to expeditiously produce all non-privileged documents responsive to Plaintiff's requests.

Dated: July 8, 2020                    ETHAN P. DAVIS
                                       Acting Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Christopher M. Lynch*
Christopher M. Lynch
D.C. Bar # 1049152
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4537
Fax: (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Plaintiff*