**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                                    Civil Action No. 1:19-cv-1868 (RJL)

**OMAROSA MANIGAULT NEWMAN,**

**Defendant.**

**PLAINTIFF UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.      Defendant Knowingly and Willfully Violated EIGA by Failing to File a
        Termination Report within 30 Days of Leaving the White House Despite
        Repeated Offers of Assistance and Reminders to Do So ...................................... 2

II.     Defendant's Excuses Fail to Create a Genuine Issue of Material Fact ............................. 4

        A.      Defendant Failed To Provide Competent Evidence to Support Her
                Opposition .......................................................................................... 5

        B.      Defendant's Attempt to Dispute Her Termination Date Is Unsupported and
                Immaterial .......................................................................................... 6

        C.      Defendant's Personal Effects that She Failed to Retrieve from the White
                House until After this Action Was Filed Have No Bearing on Her
                Willfulness .......................................................................................... 8

        D.      Defendant Knew of Her Obligations Pursuant to EIGA and Willfully
                Failed to Submit a Termination Report Regardless of Her Unsupported
                Contention that Her Gmail Address Was "Unmonitored" .................................. 10

        E.      Defendant's Meritless and Unsupported Allegation that this Lawsuit Was
                Filed for Retaliatory Purposes Cannot Preclude Summary Judgment ................... 12

        F.      Defendant Fails to Satisfy the Requirements of Rule 56(d) and Her
                Meritless Contentions Regarding Discovery Cannot Preclude Summary
                Judgment .......................................................................................... 13

III.    The Court Should Award Plaintiff the Maximum Amount of Civil Penalties
        Permitted by Law ........................................................................................... 15

CONCLUSION .............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477U.S. 242 (1986) ........................................................................................... 5

*Dawson v. Reukauf*,
  751 F. Supp. 2d 146 (D.D.C. 2010) ................................................................. 5

*Hill v. Assocs. for Renewal in Educ., Inc.*,
  No. CV 12-0823 (JDB), 2014 WL 12538946 (D.D.C. Jan. 23, 2014) ..............................5

*Nunnally v. District of Columbia*,
  243 F. Supp. 3d 55 (D.D.C. 2017) .................................................................... 5

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.*,
  743 F.3d 19 (D.C. Cir. 2014) ..................................................................... 13, 14

*United States v. Gant*,
  268 F. Supp. 2d 29 (D.D.C. 2003) ......................................................... *passim*

*United States v. Hunter*,
  No. 1:14-cv-442-JEB, slip. op. (D.D.C. Aug. 27, 2014) ......................................... 3

*United States v. Lairy*,
  1:19-cv-2488-RC (D.D.C. July 17, 2020) ........................................................... 4

*United States v. Tarver*,
  642 F. Supp. 1109 (D. Wyo. 1986) ................................................................... 3

**Statutes**

*5 U.S.C. app. 4 § 101 ................................................................................... 1, 2, 6

5 U.S.C. app. 4 § 102 ...................................................................................... 8

*5 U.S.C. app. 4 § 104(a) ............................................................................ 2, 3, 8

28 U.S.C. § 2461 ........................................................................................... 16

**Rules**

Fed. R. Civ. P. 56(c) ....................................................................................... 6

Fed. R. Civ. P. 56(d) ................................................................................ 1, 13, 14

LCvR 7(h)(1) ……………………………………………………………………………………… 1, 4

**Regulations**

5 C.F.R. § 2634.701 ................................................................................................ 13, 15

**Other Authorities**

153 Cong. Rec. S324 (daily ed. Jan. 10, 2007)........................................................ 15

**INTRODUCTION**

This is a simple case. In its motion for summary judgment, Plaintiff United States of America demonstrated that Defendant Omarosa Manigault Newman knowingly and willfully violated the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 §§ 101 *et seq.*, when she failed to file her required financial disclosure report ("Termination Report") within 30 days of the termination of her government employment and continued her failure to file over many months, despite scores of communications requesting that she do so and offering assistance. As of the date of this filing, more than three years after her termination, Defendant still has not filed a compliant Termination Report.[1]

There is no dispute that Ms. Manigault Newman was required to file a Termination Report. There is no dispute that she failed to file any such report for more than a year and a half after her termination although she was repeatedly advised of her obligation to do so. These undisputed facts are dispositive. Ms. Manigault Newman has knowingly and willfully violated EIGA and is liable for a civil penalty. In light of the egregious nature of her violation, this Court should award the Government the statutory maximum penalty of $61,585.

In her response brief, which is almost devoid of legal argument or citation, Defendant fails to controvert either the law or facts set forth in Plaintiff's motion. She also fails to satisfy basic procedural requirements—she neither provides a statement of contested material facts required by Local Civil Rule 7(h)(1) nor the affidavit specifying further needed discovery required by Rule 56(d)—which alone warrants that the Court grant this motion. Finally, Defendant relies on unfounded arguments supported neither by law nor competent evidence to create a genuine issue for trial where none exists. The motion should be granted.

---

[1] *See* Reply Declaration of Christopher M. Lynch ("Reply Lynch Decl.") Ex. B.

**ARGUMENT**

I.      **Defendant Knowingly and Willfully Violated EIGA by Failing to File a Termination Report within 30 Days of Leaving the White House Despite Repeated Offers of Assistance and Reminders to Do So.**

Defendant does not and cannot dispute that she was required to file a Termination Report within 30 days of her termination and that she failed to do so. *See* Plaintiff's Motion ("Mot.") for Summary Judgment at 21, ECF No. 24; Plaintiff's Statement of Undisputed Material Facts ("SUMF") at 1-2, ECF 24-1; *see also* Opp'n at 2, ECF No. 30 (contending dispute regarding Defendant's termination date "prevented the timely and accurate completion of the financial disclosure report"). Nor does she dispute that she first submitted a Termination Report—though woefully deficient—with her motion to dismiss this action 20 months after its due date. *See* SUMF at 2; Jones Decl. Ex. C; Opp'n at 9, 23 (stating "Defendant's final report was filed a short time after Defendant received her materials back from the White House" which occurred "[o]n July 12, 2019"). And she did not endeavor to correct that submission's deficiencies until 15 months later, when her opposition to the instant motion was due.[2] Reply Lynch Decl. Ex. A; *see generally* Mot. at 8-20 (setting forth the timeline of defendant's non-compliance from her termination through the filing of Plaintiff's Motion for Summary Judgment). There is no question that this is not compliant with EIGA's requirements. *See* 5 U.S.C. app 4 §§ 101(e), 104(a).

Nor is there any legitimate question that this violation was knowing and willful. *See, e.g.*, *United States v. Gant*, 268 F. Supp. 2d 29 (D.D.C. 2003) ("An individual knowingly and willfully fails to comply with the EIGA's filing requirements when that individual 'intentionally disregards the statute or is indifferent to its requirements.'") (quoting *United States v. Tarver*, 642 F. Supp.

---

[2] Defendant's most recently submitted report, emailed to the White House Counsel's Office by Defendant's counsel on December 21, 2020, *three years* after her termination from government employment, remains deficient. *See* Reply Lynch Decl. Ex. B.

1109, 1111 (D.Wyo.1986)); *Tarver*, 642 F. Supp. at 1111-12 (knowing and willful requirement is met where a defendant "refused to comply, although he possessed full knowledge of the Act."); 5 U.S.C. app 4 § 104(a). The uncontroverted record demonstrates that Defendant was repeatedly reminded—including during calls and in response to emails initiated by Defendant herself—that her Termination Report was due. *See* Mot. at 8-16; Passantino Decl. ¶¶ 9-28 & Exs. B-J, ECF No. 24-2; Jones Decl. ¶¶ 6-10 & Ex. B, ECF No. 24-3; De la Vega Decl. ¶¶ 19-24 & Ex. B, ECF No. 24-4. She also repeatedly was advised that her asserted "only hold up" for not filing was an insufficient justification for not submitting that report. Passantino Decl. ¶ 20; *see id.* ¶¶ 23-24 & Exs. F-H.

And still, she did not even attempt to submit the report until over a year later when her counsel filed an unmeritorious motion to dismiss this action. *See* Jones Decl. ¶¶ 6-11 & Exs. B & C; Lynch Decl. Ex. A (Plaintiff's RFA No. 9 and Defendant's response), ECF No. 24-7. Indeed, *she did not even log into Integrity.gov to access the online report* at any time in the two years following the termination of her government employment. Veilleux Decl. ¶ 8, ECF No. 24-5. Defendant then raised new and contradictory excuses only when faced with the prospect of litigation, and only attempted to file a report in an unsuccessful attempt to moot this litigation. *See* Mot. at 29-34; Jones Decl. ¶ 11 & Ex. C. Although informed that her submission was not complaint (in part because only four of the eight required sections even contained information), she waited another 15 months—after the instant motion was pending—to attempt to correct those deficiencies, despite still being sent weekly reminders that she was out of compliance. Jones Decl. ¶¶ 10-24 & Exs. B-F; *see* Reply Lynch Decl. Ex. A. This conduct violated EIGA. *See, e.g.*, *Tarver,* 642 F. Supp. at 1112 (finding a "clear violation" of EIGA where the defendant failed to file a required financial disclosure after he "was twice informed of the requirements of the Act and that those requirements applied to him"); Mem. Op. & Order at 2 ("*Hunter* Op."), *United States v. Hunter*,

1:14-cv-442-JEB (D.D.C. Aug. 27, 2014), ECF No. 8 (failure to file a Termination Report was "knowing and willful" where defendant was sent four letters advising him of his obligation under EIGA to file a Termination Report); *Gant*, 268 F. Supp.2d at 31, 33 (failure to file was willful where defendant "received two departmental memoranda, three certified letters from the Department, a summons and a copy of the plaintiff's complaint, two voice-mail messages, and a follow-up letter from the plaintiff's counsel"); Mem. Op. ("*Lairy* Op.") at 6, *United States v. Lairy*, 1:19-cv-2488-RC (D.D.C. July 17, 2020), ECF No. 16 (defendant "intentionally disregarded the statute by failing to file the required report for over six months, even after repeated attempts by [his agency] to provide clear instructions to help [him] file the report").

## II.      Defendant's Excuses Fail to Create a Genuine Issue of Material Fact

In her opposition, Defendant creates no genuine issue of material fact. She does not dispute that her failure to comply with EIGA's requirements came despite the repeated admonitions that her Termination Report was due (and past due) and the offers of assistance she undisputedly received from White House personnel. *See, e.g.*, Passantino Decl. ¶¶ 10-28 & Exs. B-J; *see also* Opp'n at 12-13 (discussing one of Defendant's calls with the White House Counsel's Office).

Defendant also failed to satisfy the requirements of Local Civil Rule 7(h)(1), by neither submitting her own statement of material facts nor denying any of the statements in Plaintiff's statement of material facts. LCvR 7(h)(1) ("An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.). As such, all the facts identified in Plaintiffs' statement of undisputed material facts, *see* ECF No 24-1—which are sufficient to grant the motion—should be deemed admitted. LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of

4

material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Thus, on that alternative basis, the Court should grant the Government's motion.

### A.   Defendant Failed To Provide Competent Evidence to Support Her Opposition

Defendant did not submit any competent evidence in support of the many excuses for her failure to file her Termination Report that she raises in her opposition. Indeed, the only evidence Defendant submits is her own conclusory affidavit, unsupported by corroborating documents or detail. *See* Declaration of Omarosa Manigault Newman ("OMN Decl."), ECF No. 30-1. The remainder of her argument is unsupported speculation and innuendo. This is inadequate to defeat summary judgment as a matter of law. *See, e.g.*, *Dawson v. Reukauf*, 751 F. Supp. 2d 146, 150–51 (D.D.C. 2010) ("[C]onclusory statements unsupported by any evidence in the record, aside from [a party's] own self-serving affidavits" and "mischaracteriz[ations of] evidence contained in the record" are insufficient to preclude summary judgment.); *Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 68 (D.D.C. 2017)  ("[A party's] mere speculations are insufficient to create a genuine issue of fact.").

To survive summary judgment, a party must submit *evidence* that is sufficient to enable a jury to find in her favor at trial. *See e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of [a party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Hill v. Assocs. for Renewal in Educ.*, Inc., No. CV 12-0823 (JDB), 2014 WL 12538946, at *1 (D.D.C. Jan. 23, 2014) ("Thus, parties . . . who are adverse to a motion for summary judgment must, for example, rebut the moving party's affidavits with other affidavits or sworn statement; simple allegations that the moving party's affidavits are inaccurate or incorrect are not sufficient.");

*see generally* Fed. R. Civ. P 56(c). Here, Defendant has failed to do so. The absence of evidentiary support offered for her contentions requires that her arguments be disregarded and that Plaintiff's motion be granted.

      **B.**    **Defendant's Attempt to Dispute Her Termination Date Is Unsupported and Immaterial**

      Defendant disputes her date of termination from government employment—claiming the relevant date is January 20, 2018 instead of December 19, 2017—and claims the dispute is material. Not so. White House official records and the undisputed evidence make clear that Defendant's termination was effective December 19, 2017. Passantino Decl. ¶¶ 7-9 & Exs. G & H; *see generally* Mot. at 27-29. Even accepting Defendant's unsubstantiated claim that her termination date was instead January 20, 2018, the Court still should find a violation. Defendant was required to submit a termination report within 30 days of her termination of government employment. *See* 5 U.S.C. app 4 § 101(e). She concededly did not do so within 30 days of December 19, 2017 and she concededly did not do so within 30 days of January 20, 2018. *See* Lynch Decl. Ex. A at 2 (Plaintiff's RFA nos. 5 and 6 and Defendant's responses). She did not even *attempt* to submit a Termination Report before September 11, 2019, well over a year after her termination and after this litigation had already been filed.[3] *See id.* at 3 (RFA 9); Jones Decl. Ex. C. In short, Defendant is and has been in violation of EIGA for three years regardless of which termination date the Court credits. Thus, any alleged dispute over that date is immaterial.

---

[3] Defendant was promptly advised that her September 2019 submission was deficient; these deficiencies were detailed in a November 18, 2019 email to Defendant's counsel after he failed to respond to the calls of White House ethics officials attempting to work with Defendant to complete her report. *See* Jones Decl. ¶¶ 13 & Ex. D. Defendant made no further effort to complete her report until December 21, 2020, the date her opposition was originally due. *See* Jones Decl. ¶ 24; Reply Lynch Decl. Ex. A. As of this filing, Defendant still has not submitted a compliant Termination Report, in further demonstration of her indifference to EIGA's requirements. *See id.* Ex. B.

6

Defendant notes that she disputed her termination date on a call with Stephan Passantino of the White House Counsel's Office. Opp'n at 11-12. But the undisputed evidence reflects that in this call, which occurred on March 5, 2018, Mr. Passantino made "super clear" that Defendant's belief about her termination date was irrelevant, because it was already more than 30 days past even Defendant's claimed termination date and the report had not been completed. Mot. to Dismiss Ex. B; Passantino Decl. ¶ 20. And Defendant ignores the unrebutted evidence demonstrating that after that call she was advised by two different ethics attorneys at the White House Counsel's Office that White House records indicate her termination was effective on December 19, 2017, including Mr. Passantino's March 26, 2018 email advising Defendant that her "employment with the government officially ended effective December 19, 2017," attaching supporting records, and explaining that "[a]ccordingly, [Defendant's] termination report was due on January 18, 2018." Passantino Decl. Ex. G; *see id.* Ex. H (records attached to email demonstrating Defendant's termination date was December 19, 2017); *see id.* ¶¶ 23-24 & Ex. F. Thus, there can be no serious dispute that the appropriate date for purposes of her Termination Report was December 19, 2017.[4]

Defendant suggests the Court should sanction her decision to ignore altogether her reporting obligations until this litigation was filed because of her disagreement with the date which she assumed (but never verified) appeared on her Integrity.gov form. Her contention regarding the date on the online form is supported only by her self-serving affidavit and is contradicted by the record. *See, e.g.,* Jones Decl. Ex. A (a printout of the online Termination Report, showing that it had no information entered into the termination date field); Veilleux Decl. ¶ 8 (sworn statement of System Owner of online report system that Defendant did not log in to her report at any time in

---

[4] Defendant does not provide any evidence with her opposition rebutting the testimony of Mr. Passantino that Gen. Kelly ordered Defendant's termination to take effect immediately on December 19, 2017 or contend that General Kelly did not have the authority to make that decision. Passantino Decl. ¶¶ 7-9. That, too, is sufficient basis to dispose of her argument.

the two years following her termination). But even if true that her online report contained the "wrong" date, it would not excuse her failure to file her Termination Report—just as it would not excuse a government employee's failure to file her income tax return because she thought she earned an immaterial amount more than the amount reflected on her government-issued W-2. The speciousness of her decision to ignore her legal obligation altogether on that basis is further demonstrated by her post-litigation conduct. Her deficient September 11, 2019 draft report contains no termination date, and her deficient December 21, 2020 draft report lists her preferred termination date of January 20, 2018.[5] *See* Jones Decl. Ex. C; Reply Lynch Decl. Ex. A. In other words, Defendant has always had the option of submitting a compliant Termination Report with whatever her preferred entry for the termination date field.

In short, Defendant's unsupported attempt to dispute her termination date is not material.

### C.    Defendant's Personal Effects that She Failed to Retrieve from the White House until After this Action Was Filed Have No Bearing on Her Willfulness

The record here demonstrates that Defendant's belated, *post hoc* excuse that the personal effects she failed to retrieve from the White House had any bearing on her failure to file her Termination Report is unfounded. *See* Mot. at 29-32. Most telling is that Defendant herself did not raise this suggestion at any time in the months after her termination in response to the repeated entreaties of White House ethics officials attempting to obtain her compliance with EIGA. She did not suggest that this was a "hold up" to her report even on the March 2018 call with Mr. Passantino

---

[5] Defendant suggests that submitting a Termination Report with an incorrect termination date might violate section 104(a) of EIGA's prohibition on falsifying or failing to report "information that such person is required to report" under section 102 of EIGA. Opp'n at 10; 5 U.S.C. app 4 § 104(a). But section 102 of EIGA does not require the reporting of an individual's termination date. *See* 5 U.S.C. app 4 § 102. Moreover, Defendant has never suggested that the 30 day difference between her preferred termination date and her official termination date would have any effect on what she must disclose, let alone identified what that effect would be. And most important for purposes here, Defendant has not proffered evidence to support such a claim, as would be necessary to defeat summary judgment.

in which *he* raised the issue of returning her personal effects. *See* Passantino Decl. ¶ 20-21. Contrary to the unsupported contention in her opposition that Defendant's boxes of personal effects were withheld from her by White House personnel, she made no attempt to retrieve them, to contact White House officials about them, or to complete her Termination Report using information available to her for more than a year after this conversation. The first time she suggested that her personal effects had any link to her Termination Report was in May 2019 in response to a communication from the Department of Justice about this matter. *See* Mot. to Dismiss Ex. D, ECF No. 5-2.

But just as her conduct *prior* to litigation demonstrates both the willfulness of Defendant's violation and the pretextual nature of this excuse, so too does her conduct *after* retrieving the boxes. If Defendant genuinely had no disregard for EIGA's requirements and genuinely needed her boxes to complete her Termination Report, she would surely have completed her Termination Report within 30 days of retrieving them—if not immediately. But Defendant did not do so; rather she waited until 60 days after retrieving the boxes until the date she filed her motion to dismiss to submit her deficient Termination Report, demonstrating once again what little regard she had for EIGA. *See* Jones Decl. Ex. C (September 11, 2019 initial draft Termination Report submission); Opp'n at 9 (noting Defendant retrieved the boxes "[o]n July 12, 2019.").

Moreover, as noted in Plaintiff's motion, despite being asked in discovery, Defendant has never identified materials that she needed from her boxes and *could not obtain elsewhere* that actually had any bearing on completing her Termination Report. *See* Mot. at 30-31. She wholly fails to respond to this argument in her opposition and indeed predicates her argument on the bare assertion in her declaration that "the withholding of my personal effects caused a delay in the

completion of my final financial disclosure form."[6] OMN Decl. ¶ 36. This is wholly insufficient to defeat summary judgment. *See, e.g. Dawson*, 751 F. Supp. 2d at 150-51 ("[C]onclusory statements unsupported by any evidence in the record, aside from [a party's] own self-serving affidavits" are insufficient to preclude summary judgment).

### D.    Defendant Knew of Her Obligations Pursuant to EIGA and Willfully Failed to Submit a Termination Report Regardless of Her Unsupported Contention that Her Gmail Address Was "Unmonitored"

Notwithstanding Plaintiff's clear demonstration that (a) Defendant did in fact monitor her putatively "unmonitored" gmail address and (b) she proffered that email as an appropriate means to contact her after her government employment ended, *see* Mot. at 32-34, Defendant again trots out an unsubstantiated claim to the contrary in her opposition. This time, she contends the Complaint "does not allege that these emails were ever <u>received</u>," ignoring the record evidence the Government since has put before the Court. Opp'n at 16 (emphasis in original).

This contention fails for several reasons. First, instead of rebutting Plaintiff's evidence— which she cannot do—Defendant in her opposition limits her discussion to allegations in the Complaint regarding five specific emails, dated (1) December 29, 2017; (2) January 3, 2018; (3) January 12, 2018; (4) January 19, 2018, and (5) February 6, 2018, claiming that all five were sent to a single email address and asserting without support that the email address was "unmonitored."[7]

---

[6] By contrast, in sworn discovery responses, Defendant initially claimed that financial documents in her office were needed to complete her Termination Report, but failed to explain why these documents were unavailable elsewhere, such as from her financial institutions. *See* Lynch Decl. Ex. D at 1-2. In a supplement to these responses purporting to identify the items she claimed were necessary to complete her report that were not provided to her in July 2019, she identified only official travel-related documents, but such documents were not pertinent to the deficiencies identified in her September 2019 report. *See id.* Ex. E at 1-2; Jones Decl. ¶¶ 25-28.

[7] Indeed, Defendant's declaration submitted in connection with her summary judgment opposition contains no statement (a) disputing her receipt of the numerous communications from White House personnel or even claiming that her gmail address was "unmonitored"; or (b) that she was unaware of her obligations to submit a Termination Report within 30 days of the termination of her employment. *See generally* OMN Decl. That, alone, is fatal. In fact, her declaration makes clear

*See* Opp'n at 16. The record evidence demonstrates the falsity of that claim. Specifically, the February 6, 2018 email was sent to both the putatively "unmonitored" gmail and the concededly "[]monitored" icloud address—as evident from the face of the document itself. *See* Passantino Decl. Ex. E. Moreover, on March 26, 2018, Defendant emailed Stefan Passantino at the White House Counsel's Office *from that gmail address in reply to one of the emails he sent her there. See id.* Ex. I.

Second, the uncontroverted evidence of communications between Defendant and the White House supporting Plaintiff's motion was not limited to the five emails Defendant cherry-picked to address in her opposition. In addition to those five emails, Defendant was contacted about her Termination report at her concededly monitored icloud address by separate communications on at least (1) January 24, 2018; (2) January 24, 2018; (3) January 26, 2018; (4) February 6, 2018; (5) February 22, 2018; (6) March 26, 2018; and (7) March 26, 2018. *See id.* Exs. B, C, D, E & G. Defendant does not, and cannot, claim she did not receive these emails; indeed, Defendant's husband replied to one of them. *Id.* Ex. D. And Defendant herself concededly spoke on the phone to attorneys in the White House Counsel's Office about her Termination Report obligations at least twice. *See* OMN Decl. ¶ 20; Lynch Decl. Ex. B at 4-5 & 11-12. In short, if her gmail address were "unmonitored," it would not help Defendant's case.

Third, at the time of her separation, Defendant executed a separation form confirming that her gmail address was the appropriate contact for post-employment communications from the White House. Accordingly, Defendant assumed the responsibility for monitoring that address and

---

that she was aware of the obligation to file her Termination Report and discussed it with the White House Counsel's Office. OMN Decl. ¶¶ 16-21.

should be imputed to have knowledge of all subsequent communications sent by the White House to that address. *See* Passantino Decl. Ex. A.

In sum, Defendant has not and indeed cannot establish that her gmail address was "unmonitored," and the uncontroverted evidence demonstrates that she received numerous relevant communications at her icloud address in addition to her gmail address, and thus this excuse does not create a genuine issue precluding summary judgment.

### E.   Defendant's Meritless and Unsupported Allegation that this Lawsuit Was Filed for Retaliatory Purposes Cannot Preclude Summary Judgment

Defendant's unjustified claims of retaliation likewise fail to defeat summary judgment. Defendant clearly violated EIGA's requirements in a "flagrant and ongoing" manner, and did so knowingly and willfully, displaying—at a minimum—"intentional[] disregard[]" for and "indifferen[ce] to them. *Gant*, 268 F. Supp. 2d at 33-34. The motivations of the individuals who referred the case to the Department of Justice have no bearing on those elements.[8] Indeed, by regulation, referrals for failure to file a report required under EIGA are *mandatory*: "The head of each agency, each Secretary concerned, or the Director of the Office of Government Ethics, as appropriate, *must* refer to the Attorney General the name of any individual when there is reasonable cause to believe that such individual has willfully failed to file a public report or information

---

[8] To the extent Defendant's opposition suggests that she is questioning the Department of Justice's decision to file the case or that discovery into that issue is appropriate, that is without support. The Department of Justice's decision to file an EIGA action is an exercise of prosecutorial discretion that generally is unreviewable by the courts. *See generally* Pl.'s Renewed Mot. for Protective Order at 8, ECF No. 17 (citing cases). Defendant, in any event, has disavowed any intention to seek discovery into that decision. *See* Opp'n to Pl.'s Mot. for Protective Order 11, ECF No. 20 ("Ms. Manigault Newman seeks information relating to the referral for prosecution, not the ultimate decision to prosecute.").

required on such report[.]"[9] 5 C.F.R. § 2634.701(a) (emphasis added). Thus, regardless of any referring official's motivation, the outcome would be the same: Defendant's failure to timely file her termination report should have been referred to the Department of Justice.[10]

## F. Defendant Fails to Satisfy the Requirements of Rule 56(d) and Her Meritless Contentions Regarding Discovery Cannot Preclude Summary Judgment

Defendant cites Rule 56(d) and unauthenticated emails to claim that a purported need for further discovery should defeat summary judgment at this time. This contention fails on both law and fact. As an initial matter, Defendant has not filed a motion under Rule 56(d), so her unsubstantiated complaints about "discovery frustrations" should be disregarded. Opp'n at 21. But even if her opposition were to be construed as a 56(d) motion, it is deficient. As the D.C. Circuit and the plain text of Rule 56(d) make clear, to support a 56(d) motion, the "movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (internal quotation marks and citations omitted); Fed. R. Civ. P. 56(d) (providing for remedy where party opposing summary judgment "shows by affidavit or declaration, for specified reasons, it cannot

---

[9] There can be no question that there was good cause for the referral. *See* Mot. at 8-16; Passantino Decl. ¶¶ 9-28 & Exs. B-J, ECF No. 24-2; Jones Decl. ¶¶ 6-10 & Ex. B, ECF No. 24-3; De la Vega Decl. ¶¶ 19-24 & Ex. B, ECF No. 24-4.

[10] The record makes clear, in any event, that Plaintiff's claims of retaliation are unfounded. There is no relationship between the referral and any public statement of Defendant's. Mr. Passantino's declaration makes exhaustively clear that every effort was made to obtain Defendant's compliance with her EIGA obligations. Passantino Decl. ¶¶ 9-28 & Exs. B-J. It further demonstrates that Mr. Passantino made the referral after the unsuccessful certified mail delivery of his June 11, 2018 letter, which preceded by several months the August 2018 statements on which Defendant's allegations of retaliation are predicated. *Compare* Passantino Decl. ¶ 27 & Ex. I *with* Opp'n at 18-19 (contending without support that public statements of Defendant in August 2018 prompted the referral). And unsupported contentions about actions taken or not taken by other officials in other agencies with respect to their personnel have no bearing on the propriety of referring *Defendant's* conceded failure to file her Termination Report to the Department of Justice by Mr. Passantino. *Cf.* Opp'n at 20-21 & Opp'n Ex. 8 at 6-7.

present facts essential to justify its opposition"). The D.C. Circuit has made clear that any such affidavit "must satisfy" "three criteria": "(1) [I]t must outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation, (2) it must explain why [the non-movant] could not produce the facts in opposition to the motion for summary judgment; and (3) it must show the information is in fact discoverable." *Folliard*, 764 F.3d at 26 (internal quotation marks and citations omitted; alterations in original). Defendant has complied with none of these requirements. She submitted no such affidavit here—not even a declaration from counsel authenticating the emails purportedly supporting this argument. Moreover, even the *argument in her brief* fails to satisfy any of the substantive requirements of a 56(d) *affidavit* set forth by the D.C. Circuit. Defendant's brief simply quotes self-serving emails by counsel demanding that this case be dismissed, reiterating her positions in the litigation, and claiming a desire for depositions of certain individuals. Defendant does not state "with particularity" what facts are necessary, why they could not be produced in her opposition, or that they are discoverable.

Defendant could not substantiate a 56(d) affidavit had she tried. Indeed, Defendant has not been thwarted in any discovery she has sought pursuant to the Federal Rules of Civil Procedure. Despite the references to depositions in the emails submitted with her opposition, *Defendant has not served a single notice of deposition*, as required by Rule 30(b*), at any time while this case has been pending*. Not one. Whether this failure was by design or negligence, it alone should preclude any 56(d) relief. Although Defendant does not cite anything related to discovery in her brief other than the emails referencing depositions, she has no grounds to seek 56(d) relief on the basis of any other discovery, either. As of this filing, Defendant has propounded only two sets of discovery requests in this case (one set of requests for admission and one set of requests for production), both served on November 18, 2019, approximately 14 months ago. Plaintiff completed its response to these requests over the summer, and Defendant has neither challenged Plaintiff's responses by

14

moving to compel under Rule 26 nor sought additional discovery since. Thus, her eleventh-hour plea for further discovery should not preclude summary judgment.

III.     **The Court Should Award Plaintiff the Maximum Amount of Civil Penalties Permitted by Law**

As demonstrated in Plaintiff's Motion, Defendant's "flagrant and ongoing" violation of EIGA is singularly flagrant, far beyond that seen in reported cases, warranting a significant penalty. *Gant*, 268 F. Supp. 2d at 34; *see* Mot. at 34-36. Rather than simply comply with her statutory obligations as the overwhelming majority of covered personnel do year-in and year-out, Defendant has imposed immense burdens on the White House ethics personnel who have sought to obtain her compliance over the past three years, the Department of Justice, which had to bring this action after her non-compliance, and ultimately the Court. She has raised contradictory, unsupported, and transparent excuses at every turn, sometimes changing the details of her story as contradictory facts are pointed out and at other times persisting in transparent misstatements. *See* Mot. at 8-19, 26-24.

Plaintiff also demonstrated that Defendant has the ability to pay the maximum fine—something Defendant makes no effort to rebut—such that any lower penalty would be "a slap on the wrist" that would fail to appropriately recognize the significance of her misconduct and deter future violations. 153 Cong. Rec. S324 (daily ed. Jan. 10, 2007) (statement by Sen. Vitter); Mot. at 35-36.

Defendant's only argument about the penalty sought here is that it has "not previously [been] disclosed." Opp'n at 3. Plaintiff's Complaint sought the maximum amount listed in the statute, $50,000, plus "such further relief as the Court deems just and proper." Compl. at 6 (Prayer for Relief), ECF 2-1. The amount set forth in Plaintiff's Motion, $61,585, is the same statutory maximum, adjusted for inflation pursuant to law. 5 C.F.R. § 2634.701(b). This inflation

adjustment, authorized by Congress, is unquestionably "just and proper" as a matter of law.[11] *See* 28 U.S.C. § 2461, statutory note. Defendant does not claim prejudice from any discrepancy between the amount stated in the Complaint and the amount set forth in Plaintiff's motion.

Indeed, Defendant concedes that "the amount . . . is certainly up to the discretion of this Court." Opp'n at 4. As the record clearly demonstrates, her conduct warrants imposition of that maximum penalty.

## CONCLUSION

Defendant has now spent more than three times the length of her government service resisting her obligation to file a Termination Report under EIGA. It is time she be held accountable. For the reasons set forth above and in Plaintiff's motion, the Court should grant Plaintiff's Motion for Summary Judgment (ECF No. 24), enter judgment for Plaintiff, and impose a civil penalty of $61,585.


Dated: January 19, 2021                    JOHN V. COGHLIN
                                           Deputy Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Branch Director

                                           JACQUELINE COLEMAN SNEAD
                                           Assistant Branch Director

                                           */s/ Christopher M. Lynch*
                                           Christopher M. Lynch
                                           D.C. Bar # 1049152
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division,
                                           Federal Programs Branch
                                           1100 L Street, N.W.

---

[11] To the extent the Court believes it necessary to conform the Complaint such that it explicitly states the inflation-adjusted maximum penalty, Plaintiff will seek leave to amend its Complaint to effect that change. *See* Fed. R. Civ. P. 15(a)(2).

Washington, D.C. 20005
Tel.: (202) 353-4537
Fax: (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-1868 (RJL) |
| OMAROSA MANIGAULT NEWMAN, | |
| Defendant. | |

## REPLY DECLARATION OF CHRISTOPHER M. LYNCH IN SUPPORT OF PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

I, Christopher M. Lynch, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.　　I am a Trial Attorney with the Federal Programs Branch of the Civil Division of the United States Department of Justice and counsel for Plaintiff in this matter.

2.　　Attached as Exhibit A is a true and correct copy of an email dated on or about December 21, 2020, from Erica Jackson, counsel for Defendant, to David Jones, with a copy to me, including its attachment.

3.      Attached as Exhibit B is a true and correct copy of an email dated on or about

January 12, 2021, from David Jones to Erica Jackson, with a copy to me.

Executed this 19th day of January, 2021.


                                        */s/ Christopher M. Lynch*
                                         Christopher M. Lynch

Exhibit A

| | |
|---|---|
| **From:** | erica@floridajustice.com |
| **To:** | David.M.Jones@who.eop.gov |
| **Cc:** | "John M. Phillips"; "O Newman"; Lynch, Christopher M. (CIV); Snead, Jacqueline Coleman (CIV) |
| **Subject:** | RE: O. Manigault Termination Report |
| **Date:** | Monday, December 21, 2020 3:41:13 PM |
| **Attachments:** | OMN Termination Report 2020 Signed.pdf |

Please see attached the signed and completed termination report. Sorry for any inconvenience this may have caused. Again, do not hesitate to let our office know if you have any concerns about the filing of the following report. Additionally, Please let our office know when the report is finalized.

Best,

## Erica Jackson
*Attorney*

Phillips & Hunt
212 N. Laura
Jacksonville, FL 32202
Office Telephone:  (904) 444-4444
Email:  erica@floridajustice.com
Web:  www.floridajustice.com



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**From:** erica@floridajustice.com <erica@floridajustice.com>
**Sent:** Monday, December 21, 2020 3:10 PM
**To:** 'David.M.Jones@who.eop.gov' <David.M.Jones@who.eop.gov>
**Cc:** 'John M. Phillips' <jmp@floridajustice.com>; 'O Newman' <omarosa@icloud.com>; 'Christopher.M.Lynch@usdoj.gov' <Christopher.M.Lynch@usdoj.gov>; 'Jacqueline.Snead@usdoj.gov' <Jacqueline.Snead@usdoj.gov>
**Subject:** O. Manigault Termination Report

Greetings,

Please see attached Omarosa Manigault's amended Termination Report. This is Ms. Manigault's official filing of her termination report. Do not hesitate to let our office know if you have any concerns about the filing of the following report. Additionally, Please let our office know when the report is finalized.

Best,

Erica Jackson
*Attorney*

Phillips & Hunt
212 N. Laura
Jacksonville, FL 32202
Office Telephone:  (904) 444-4444
Email: erica@floridajustice.com
Web:  www.floridajustice.com



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

OGE Form 278e (Updated July 2020) (Expires 12/31/21)
U.S. Office of Government Ethics; 5 C.F.R. part 2634 | Form Approved: OMB No. (3209-0001)

| Report Type: | Termination | ☑ |
| Year (Annual Report only): | | |
| Date of Appointment/Termination: | 01/20/2017 | |

UNITED STATES OFFICE OF
**GOVERNMENT ETHICS**
★
Preventing Conflicts of Interest
in the Executive Branch

# Executive Branch Personnel Public Financial Disclosure Report (OGE Form 278e)

## Filer's Information

| Last Name | First Name | MI | Position | Agency |
|---|---|---|---|---|
| Manigault | Omarosa | | Director of Communications OPL | White House |

Other Federal Government Positions Held During the Preceding 12 Months:

None

Name of Congressional Committee Considering Nomination (Nominees only):

N/A

Filer's Certification - I certify that the statements I have made in this report are true, complete and correct to the best of my knowledge:

| Signature: | Date/ ⟍ / ⟍ / ⟍ |
|---|---|

Agency Ethics Official's Opinion — On the basis of information contained in this report, I conclude that the filer is in compliance with applicable laws and regulations (subject to any comments below)

| Signature: | Date: |
|---|---|

Other Review Conducted By:

| Signature: | Date: |
|---|---|

U.S. Office of Government Ethics Certification (if required):

| Signature: | Date: |
|---|---|

Comments of Reviewing Officials:

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Instructions for Part 1

Note: This is a public form. Do not include account numbers, street addresses, or family member names. See instructions for required information.

Filer's Name: Omarosa Manigault

Page Number:

## Part 1: Filer's Positions Held Outside United States Government

| # | Organization Name | City/State | Organization Type | Position Held | From | To |
|---|---|---|---|---|---|---|
| 1. | There4go, LLC | Los Angeles, CA | Corporation | Managing Member | 1/2012 | Present |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Instructions for Part 2

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

**Filer's Name**

Omarosa Manigault

**Part 2: Filer's Employment Assets & Income and Retirement Accounts**

| # | Description | EIF | Value | Income Type | Income Amount | | Page Number |
|---|---|---|---|---|---|---|---|
| 1. | Trump for America Presidential, Transition Team | N/A ▸ | | Salary | $15,001 - $50,000 ▸ | |
| 2. | Screen Actors Guild- Producers Pension Plan | N/A ▸ | | Interest | None (or less than $201 ▸) | |
| 3. | "The Bitch Switch: Knowing How to Turn it on and Off" | N/A ▸ | | Royalties | None (or less than $201 ▸) | |
| 4. | There4go, LLC | | None (or less than $1,001) ▸ | | None (or less than $201 ▸) | |
| 5. | Art My Way: Momarosa's Guide to Living a Vibrant Energei | N/A ▸ | | Rent or Royalties | None (or less than $201 ▸) | |
| 6. | Television Distribution- Girlfrieds Syndication | N/A ▸ | | Rent or Royalties | $201 - $1,000 ▸ | |
| 7. | The Apprentice- Syndication | N/A ▸ | | Rent or Royalties | $1,001 - $2,500 ▸ | |
| 8. | Pilgrims Operation Inc- David Tutera Celebrations | N/A ▸ | | Rent or Royalties | $1,001 - $2,500 ▸ | |
| 9. | UBS Retirement | No ▸ | | | | |
| 10. | Federal Farm Credit Banks Bonds | | $50,001 - $100,000 | Interest ▸ | $1,001 - $2,500 ▸ | |
| 11. | Federal Home Loan Bank Bonds | | $50,001 - $100,000 | Interest ▸ | $1,001 - $2,500 ▸ | |
| 12. | Assistant to President Direct of Communications OPL | | | Salary | $100,001 - $1,000,000 ▸ | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Instructions for Part 3

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

**Filer's Name** | **Page Number**
Omarosa Manigault |

## Part 3: Filer's Employment Agreements and Arrangements

| # | Employer or Party | City/State | Status and Terms | Date |
|---|---|---|---|---|
| 1. | Screen Actors Guild | Los Angeles, CA | Producers pension Plan- will continue to participate in this defined benefit plan if vested. | 1/2004 |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Instructions for Part 4

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

| Filer's Name | | | Page Number |
|---|---|---|---|
| Omarosa Manigault | | | |

**Part 4: Filer's Sources of Compensation Exceeding $5,000 in a Year**

| # | Source Name | City/State | Brief Description of Duties |
|---|---|---|---|
| 1. | N/A | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |
| 17. | | | |
| 18. | | | |
| 19. | | | |
| 20. | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Instructions for Part 5

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

Filer's Name

Omarosa Manigault

**Part 5: Spouse's Employment Assets & Income and Retirement Accounts**

| # | Description | EIF | Value | Income Type | Income Amount | Page Number |
|---|---|---|---|---|---|---|
| 1. | N/A | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Note: This is a public form. Do not include account numbers, street addresses, or family member names. See instructions for required information.

Instructions for Part 6

**Filer's Name**
Omarosa Manigault

## Part 6: Other Assets and Income

| # | Description | EIF | Value | Income Type | Income Amount | Page Number |
|---|---|---|---|---|---|---|
| 1. | Michael Clarke Duncan Administrative Trust | No ▸ | | | ▸ | |
| 2. | YCDA, Inc | No ▸ | | | ▸ | |
| 3. | City National Bank- YCDA Checking Account | N/A ▸ | $15,001 - $50,000 | ▸ Interest | $201 - $1,000 | ▸ |
| 4. | | ▸ | | | | |
| 5. | | ▸ | | | | |
| 6. | | ▸ | | ▸ | | ▸ |
| 7. | | ▸ | | ▸ | | ▸ |
| 8. | | ▸ | | | | |
| 9. | | ▸ | | ▸ | | ▸ |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Note: This is a public form. Do not include account numbers, street addresses, or family member names. See instructions for required information.

Instructions for Part 7

**Filer's Name**

Omarosa Manigault

**Page Number**

## Part 7: Transactions

| # | Description | Type | Date | Amount |
|---|---|---|---|---|
| 1. | N/A | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

Instructions for Part 8

**Filer's Name**

Omarosa Manigault

**Part 8: Liabilities**

| # | Creditor Name | Type | Amount | Year Incurred | Rate | Term | Page Number |
|---|---|---|---|---|---|---|---|
| 1. | Consolidated Federal  Student Loans | Student Loan | $50,001 - $100,000 | ► 1998 | 5%-7% | 20 Years | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |
| 7. | | | | | | | |
| 8. | | | | | | | |
| 9. | | | | | | | |
| 10. | | | | | | | |
| 11. | | | | | | | |
| 12. | | | | | | | |
| 13. | | | | | | | |
| 14. | | | | | | | |
| 15. | | | | | | | |
| 16. | | | | | | | |
| 17. | | | | | | | |
| 18. | | | | | | | |
| 19. | | | | | | | |
| 20. | | | | | | | |

OGE Form 278e (Updated July 2020) (Expires 12/31/21)

Note: This is a public form. Do not include account numbers, street addresses, or family member names.  See instructions for required information.

Instructions for Part 9

**Filer's Name**

Omarosa Manigault

**Page Number**

## Part 9: Gifts and Travel Reimbursements

| # | Source Name | City/State | Brief Description | Value |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

| PART | # | ENDNOTE |
|---|---|---|
| 2. | 2. | Monthly payment upon retirement if vested. Filer does not know how much she will be eligible to receive if she vests. Based on the vesting rules explained on the SAG-AFTRA website, there is a chance that filer will have a break in service that may not allow her to vest, in which case this entry is moot and constitutes over-reporting. Filer has no objection to over-reporting. |
| 2. | 4. | There4go,LLC was established by filer to collect acting residuals and other income. |
| 3. | 1 | Monthly payment upon retirement if vested. Filer does not know how much she will be eligible to receive if she vests. Based on the vesting rules explained on the SAG-AFTRA website, there is a chance that filer will have a break in service that may not allow her to vest, in which case this entry is moot and constitutes over-reporting. Filer has no objection to over-reporting. |
| 6. | 7. | Current value of underlying holdings is reported. |
| 2. | 9. | The Duncan Administrative Trust is the beneficiary of this IRA. |
| 2. | 10. | These bonds are in an IRA that is part of a Trust. The filer is a 1/3 beneficiary of the Trust. |
| 2. | 11. | These bonds are in an IRA that is part of a Trust. The filer is a 1/3 beneficiary of the Trust. |

Manigault, Omarosa -

| PART | # | ENDNOTE |
|------|---|---------|
| 6. | .2 | The Trust and YCDA, Inc. are entitled to residuals due to Michael Clarke Duncan. These residuals are of unknown value. The Trust owns the intellectual property of Michael Clarke Duncan. This intellectual property is of unknown value. |
| | | The intellectual property of Michael Clarke Duncan is: |
| | | Actor (97 credits) |
| | | 2015/I The Challenger |
| | | Duane |
| | | 2013 Saints Row IV (Video Game) |
| | | Benjamin King (voice, credit only) |
| | | 2013 Ultimate Spider-Man (TV Series) |
| | | Groot |
| | | -Guardians of the Galaxy (2013) ... Groot (voice) |
| | | 2013 From the Rough |
| | | Roger |
| | | 2013 A Resurrection |
| | | Addison |
| | | 2012 In the Hive |
| | | Mr. Hollis |
| | | 2006-2012 Family Guy (TV Series) |
| | | Black Co-Worker / Fozzie Bear / Boy on Mushrooms |
| | | - Ratings Guy (2012) ... Black Co-Worker (voice) |
| | | - The Tan Aquatic with Steve Zissou (2007) ... Fozzie Bear (voice) |
| | | - Stu & Stewie's Excellent Adventure (2006) ... (voice) |
| | | - You May Now Kiss the... Uh... Guy Who Receives (2006) ... Boy on Mushrooms (voice) |
| | | 2012 The Finder (TV Series) |
| | | Leo Knox |
| | | - The Boy with the Bucket (2012) ... Leo Knox |
| | | - Voodoo Undo (2012) ... Leo Knox |
| | | - The Inheritance (2012) ... Leo Knox |
| | | - The Conversation (2012) ... Leo Knox |
| | | - The Last Meal (2012) ... Leo Knox |
| | | Show all 13 episodes |
| | | 2012 The High Fructose Adventures of Annoying Orange (TV Series) |
| | | Chunkee Cheeses / Marshmallow King |
| | | - Lords of Fruitbush (2012) ... Chunkee Cheeses |
| | | - Marshmalla (2012) ... Marshmallow King (voice) |
| | | 2011 Legend of Kung Fu Rabbit |
| | | Slash (voice) |
| | | 2011 Green Lantern |
| | | Kilowog (voice) |
| | | 2011 Mystery Girl (TV Movie) |
| | | 'Big Jim' Nelson |
| | | 2011 Cross (Video) |

Manigault, Omarosa - .

PART                    #                    ENDNOTE

2011 Cross (Video)
Erlik
2011 Bones (TV Series)
Leo Knox
- The Finder (2011) ... Leo Knox
2010 Cats & Dogs: The Revenge of Kitty Galore
Sam (voice)
2010 Redemption Road
Augy
2008-2009 Two and a Half Men (TV Series)
Jerome Burnett
- The Two Finger Rule (2009) ... Jerome Burnett
- The Mooch at the Boo (2008) ... Jerome Burnett
2009 Street Fighter: The Legend of Chun-Li
Balrog / Bison (Japan)
2009 The Slammin' Salmon
Cleon Salmon
2008 Chuck (TV Series)
Colt
- Chuck Versus the First Date (2008) ... Colt
2008 The Suite Life of Zack and Cody (TV Series)
Coach Little
- Benchwarmers (2008) ... Coach Little
2008 American Crude
Spinks
2008 Kung Fu Panda
Commander Vachir (voice)
2008 Delgo
Elder Marley (voice)
2008 Welcome Home, Roscoe Jenkins
Otis
2007 Slipstream
Mort / Phil Henderson / Patrolman
2007 God of War II (Video Game)
Atlas (voice)
2005-2007 Loonatics Unleashed (TV Series)
Massive
- The Hunter (2007) ... Massive (voice)
- Acmegeddon: Part 2 (2006) ... Massive (voice)
- Acmegeddon: Part 1 (2006) ... Massive (voice)
- Stop the World I Want to Get Off (2005) ... Massive (voice)
2007 The Last Mimzy
Nathanial Broadman
2006 Air Buddies (Video)
Wolf (voice)

Manigault, Omarosa -

PART        #        ENDNOTE

Wolf (voice)
2006/II One Way
The General
2006 School for Scoundrels
Lesher
2006 Saints Row (Video Game)
Benjamin King (voice)
2006 Brother Bear 2 (Video)
Tug (voice)
2006 Talladega Nights: The Ballad of Ricky Bobby
Lucius Washington
2006 Minoriteam (TV Series)
Balactus
- Balactus: Part II (2006) ... Balactus (voice)
- Balactus: Part I (2006) ... Balactus (voice)
2005 The Suffering: Ties That Bind (Video Game)
Blackmore (voice)
2003-2005 The Adventures of Jimmy Neutron: Boy Genius (TV Series)
Commander Baker
- My Big Fat Spy Wedding (2005) ... Commander Baker (voice)
- Operation: Rescue Jet Fusion (2003) ... Commander Baker (voice)
2005 Stewie Griffin: The Untold Story (Video)
The Stork (voice)
2005 The Island
Starkweather Two Delta / Jamal Starkweather
2005 Dinotopia: Quest for the Ruby Sunstone
Stinktooth (voice)
2005 CSI: NY (TV Series)
Quinn Sullivan
- The Closer (2005) ... Quinn Sullivan
2005 The Golden Blaze (Video)
Thomas Tatum / Quake (voice)
2005 Sin City
Manute
2005 Teen Titans (TV Series)
Krall / Hayden
- Cyborg the Barbarian (2005) ... Krall / Hayden (voice)
2005 George Lopez (TV Series)
Dr. Holland
- George to the Third Power (2005) ... Dr. Holland
2005 The Land Before Time XI: Invasion of the Tinysauruses (Video)
Big Daddy (voice)
2005 Racing Stripes
Clydesdale (voice)
2004 Pursued

PART | # | ENDNOTE

2004 Pursued
Franklin
2004 Forgotten Realms: Demon Stone (Video Game)
Slaad Lord Ygorl (voice)
2004 The Fairly OddParents (TV Series)
Rockwell
- Crash Nebula (2004) ... Rockwell (voice)
2004 Static Shock (TV Series)
Rashid 'The Rocket' Randall
- Linked (2004) ... Rashid 'The Rocket' Randall (voice)
2004 George and the Dragon
Tarik
2004 D.E.B.S.
Mr. Phipps
2003 The Proud Family (TV Series)
Mongo
- Smackmania 6: Mongo vs. Mama's Boy (2003) ... Mongo (voice)
2003 Kim Possible: A Sitch in Time (TV Movie)
Future Wade (voice)
2003 Brother Bear (Video Game)
Tug (voice)
2003 SOCOM II: U.S. Navy SEALs (Video Game)
SEAL Operative WARDOG (voice, as Michael Clark Duncan)
2003 R. Kelly: The R. in R&B - The Video Collection (Video)
Henchman (segment "Down Low")
2003 Brother Bear
Tug (voice)
2003 George of the Jungle 2 (Video)
Mean Lion (voice)
2003 Spider-Man (TV Series)
Wilson Fisk / The Kingpin / Kingpin
- Royal Scam (2003) ... Wilson Fisk / The Kingpin (voice)
- Keeping Secrets (2003) ... Wilson Fisk / Kingpin (voice)
2003 Daredevil
Wilson Fisk / The Kingpin
2002 King of the Hill (TV Series)
Coach Webb
- The Son Also Roses (2002) ... Coach Webb (voice)
2002 The Scorpion King
Balthazar
2001 They Call Me Sirr (TV Movie)
Coach Griffin
2001 Planet of the Apes
Attar
2001 Cats & Dogs

Manigault, Omarosa

PART          #          ENDNOTE

2001 Cats & Dogs
Sam (voice)
2001 See Spot Run
Murdoch
2000 Star Trek: Klingon Academy (Video Game)
Opening Movie Klingons (voice)
2000 Soldier of Fortune (Video Game)
Hawk (voice)
2000 The Whole Nine Yards
Frankie Figs
1999 The Green Mile
John Coffey
1999 Sister, Sister (TV Series)
Big Earl
- Before There Was Hip Hop... (1999) ... Big Earl
1999 Breakfast of Champions
Ell (as Michael Duncan)
1999 The Underground Comedy Movie
Gay Virgin
1998 A Night at the Roxbury
Roxbury Bouncer (as Michael 'Big Mike' Duncan)
1998 Armageddon
Bear
1998 Arli$$ (TV Series)
Lucian Balboa
- Fans First (1998) ... Lucian Balboa
1998 Bulworth
Bouncer (as Michael 'Big Mike' Duncan)
1998 The Players Club
Bodyguard (as Big Mike Duncan)
1998 Caught Up
BB
1997 Built to Last (TV Series)
- A Family Affair (1997)
1997 Living Single (TV Series)
Security Guard
- High Anxiety (1997) ... Security Guard (as Michael 'Big Mike' Duncan)
1997 Back in Business
Huge Guard
1997 The Wayans Bros. (TV Series)
Big Mike
- I Do.... (1997) ... Big Mike (as Michael C. Duncan)
1997 Sparks (TV Series)
Frank
- Self Defense (1997) ... Frank

Manigault, Omarosa -

| PART | # | ENDNOTE |
|---|---|---|
| | | - Self Defense (1997) ... Frank<br>1997 The Jamie Foxx Show (TV Series)<br>Inmate<br>- Little Red Corvette (1997) ... Inmate (as Michael C. Duncan)<br>1996 Skwids (TV Series)<br>Body Builder<br>1996 Weird Science (TV Series)<br>Cardinal Carnage<br>- Men in Tights (1996) ... Cardinal Carnage<br>1995-1996 The Twisted Tales of Felix the Cat (TV Series)<br>Voices<br>- The Fuzzy Bunny Show/The Milky Way (1996) ... Voices (uncredited)<br>- Bet a Billion Bill/Background Details/Viva Lost Wages (1996) ... Voices (uncredited)<br>- Felix in Nightdrop Land/Shocking Story (1995) ... Voices (uncredited)<br>- The Earth Heist/Attack of the Tacky (1995) ... Voices (uncredited)<br>- Noah's Nightclub/Felix's Gold Score/Forever Rafter (1995) ... Voices (uncredited)<br>Show all 7 episodes<br>1995 Panic in the Park (Video Game)<br>Security Guard<br>1995 Married with Children (TV Series)<br>Bouncer<br>- Flight of the Bumblebee (1995) ... Bouncer<br>1995 The Fresh Prince of Bel-Air (TV Series)<br>Man in the Bar<br>- Bourgie Sings the Blues (1995) ... Man in the Bar (uncredited)<br>1995 The Bold and the Beautiful (TV Series)<br>Slash<br>- Episode #1.2045 (1995) ... Slash<br>1995 Friday<br>Craps Player (uncredited)<br>1995 Renegade (TV Series)<br>Shaka<br>- Living Legend (1995) ... Shaka<br>Hide Hide Soundtrack (2 credits)<br>2009 Two and a Half Men (TV Series) (performer - 1 episode)<br>- The Two Finger Rule (2009) ... (performer: "Zing! Went The Strings Of My Heart!", "Theme from Shaft" - uncredited)<br>2005 The Land Before Time XI: Invasion of the Tinysauruses (Video) (performer: "Creepy Crawlies/Stupid Stompers Reprise")<br>Hide Hide Producer (1 credit)<br>2010 Redemption Road (co-producer) |
| 6. | 3. | This checking account receives the residuals of the intellectual property rights of Michael Clarke Duncan. |

Manigault, Omarosa

Exhibit B

| | |
|---|---|
| **From:** | Jones, David M. EOP/WHO |
| **To:** | erica@floridajustice.com; "John M. Phillips" |
| **Cc:** | "O Newman"; Lynch, Christopher M. (CIV); Snead, Jacqueline Coleman (CIV); erica@floridajustice.com |
| **Subject:** | RE: [EXTERNAL] RE: O. Manigault Termination Report |
| **Date:** | Tuesday, January 12, 2021 6:54:09 PM |

Mr. Phillips,

I have reviewed the termination report submitted on Ms. Manigault's behalf on December 21, 2020. As with the version of the report submitted on her behalf on September 11, 2019, there are some things that need to be corrected in order for us to certify the report and forward to the Office of Government Ethics.

Part 1:
- Filer needs to include the reportable positions she held in 2017 until the time she was terminated. This would include positions she listed on her New Entrant Report with Arise Virtual Solutions, Inc. (departed in Jan 2017) and California State Military Reserve (departed in Jan 2017).

Part 2:
- Filer needs to include the employment assets, income, and retirement accounts from 2017 until the time she was terminated. This would include if she received more than $200 in income from Arise Virtual Solutions, Inc. in 2017 (during the one month she still held a positions with the company), the exact amount of her income received in 2017 from Trump for America, Presidential Transition Team (she reported this as $18,000 total on her New Entrant Report), the exact amount of her income received in 2017 from Donald J. Trump for President, Inc. (she reported $28,000 total on her New Entrant Report), and the exact amount of her income received in 2017 from the Presidential Inaugural Committee, if any (she reported she held this position in Jan 2017 on her New Entrant Report, but did not report any income).
- It appears from the filer's New Entrant Report that the UBS Retirement account is held by the Michael Clarke Duncan Administrative Trust. The filer needs to add it to Part 6 and remove it from Part 2. Filer should be sure to include the underlying assets of the trust in Part 6.
- Filer does not need to report her salary from the U.S. Government.

Part 5:
- The filer deleted the entries for the sources of her spouse's salary, which were included on the report she submitted in September 2019. She should put back on her report the positions her spouse holds with Mt. Calvary Baptist Church and Perennial Strategy. The amount of his salary is not required.
- If filer's spouse has any retirement accounts, they need to be listed in this section.

Part 6:
- Filer needs to add the UBS Retirement account held by the Michael Clarke Duncan Administrative Trust (and remove it from Part 2). Filer should be sure to include the underlying assets of the trust in Part 6.

Part 9:
- Filer should confirm whether or not she received any gifts valued at over $390 during 2017 until she was terminated (e.g. wedding gifts).

I would appreciate your response as soon as possible, but no later than this Friday, January 15, 2021.


Very Respectfully,


David Jones
Senior Associate Counsel to the President
White House Counsel's Office
O: 202-456-1203
C: 202-881-9197

---

**From:** erica@floridajustice.com <erica@floridajustice.com>
**Sent:** Monday, December 21, 2020 3:41 PM
**To:** Jones, David M. EOP/WHO <David.M.Jones@who.eop.gov>
**Cc:** 'John M. Phillips' <jmp@floridajustice.com>; 'O Newman' <omarosa@icloud.com>; Christopher.M.Lynch@usdoj.gov; Jacqueline.Snead@usdoj.gov
**Subject:** [EXTERNAL] RE: O. Manigault Termination Report

Please see attached the signed and completed termination report. Sorry for any inconvenience this may have caused. Again, do not hesitate to let our office know if you have any concerns about the filing of the following report. Additionally, Please let our office know when the report is finalized.


Best,

## Erica Jackson
*Attorney*

Phillips & Hunt
212 N. Laura
Jacksonville, FL 32202
Office Telephone:  (904) 444-4444
Email: erica@floridajustice.com
Web:  >www.floridajustice.com<



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

---

**From:** erica@floridajustice.com <erica@floridajustice.com>
**Sent:** Monday, December 21, 2020 3:10 PM
**To:** 'David.M.Jones@who.eop.gov' <David.M.Jones@who.eop.gov>
**Cc:** 'John M. Phillips' <jmp@floridajustice.com>; 'O Newman' <omarosa@icloud.com>; 'Christopher.M.Lynch@usdoj.gov' <Christopher.M.Lynch@usdoj.gov>; 'Jacqueline.Snead@usdoj.gov' <Jacqueline.Snead@usdoj.gov>
**Subject:** O. Manigault Termination Report

Greetings,

Please see attached Omarosa Manigault's amended Termination Report. This is Ms. Manigault's official filing of her termination report. Do not hesitate to let our office know if you have any concerns about the filing of the following report. Additionally, Please let our office know when the report is finalized.

Best,

# Erica Jackson
*Attorney*

Phillips & Hunt
212 N. Laura
Jacksonville, FL 32202
Office Telephone:  (904) 444-4444
Email:  erica@floridajustice.com
Web:  >www.floridajustice.com<



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended

recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.