UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 19-1868 (RJL) |
| ) | |
| OMAROSA MANIGAULT NEWMAN, ) | |
| ) | |
| Defendant. ) | |

## <u>MEMORANDUM OPINION</u>

(March *16th*, 2021) [Dkt. ## 17, 18]

Plaintiff United States of America ("plaintiff" or "the Government") brings this suit against former Director of Communications in the Office of Public Liaison in the White House, Omarosa Manigault Newman ("defendant" or "Newman"). The Government seeks a civil penalty under the Ethics in Government Act for Newman's alleged failure to file a financial disclosure report after her termination from federal government service. Before this Court are the Government's Motion for a Protective Order [Dkt. # 17] and Motion to Compel [Dkt. #18]. For the following reasons, the Government's Motion for a Protective Order is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Motion to Compel is **GRANTED**.

## BACKGROUND

Under the Ethics in Government Act ("EIGA"), certain federal government officials must file a financial disclosure report within thirty days from when they leave their

1

position, unless they continue employment in another covered government position. 5 U.S.C. app. 4 § 101(e). The Attorney General has the authority to bring an action for a civil penalty up to $50,000 against an individual "who knowingly and willfully fails to file" a financial disclosure report within thirty days of their termination. *Id.* §§ 104(a), 104(a)(1).

On January 20, 2017, defendant began her job as the Director of Communications at the White House. *See* Corrected Compl. ("Compl.") ¶ 10 [Dkt. # 2]; Def.'s Answer & Defenses to Corrected Compl. ("Answer") ¶ 10 [Dkt. # 16]. She left this position on or before January 20, 2018.[1] The Government alleges that defendant "knowingly and willfully" failed to file her financial disclosure report within thirty days of her termination, as required by the EIGA. Compl. ¶¶ 16-26.

Specifically, the Government alleges that defendant was notified of her obligation to file a termination financial disclosure report during a "post-government employment briefing" on or about December 19, 2017. *Id.* ¶ 13. Further, between December 2017 and March 2018, various members of the White House Counsel's Office attempted to contact defendant about her obligation. *Id.* ¶¶ 16-18, 19-22.

The Executive Office of the President referred the matter to the Department of Justice, pursuant to 5 C.F.R. § 2634.701. *Id.* ¶ 24. And on June 25, 2019, the Government

---

[1] The Government's complaint asserts that she was terminated on December 19, 2017. Compl. ¶ 14. Defendant contends that it was January 20, 2018. Def.'s Opp'n to Mot. for Protective Order at 14-15. While the Government appears willing to stipulate to the latter date, I need not resolve this dispute at this juncture.

filed the complaint in this action seeking a civil penalty of up to $50,000. *See generally id.*

Defendant contends that she did not "knowingly and willfully fail[] to file her termination financial disclosure report." Answer at 4. Rather, defendant argues that she acted in "good faith in attempting to complete her financial disclosure report" but was unable to file the report because the Executive Office of the President withheld certain boxes with defendant's belongings, including financial documents she needed to complete the report. *Id.* at 5-6. Additionally, defendant claims that the termination date listed on the form provided by the Executive Office of the President was incorrect, and therefore, she was unable to complete the report until the Executive Office of the President provided her with a document with the correct date. *Id.*

In its motion for a protective order, the Government requests an order prohibiting defendant from deposing: (1) former President Donald Trump; (2) former White House Chief of Staff General John Kelly; (3) former Deputy Counsel to the President and Deputy Assistant to the President Uttam Dhillon; and (4) Department of Justice attorneys Ashley Cheung and James Gilligan. Pl. United States of America's Renewed Mot. for Protective Order ("Pl.'s Mot. for Protective Order") at 6-7. The Government also seeks to prohibit discovery regarding the process in which this action was referred to or authorized by the Department of Justice, defendant's termination date, and defendant's boxes that remained at the White House between December 2017 and July 2019. *Id.* at 7-14.

In its motion to compel, the Government requests a court order compelling the defendant to produce documents in response to the Government's requests for production.

Pl. United States of America's Mot. to Compel ("Pl.'s Mot. to Compel") at 3-6.  Defendant has refused to produce some documents, arguing that they are subject to a confidentiality agreement between her and former President Trump's campaign, Donald Trump for President Inc.  *Id.*; *see also* Def. Omarosa Manigault Newman's Resp. to Pl.'s Mot. to Compel ("Def.'s Opp'n to Mot. to Compel") at 3-7 [Dkt. # 19].

Both motions are now ripe for review.

## ANALYSIS

## I.   Standard of Review

Federal Rule of Civil Procedure 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional[2] to the needs of the case ...."  Fed. R. Civ. P. 26(b)(1).  "In the context of discovery, relevance is construed broadly." *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 98 (D.D.C. 2020) (citation and quotation omitted).  But the relevance standard is "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on a theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1008, 1012-13 (D.C. Cir. 1997) (citation and quotation omitted).

---

[2] To determine whether discovery is proportional to the needs of the case, a court considers "the importance of the issue at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 26(c) allows "[a] party ... from whom discovery is sought" to "move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c).  The moving party—here, the Government—bears the burden of showing "good cause" for the protective order, which requires a "specific demonstration of facts to support [its] request." *Id.* 26(c)(1).  Good cause exists "when justice requires the protection of a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." *Urquhart-Bradley v. Cushman & Wakefield, Inc.*, Case No. 18-cv-2213 (RCL), 2020 WL 7495548, at *3 (D.D.C. Dec. 21, 2020) (citing Fed. R. Civ. P. 26(c)(1)).  Upon a showing of good cause, a court may "forbid[] the disclosure or discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).

Under Federal Rule of Civil Procedure 37, a party may move to compel production of documents from a party that "fails to produce documents ... as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).  Here too, "[t]he party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete." *Equal Rights Ctr. v. Post Props. Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).

## II.    The Government's Motion for a Protective Order.

### A. Depositions of Former High-Ranking Government Officials.

The Government seeks an order prohibiting defendant from deposing several former government officials: former President Donald Trump, former White House Chief of Staff General John Kelly, and former Deputy Counsel and Deputy Assistant to the President Uttam Dhillon. Pl.'s Mot. for Protective Order at 6-7.  Under the law of our Circuit, a party

attempting to depose a high-ranking government official must demonstrate "extraordinary circumstances" requiring such a deposition. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (citing *United States v. Morgan,* 313 U.S. 409, 422 (1941)). Indeed, "there is a presumption against deposing high-ranking government officials." *Kelley v. Fed. Bureau of Investigation*, No. CV 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *People v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)).

This doctrine—sometimes referred to as the "apex doctrine"—serves several purposes: (1) to protect the integrity and independence of the government's decision-making processes, *Morgan*, 313 U.S. at 422; (2) to permit high-ranking government officials "to perform their official tasks without disruption or diversion," *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015) (citation omitted); and (3) to limit "indiscriminate depositions" that would discourage individuals "from accepting positions as public servants," *id.* (citation omitted). Consequently, "high ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998); *see also In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere.").

Defendant contends that the apex doctrine does not apply to *former* government officials. Def.'s Opp'n to Mot. for Protective Order at 6-7. But "[t]he apex doctrine is no

less applicable to former officials than to current officials." *Galan-Alvarez*, 2015 WL 5602342 at *4 (D.D.C. 2015).   While defendant is correct that the concerns of burdening high-ranking officials and impeding their ability to perform their duties are eliminated when the official leaves government service, she ignores the other rationales behind the apex doctrine.  The need to protect the integrity of the underlying decision-making process, *Morgan*, 313 U.S. at 422, and encourage public service by protecting officials from "indiscriminate depositions," *Galan-Alvarez*, 2015 WL 5602342 at *4 (quotation and citation omitted), continue to persist after the official leaves government service. Therefore, the apex doctrine still applies to former officials.

Who qualifies as a "high-ranking" government official?  While there is no definitive line, the president and cabinet-level officials undoubtedly qualify for protection.  *See Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385 (2004) ("[T]he high respect that is owed to the office of the Chief Executive is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery …."); *U.S. Dep't of Agric.*, 427 F.2d at 567 ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced.") (citation omitted).  While most cases concern cabinet-level officials, this doctrine has extended to other high-ranking officials, such as "the Mayor of the District of Columbia, United States Senators, the General Counsel of the United States House of Representatives, … and certain high administrative heads." *Byrd v. District of Columbia*, 259 F.R.D. 1, 6 (D.D.C. 2009) (collecting cases and extending the doctrine to Assistants to the President); *see also Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C.

2002) (extending the doctrine to the Deputy Chief of Staff of the Environmental Protection Agency).

Here, defendant argues that she must depose former President Trump because she alleges that his referral of this case to the Department of Justice was based on his desire to retaliate against defendant and *not* on "reasonable cause" as required by the EIGA.[3] Def. Omarosa Manigault Newman's Resp. to Pl.'s Renewed Mot. for Protective Order ("Def.'s Opp'n to Mot. for Protective Order") [Dkt. # 20] at 8-10. The Government argues that the referral of this matter to the Department of Justice is irrelevant to this action and, even if it is relevant, defendant has not carried her burden of demonstrating that deposing former President Trump is appropriate. Pl.'s Mot. for Protective Order at 6-9. Unfortunately for defendant, even assuming former President Trump has first-hand knowledge about how this case was referred to the Department of Justice, this information is irrelevant to any claim or defense in this case.

The regulation *requires* "[t]he head of each agency, each Secretary concerned, or the Director of the Office of Government Ethics" to refer to the Attorney General any individual "when there is reasonable cause to believe that such individual has willfully failed to file" a report required under EIGA. 5 C.F.R. § 2634.701. But ultimately, any

---

[3] Defendant states that she is *not* seeking discovery into the Department of Justice's exercise of prosecutorial discretion to bring this case. Def.'s Opp'n to Mot. for Protective Order at 11. Rather, she seeks information about the referral of the case to the Department of Justice under the EIGA regulations. *Id.* Therefore, I need not evaluate whether defendant has rebutted the "presumption of regulatory" that applies to "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

referral to the Department of Justice is *not* an element of the Government's EIGA claim. 5 U.S.C. app. 4 § 104(a)(1).  And defendant has not identified any authority providing a legal defense based on *how* a case was referred.  Therefore, any discovery into the process through which this case was referred to the Department of Justice is beyond the scope of permissible discovery under Rule 26.[4]  Because defendant's sole basis for deposing former President Trump is irrelevant to this action, defendant is foreclosed from deposing him.

As for former White House Chief of Staff General John Kelly, former President Trump designated General Kelly as a cabinet-level official.[5]  As such, General Kelly qualifies as a "high-ranking government official."  *See U.S. Dep't of Agric.*, 427 F.2d at 567.  Nevertheless, defendant contends that a deposition of General Kelly is appropriate because he has direct knowledge of the "post-government employment briefing" described in the complaint, which relates to whether defendant was aware of her obligation under the EIGA. *Id.*

While General Kelly may have first-hand knowledge of the post-government employment briefing, defendant has failed to demonstrate that information regarding this meeting could not be obtained elsewhere.  *Alexander*, 186 F.R.D. at 4.  After all, defendant—and others—were present at the meeting, too.  Def.'s Opp'n to Mot. for

---

[4] For this same reason, I grant the Government's motion for a protective order concerning defendant's Request for Production Nos. 7-9 and 13 and defendant's Request for Admission Nos. 21-23 and 25-27, as each of these requests concerns the referral of this case to the Department of Justice.

[5] *See* Trump White House Archive, The Cabinet, https://trumpwhitehouse.archives.gov/the-trump-administration/the-cabinet/ (last visited Mar. 15, 2021) ("Additionally, the Cabinet includes the White House Chief of Staff ....").

Protective Order at 3 (listing Stefan Passantino, Irene Porada, and defendant as participants in the post-government employment briefing).  As such, defendant has not carried her burden under the apex doctrine and is, therefore, prohibited from deposing General Kelly.

The Government similarly seeks a protective order prohibiting defendant from deposing Uttam Dhillon.  Pl.'s Mot. for Protective Order at 6-7.  Defendant argues that Dhillon's testimony is relevant to the "post government employment briefing" and defendant's termination date.[6]  Def.'s Opp'n to Mot. for Protective Order at 8.  At the time of defendant's termination, Dhillon was employed as Deputy White House Counsel and Deputy Assistant to the President.[7]  Id. at 7.  Given his senior position at the White House, the apex doctrine's concerns about the integrity and independence of the government's

---

[6] The Government argues that defendant's termination date is irrelevant because she failed to file her disclosure report within thirty days of even the latter date, January 20, 2018. Pl.'s Mot. for Protective Order at 13.  But defendant contends that her termination date is relevant because the forms she was given by the Executive Office of the President to complete her termination financial disclosure report contained an incorrect date, and she was unable to submit the report without a revised form from the Executive Office of the President.  Def.'s Opp'n to Mot. for Protective Order at 14-15.  Defendant's alleged inability to complete the form because of the incorrect termination date may be relevant to whether she "knowingly and willfully" violated the EIGA.  Fed. R. Civ. P. 26(b)(1). Therefore, discovery concerning defendant's termination date is relevant to this action, and plaintiff's motion for a protective order prohibiting discovery on that topic is denied.  For this same reason, the Government's request for an order that it need not respond to Request for Production No. 11—which concerns defendant's termination date—is denied.

[7] After defendant's termination, Dhillon became the Acting Administrator of the Drug Enforcement Administration ("DEA").  Pl.'s Mot. for Protective Order at 3.  But Dhillon is no longer Acting Administrator of the DEA.  Pl. United States of America's Reply in Supp. of Mot. for Protective Order at 6 [Dkt. # 21].  Because the deposition concerns his employment at the White House—and because he is no longer Acting Director of DEA— I will assess whether Dhillon was a high-ranking official while employed at the White House.

decision-making processes, as well as the concerns over encouraging public service, apply to Dhillon, too. *See Morgan*, 313 U.S. at 422; *Galan-Alvarez*, 2015 WL 5602342 at *4; *see also Alexander*, 186 F.R.D. at 4 (extending the doctrine to Assistants to the President). Therefore, I find that Dhillon qualifies as a former high-ranking government official.

While it appears that Dhillon has first-hand knowledge of Newman's post-government employment briefing, Def.'s Opp'n to Mot. for Protective Order at 7, here too, defendant fails to demonstrate that there are no other means to obtain this information because there were other individuals at the meeting. *Id.* at 3, 7-8. And defendant has failed to articulate what information Dhillon possesses about her termination date that she cannot find elsewhere.[8] As such, defendant is foreclosed from deposing Dhillon.

### B. Depositions of Department of Justice Attorneys.

The Government also seeks a protective order prohibiting the depositions of two attorneys from the Department of Justice, Ashley Cheung ("Cheung") and James Gilligan ("Gilligan"). Pl.'s Mot. for Protective Order at 9-12. The Government argues that defendant cannot meet her burden of demonstrating that a deposition of the Government's trial counsel is appropriate under the *Shelton* test, which generally disfavors depositions of opposing counsel. *Id.* (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). In addition, it contends that the information defendant seeks from Cheung—

---

[8] Defendant also argues that Dhillon has direct knowledge of communications between himself and General Kelly "as it relates to Ms. Manigault Newman." Def.'s Opp'n to Mot. for Protective Order at 7. But defendant fails to explain how these communications are relevant to this matter.

information about defendant's boxes with her financial documents—is irrelevant to any claim or defense and disproportionate to the needs of this case. *Id.* at 13-14.

First, as to attorney Gilligan, defendant does *not* address the Government's motion for an order prohibiting the deposition of Gilligan. *See* Def.'s Opp'n to Mot. for Protective Order at 12-14 (discussing *only* the deposition of Cheung). Under Local Rule 7(b), if a party fails to respond to a motion, the Court may treat it as conceded. LCvR 7(b). Consequently, I will grant the Government's motion for a protective order prohibiting the deposition of James Gilligan.

As for attorney Cheung, defendant claims that these boxes contained information she needed to complete her financial disclosure reports and that the Executive Office of the President withheld these boxes despite defendant's repeated requests to retrieve them. Def.'s Opp'n to Mot. for Protective Order at 15-16; *see also* Answer at 4. If true, this evidence may bear on Newman's defense because it undermines the Government's position that defendant "knowingly and willfully" violated the EIGA.[9] As such, it is relevant to this matter. Fed. R. Civ. P. 26(b)(1).

The Government raises three arguments, however, in support of its contention that discovery related to defendant's boxes is *not* proportional to the needs of the case. The proportionality factors of Rule 26, however, still weigh in favor of defendant.

---

[9] I express no view as to "[w]hether such a defense ultimately will be persuasive ... [as] a matter of law or fact .... At this stage of the litigation, [the Court] ask[s] only whether the requested materials bear[] on, or ... reasonably could lead to other matter[s] that could bear on any party's claim or defense." *Ted Cruz for Senate*, 451 F. Supp. 3d at 99 (citation and quotations omitted).

First, the Government argues that the burden of discovery outweighs the likely benefit. Pl.'s Mot. for Protective Order at 13-14.  Unfortunately, it offers only conclusory statements that are insufficient to carry its burden of persuasion.  *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) ("The Court entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.") (citation and quotation omitted).

Second, the Government argues that the location and custody of defendant's boxes is "undisputed" because it is willing to stipulate that the boxes remained at the White House between defendant's termination and July 2019. Pl.'s Mot. for Protective Order at 13-14. The Government's attempt to stipulate itself out of discovery is equally unconvincing. The relevant breadth of discovery concerning defendant's boxes is broader than just their location and custody: defendant seeks information about "the process that Ms. Manigault Newman had to go through in order to retrieve her boxes," *see* Def.'s Opp'n to Mot. for Protective Order at 12, and documents related to the Executive Office of the President's attempts to return her belongings, *see* Request for Production Nos. 3-5. As discussed above, this evidence may bear on whether defendant "knowingly and willfully" violated the EIGA and whether the Executive Office of the President impeded her ability to file her report. Thus, the "importance of the issue" and "importance of [this] discovery in resolving the issue" weigh in favor of defendant. Fed. R. Civ. P. 26(b)(1).

Finally, the Government argues that defendant's prior statements may ultimately undermine her potential defense related to the financial documents in her boxes. Pl.'s Mot. for Protective Order at 13-14. This is essentially an argument on the *merits* of her defense, which is better suited for disposition at summary judgment. Consequently, the factors for proportional discovery under Rule 26(b)(1) weigh in favor or permitting discovery into defendant's boxes.[10]

The remaining question, therefore, is whether deposing Cheung is appropriate. Courts in our Circuit generally disfavor the practice of deposing opposing counsel. *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011). "The D.C. Circuit has not articulated a controlling test for evaluating requests to depose attorneys, and courts faced with that issue have applied divergent standards." *Mannina v. D.C.*, No. 115CV00931KBJRMM, 2018 WL 10733463, at *3 (D.D.C. Sept. 29, 2018). But the *Shelton* test makes little sense here. How so?

In *Shelton*, the Eighth Circuit considered the issue of attorney-client privilege when a party sought to depose opposing counsel. *Shelton*, 805 F.2d at 1330. The court in *Shelton* created a stringent test for deposing opposing counsel in order to safeguard against divulging trial counsel's legal theories or trial strategy. *Id.* at 1328. Courts in our Circuit

---

[10] For these same reasons, I deny the Government's motion for an order permitting the Government *not* to respond to defendant's Request for Production Nos. 3-5, which concern defendant's boxes. I also deny the Government's motion for a protective order concerning Request for Admission No. 28. This request asks the Government to "[a]dmit the White House or United States Government has failed to provide any notice of specific deficiency in the report filed by" defendant. The Government fails to demonstrate how this relates to any of the arguments raised in the Government's motion.

have clarified that *Shelton* applies "to depositions of trial counsel—or counsel directly representing the party in the pending litigation—and then *only* if the deposition would reveal litigation strategy in the pending case." *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 18 (D.D.C. 2002). Therefore, *Shelton* does not apply where deposing party "seeks information about non-privileged, pre-litigation factual matters, and not about [the deponent-attorney's] litigation strategy." *Id.* at 19; *see also Sadowski v. Gudmundsson*, 206 F.R.D. 25 (D.D.C. 2002) (opposing counsel could be deposed on non-privileged and factual material); *Amicus Commc'ns v. Hewlett Packard Company,* No. 99-0284 HHK/DAR, 1999 WL 33117227, at *2 n.2 (D.D.C. Dec. 3, 1999) (same). Indeed, "when a party employs a counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *Hewlett-Packard*, 1999 WL 33117227 at *2 (citation omitted).

While Cheung undoubtedly qualifies as trial counsel in this litigation, the subject matter of her deposition does not encroach on litigation strategy in the pending case. Rather, defendant seeks information about communications she had with Cheung *prior* to the initiation of this lawsuit that may provide evidence concerning the location and custody of defendant's boxes, defendant's attempts to retrieve them, and the Executive Office of the President's attempt to return them.[11] Def.'s Opp'n to Mot. for Protective Order at 12-

---

[11] But as the court warned in *Philip Morris*, defendant's "representation about seeking non-privileged pre-litigation information is fundamental to this Court's decision. The line between that information and attorney-client and work-product privileges should be clear to all counsel." 209 F.R.D. at 19 n.6.

14.   Therefore, the *Shelton* test does not apply to the deposition of Cheung, and the Government's motion for a protective order prohibiting the deposition of Cheung is denied.

**III.   The Government's Motion to Compel.**

The Government seeks an order compelling defendant to respond to its requests for production.  Pl.'s Mot. to Compel at 3-6.  Defendant's sole basis for refusing to produce the remaining responsive documents is that producing them would lead to additional "bad faith" litigation by the Trump campaign for violations of a confidentiality agreement between her and former President Trump's campaign.  Def.'s Opp'n to Mot. to Compel at 3-7.

Unfortunately for defendant, it is well established that confidentiality agreements are, as a general rule, *not* barriers to discovery.  *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017).  "Indeed, courts commonly require parties to produce confidential documents; the confidentiality of those documents is protected not by denying access to them, but by entering a protective order to cover them."  *Id.*  (citation and quotations omitted).  While there may be instances in which materials subject to a confidentiality agreement are protected from disclosure on another basis, such as attorney-client privilege, defendant does not provide any other basis for withholding these documents.

Thus, the appropriate course of action is for the parties to submit a joint motion for a protective order that will cover the documents subject to the confidentiality agreement between defendant and former President Trump's campaign.  Within fourteen days of the Court entering such a protective order, defendant shall produce the remaining documents responsive to the Government's request.

## CONCLUSION

For all of the foregoing reasons, the Government's Motion for a Protective Order [Dkt. # 17] is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Motion to Compel [Dkt. # 18] is **GRANTED**.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge