UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>OMAROSA MANIGAULT NEWMAN,<br><br>    Defendant. | Civil Action No. 1:19-cv-1868 (RJL) |

**PLAINTIFF'S SUBMISSION REGARDING DISCOVERY DISPUTES PURSUANT TO COURT'S ORDER OF APRIL 29, 2021 AND REQUEST FOR STAY OF DISCOVERY**

On March 17, 2021, the Court granted Plaintiff's motion to compel and ordered Defendant to produce the documents at issue in the motion. On the same date, the Court also granted in part and denied in part Plaintiff's motion for protective order, declining in relevant part to issue a protective order precluding (a) the deposition of Department of Justice attorney Ashley Cheung, (b) Defendant's Request for Admission No. 28, and (c) Defendant's Requests for Production 3, 4, 5 and 11.

All discovery addressed in the Court's March 17 order is now complete, and both parties' previously filed cross-motions for summary judgment are still pending before the Court. No further discovery is needed for this Court to resolve those cross-motions. Yet after propounding no discovery since November 2019, Defendant now seeks to pursue needless discovery that will not change the uncontroverted record already before the Court: Defendant knew no later than March 2018 that her termination report required by the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 § 101 *et seq.*, was overdue, and, although repeatedly reminded and given the opportunity to comply, she failed to submit a complete report until three years later. Her apparent desire for

cumulative or privileged information about the location of personal effects that were not actually needed to complete the report and her mistaken belief that her termination date was January 20, 2018, not December 17, 2017, gives rise to the present dispute between the parties.

Accordingly, and for the reasons set forth below, Plaintiff respectfully requests that the Court order: (1) that any further discovery in this matter shall be stayed pending resolution of the parties' cross-motions for summary judgment; (2) that the parties submit simultaneous briefs of no more than 15 pages within 30 days of the Court's order to supplement the record with the discovery conducted between March 2021 and May 2021; and (3) that the parties submit reply briefs of no more than 10 pages within fourteen days thereafter.

## BACKGROUND

### A. Factual Background

Defendant was terminated from her employment at the White House in December 2017. Pursuant to EIGA, she was required to file a financial disclosure report ("Termination Report") within 30 days of termination of her government employment. Defendant did not do so. After numerous reminders and attempts by the Government to obtain her compliance were unsuccessful, this action was filed on June 25, 2019, asserting a single claim against Defendant for her failure to timely file her Termination Report.

There is no dispute that Defendant failed to timely file her Termination Report. Indeed, there is no dispute that Defendant failed to file a complete Termination Report within *years* of the termination of her government employment. Defendant has primarily offered two excuses for her conduct. First, she has claimed that her termination was effective January 20, 2018, instead of December 19, 2017—an immaterial distinction because her Termination Report was not filed within thirty days of either date.

Second, Defendant has claimed that personal effects that she knew she left in the White

House following her termination—and failed to retrieve until July 2019—were necessary to complete her already past due Termination Report. But it is also undisputed that, within a week of her first claiming that she needed those items (a claim Defendant did not first make until her report was already undisputedly more than a year late), Defendant was provided a contact who could return her personal effects. Declaration of Christopher Lynch ("Lynch Decl.") Ex. A at 15 (May 16, 2019 email from Ashley Cheung to John Phillips). And it is further undisputed that she nonetheless failed to retrieve those personal effects for another two months and then waited *another 60 days*—until the same day she moved to dismiss this action—before submitting a deficient report missing information from four of its eight sections. *See* Decl. of David Jones Ex. C, ECF No. 24-3 (deficient report providing information in only half of the relevant fields).

**B.    Procedural History**

After this Court denied Defendant's motion to dismiss in a minute order and dissolved the discovery stay that it had ordered *sua sponte*, the parties proceeded with discovery. *See* Minute Order of May 21, 2020. Plaintiff propounded five sets of discovery requests starting in October 2019; Defendant propounded only a single set of requests, on November 18, 2019. In response to the requests, Plaintiff produced approximately 1415 pages of documents and a privilege log[1] in response to Defendant's requests for production, and Defendant produced 379 pages of documents and a handful of audio and video files in response to Plaintiff's requests. The parties also exchanged and responded to requests for admission and Plaintiff propounded—and Defendant responded to—interrogatories. Prior to the Court's March 16, 2021 Order, Defendant did not notice a single deposition and did not propound any further discovery requests after *November 2019*.

---

[1] Defendant has not to date disputed a single one of Plaintiff's privilege assertions.

All discovery—except for certain narrow categories subject to each party's objections and raised before the Court in Plaintiff's Motions to Compel and for Protective Order—was completed by September 30, 2020. Defendant chose not to file any discovery motions of her own.

Having completed discovery (except the items subject to Plaintiff's then-pending discovery motions), the parties each moved for summary judgment. Plaintiff moved for summary judgment on December 7, 2020, and Defendant cross-moved for summary judgment on February 4, 2021. *See* Pl.'s Mot. for Summ. J., ECF No. 25; Def's Mot. for Summ. J., ECF No. 32. As of February 25, 2021, both motions for summary judgment have been fully briefed.

On March 17, 2021, the Court granted Plaintiff's motion to compel and granted in part and denied in part Plaintiff's motion for protective order. *See* Mem. Op. & Order of March 16, 2021, ECF Nos. 35 & 36. Specifically, the Court ordered Defendant to produce documents responsive to Plaintiff's first request for production and declined to issue a protective order with respect to three items: (1) the deposition of Department of Justice attorney Ashley Cheung; (2) Defendant's Request for Admission No. 28; and (3) Defendant's Requests for Production Nos. 3-5 and 11. *Id.* The Court granted Plaintiff's motion for protective order in all other respects. *Id.*

At the time of the Court's order, Plaintiff had already answered Defendant's Request for Admission No. 28, subject to objection. On March 31, 2021, Plaintiff advised Defendant that it would be authorizing the deposition of Ms. Cheung, and after Plaintiff issued a formal authorization of the deposition under the Department of Justice's *Touhy* regulations, the parties conferred and agreed that the deposition would occur on April 19, 2021. After Defendant's counsel failed to appear for the deposition on that date, Plaintiff agreed to make Ms. Cheung available again and reauthorized her deposition for May 21, 2021. Ms. Cheung's deposition was noticed for and completed on that date. Plaintiff produced documents responsive to Defendant's Requests for

4

Production nos. 3-5 and 11 and a privilege log.[2]

Defendant also produced documents she had purportedly withheld pending the motion to compel consisting of photographs of the personal effects she retrieved from the White House in July 2019. Defendant also communicated belated interest in deposing six different current and former government employees about the same two topics: (1) Defendant's termination date; and (2) the location of her personal effects.[3] Then, on May 21, 2021, after Ms. Cheung's deposition concluded, Defendant's counsel emailed Plaintiff's counsel to request a deposition of Scott Gast, the former Senior Counsel to the President assigned to this litigation on behalf of the White House Counsel's Office, and served a Request for Production seeking "[a]ll communications . . . between Scott Gast, or any other White House Counsel Staff, and Ashley Cheung, or any Department of

---

[2] While Plaintiff is unable to respond to every issue raised in Defendant's May 28, 2020 submission, ECF No. 40, in time for the instant filing, Plaintiff's initial review has determined that Defendant makes a variety of incorrect and unsupported claims in that filing. Plaintiff notes but two examples, both related to Defendant's assertion that Plaintiff's production is incomplete. In support, Defendant contends that "only USA00001416 and USA00001489 were the only attachments included for" a request in which the United States indicated that documents labeled USA00001416-USA00001492 would be produced. ECF No. 40 at 4. A cursory examination of the referenced documents reveals that the subsequent pages of the document whose first page is labeled USA00001416 are labeled USA00001417 to USA00001488, and that the subsequent pages of the document labeled USA00001489 are labeled USA00001490 to USA0001492.  There are no missing "attachments." *Id.* Defendant also references materials listed on Defendant's privilege log as an indication that there are outstanding emails about Defendant's personal effects that have not yet been produced, noting in particular entries reflecting January 23, 2018 emails between Stefan Passantino, Marcia Kelly, Jared Kushner, and Ivanka Trump. *Id.* at 2.  Defendant's submission fails to mention that the United States' May 2021 document production, bearing control numbers USA00002866-USA00003074, included the non-privileged portion of the email chain in question. Defendant's counsel has not raised any concerns with Plaintiff's productions to Plaintiff's counsel at any time; had he done so, Plaintiff's counsel could have corrected his misunderstandings before he filed his submission.

[3] These individuals include (1) former Deputy White House Counsel Stefan Passantino; (2) former Senior Associate Counsel to the President David Jones; (3) former Managing Counsel for Operations in the Executive Office of the President's Office of Administration Office of General Counsel Scott de la Vega; (4) former White House Counsel's Office administrative employee Hannah Kunasek; and (5) David Mills, Records Management Branch Chief, White House Information Governance. Lynch Decl. Ex. B. Since his March 18, 2021 communication, defense counsel has not noticed the deposition of anyone except Ms. Cheung.

Justice staff concerning this matter." Lynch Decl. Exs. C & D.

Even apart from Defendant's clear attempt now to discover privileged information, none of this discovery is needed for the Court to resolve this action.

### **PLAINTIFF'S POSITION ON FURTHER DISCOVERY**

**I.  FURTHER DISCOVERY IS UNECESSARY AND SHOULD BE STAYED PENDING RESOLUTION OF THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

**A.  A Stay of Discovery Is Warranted in Light of the Pending Dispositive Motions**

"[I]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (quoting *Anderson v. United States Attorneys Office*, No. CIV.A. 91–2262, 1992 WL 159186, at *1 (D.D.C. June 19, 1992)); *see id.* (*Coastal States Gas Corp. v. Department of Energy,* 84 F.R.D. 278, 282 (D.Del.1979)) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'").[4] Here, there can be no dispute that the pending motions for summary judgment would be "thoroughly dispositive": There is but a single claim in this action, and each party has sought complete relief as to that claim in its motion.

Nor is further discovery needed to resolve those motions. Each party has necessarily contended in its motion for summary judgment that there is no genuine issue of material fact in dispute. *See, e.g.,* Def's Mot for Summ. J. at 3, ECF No. 32 at 6 ("[S]ummary judgment is . . . proper."). Although Defendant has also contradictorily sought further discovery and incorrectly

---

[4] It is likewise "settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of" a trial court's "broad discretion and inherent power to stay discovery." *Chavous*, 201 F.R.D. at 2.

claimed that she has "not been allowed any discovery," *id.*, she failed to satisfy the three criteria that a party "must satisfy" to oppose a motion for summary judgment pursuant to Fed. R. Civ. P. 56(d). *See* Pl.'s Reply ISO Mot. for Summ. J. at 13-14, ECF No. 31; *see generally United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (setting forth "three criteria" that a party "must satisfy" to obtain relief under Fed. R. Civ. P. 56(d)).

But regardless of the propriety of Defendant's objection at the time she made it, all discovery that either party had requested pursuant to the Federal Rules of Civil Procedure as of the date of the parties' summary judgment motions has now been completed. Accordingly, Defendant cannot contend "that [she] need[s] the discovery [she] now seek[s] in order to oppose the pending motions" for summary judgment. *Chavous*, 201 F.R.D. at 2. This Court should therefore stay any further discovery until it has resolved the pending dispositive motions.

Although Plaintiff does not believe the discovery at issue in Plaintiff's discovery motions and completed since March 2021 was necessary to oppose its motion for summary judgment in the first instance, Plaintiff respectfully requests in an abundance of caution that the parties be allowed simultaneous supplemental briefs, due in 30 days, and replies due 14 days thereafter to address that discovery.

      **B.**      **Additional Discovery While the Parties' Dispositive Motions are Pending Would Be a Waste of Time and Resources**

Further discovery on the two issues that Defendant has identified would be disproportional to the needs of the case and thus a waste of time and resources. Notwithstanding her concession that there is no genuine issue of material fact at issue, Defendant now wants still further discovery on (a) her termination date and (b) the personal effects she left at the White House. But Defendant has raised both of these issues in her motion for summary judgment, *see* Def.'s Mot. for Summ. J. at 4-8, and as set forth below, the facts underlying each of these issues is undisputed. No additional

discovery on either topic is needed prior to resolution of the summary judgment motions. *See Sai v. Dept. of Homeland Security*, 99 F. Supp. 3d 50, 58 (D.D.C 2015) ("[A]lthough there is good reason not to enter a stay where discovery is necessary for the party *opposing* summary judgment to develop additional facts, there is no authority support[ing] the notion that a party should be able to concurrently *move* for summary judgment and take discovery regarding the issues address[ed] in the motion.") (second brackets and italics in original; internal quotation marks omitted). Moreover, any further discovery is not "proportional to the needs of the case" and the "burden . . . of the proposed discovery [would] outweigh[] its likely benefit," Fed. R. Civ. P. 26(b)(1), because no further discovery in this case is necessary: The parties dispute only the legal significance of the undisputed facts on these topics, which is ultimately a matter for the Court to decide; there is nothing that further factual development can establish that would have any bearing on the resolution of Plaintiff's claim.

Regarding Defendant's termination date, there is no dispute that Defendant left her employment at the White House in mid-December 2017, and neither returned nor did any further work for the White House thereafter. *See, e.g.*, Declaration of Omarosa Manigault Newman ¶¶ 2, 11, ECF No. 32-1. There is no dispute that Defendant was advised around the time of her termination that her Termination Report was due within 30 days of her termination date, and there is no dispute that she did not submit a report of any kind in that time—or a complete report until this year. *See, e.g.*, Declaration of Scott de la Vega Ex. B, ECF No. 24-4 (email advising Defendant on January 3, 2018 that her Termination Report was due January 18, 2018); Declaration of David Jones Ex. C (initial draft Termination Report submitted September 11, 2019); *see also* Declaration of Omarosa Manigault Newman ¶ 38. Thus, whether the effective date of her termination was January 20, 2018, as she claims, or December 19, 2017, as White House records establish, is immaterial.

Quite simply, Defendant was not justified in refusing to submit her Termination Report because of that immaterial date discrepancy. Defendant knew of her obligation to file a report within 30 days of her termination, knew that she had not done so, and required the Government to bring this action to obtain her compliance. Nothing more is required to establish a "knowing and willful" violation of EIGA. *See, e.g., United States v. Tarver*, 642 F. Supp. 1109, 1111-12 (D. Wyo. 1986) (EIGA's "knowing and willful standard is met where a defendant "refused to comply, although he possessed full knowledge of the Act."). No further discovery about her termination date will change that.

Nor can further discovery change the undisputed facts regarding the personal effects that Defendant left in the White House following her termination—especially since it is clear that her termination report could have been (and likely was) completed without them. There is no dispute that Defendant left certain personal effects in her office when she left the White House in December 2017, and there is no dispute that she did not pick them up until July 2019, after this litigation was filed. *See, e.g.*, Def's Mot. for Summ. J. at 6-7. There is no dispute that Defendant did not contend that those personal effects had any bearing on her failure to submit her Termination Report at any time before May 2019—more than a year after her Termination Report was due—even though she had repeated contact with the White House Counsel's Office about her overdue report up to that time. *See id.* If Defendant had indeed believed she needed the materials she left in the White House to complete her Termination Report, her failure to advise the White House Counsel's Office of that for over a year after her report was due *itself* establishes the willfulness of her violation, because she affirmatively chose not to take action necessary to submit the report. Once again, further discovery will not impact the legal conclusion drawn from these undisputed facts.

Further, while Defendant's failure to file her Termination Report for more than a year

9

before she first claimed her personal effects were necessary to complete her report is sufficient to establish the willfulness of her failure to file, her conduct *after* making that contention independently establishes this willfulness as a matter of law. It is undisputed that the first time Defendant claimed that she needed the materials that she left at the White House to complete her Termination Report was in a May 9, 2019 email responding to the Department of Justice's letter advising that it intended to pursue this action against her for violating EIGA. Lynch Decl. Ex. A at 3 (May 6, 2019 email from Omarosa Manigault to Ashley Cheung); *see id*. at 1-2 (April 23. 2019 email from Ashley Cheung to Omarosa Manigault attaching April 11, 2019 letter). There is no dispute that the Department of Justice provided Defendant's attorney (who at the time claimed he had been hired only to assist in the return of Defendant's boxes, and not to represent her with respect to the United States' EIGA claim) with a contact from whom she could obtain her belongings just seven days later, on May 16, 2019. *Id.* at 15 (April 16, 2019 email from Ashley Cheung to John Phillips). And there is no dispute that Defendant then waited almost two months, until after this litigation was filed, to finally retrieve her belongings on July 12, 2019.[5] Def.'s Mot. for Summ. J. at 7. Nor is there any dispute that even after picking up those boxes, Defendant *still*

---

[5] In her deposition, Ms. Cheung succinctly explained Defendant's lack of diligence in pursuing the retrieval of her personal effects in the summer of 2019:

> Q Prior to June 25, 2019, do you agree that Omarosa was diligent in attempting to obtain her boxes of information from the United States Government?
> A No.
> Q Why not?
> A Because I sent you the point of contact with whom you could deal directly regarding the return of her personal effects on May 16th; I did not receive a response. I sent a follow-up email to you on May 28th, 2019; I did not receive a response. I sent another follow-up email on June 4th, 2019, to you; I did not receive a response. I sent a follow-up email on June 17th to Ms. Manigault; I did not receive a response until June 17th.

Cheung Dep. Tr. at 53:14-54:2, ECF No. 40-1.

did not provide a complete Termination Report until this year. To date, Defendant has never identified in any filing with this Court a single document that she claims to have left at the White House that she needed for her Termination Report because the information was unavailable from any other source. Once again, the undisputed facts establish Defendant's willfulness as a matter of law. Further discovery on the issue of her personal effects would be cumulative at best.[6]

### C. Plaintiff's Proposed Discovery Seeks Privileged Information

Discovery also should be stayed because, as evident from her Second Request for Production, Defendant seeks privileged information to which she is not entitled. *See, e.g.*, *Chavous*, 201 F.R.D. at 3 n.4; Mem. Op. of March 16, 2021 at 11 & n.15 (making clear that depositions would not be authorized insofar as they seek privileged information).

Defendant's May 21, 2021 discovery request for "[*a*]*ll communications . . . between* Scott Gast, or any other *White House Counsel Staff, and* Ashley Cheung, or any *Department of Justice staff* concerning this matter," with no limitation as to scope or subject matter, starkly illustrates the risk of invading privileged communications that Defendant's proposed discovery poses. Lynch

---

[6] Defendant's request for further depositions on this subject is without regard to the actual personal knowledge of the individuals. Mr. Mills has no personal knowledge of and did not participate in any event related to this lawsuit. *See* note 8, *infra*. Similarly, Ms. Kunasek, then an administrative assistant in the White House Counsel's Office, had no knowledge of or participation in the storage of Defendant's personal effects prior to the filing of this litigation. Her role was limited to arranging to meet Defendant's counsel immediately before the return of the boxes in mid-July 2019, after this litigation was filed, and physically delivering custody of the boxes to him. *Cf.* Mem. Op. of March 16, 2021 at 15 & n. 11 (permitting deposition of Ms. Cheung on the topic of Defendant's personal effects based on Defendant's counsel's representation that Defendant sought only information *prior to* the initiation of this action). Ms. Kunasek also had no knowledge of or participation in Defendant's termination of employment, including any decision establishing the effective date of that termination. Likewise, Mr. Jones and Mr. de la Vega did not participate in either the storage of the boxes of Defendant's personal effects nor the decision to terminate her employment, including any decision establishing the effective date of that termination. Accordingly, for this independent reason, preparing any of these witnesses and forcing them to submit to deposition would not be "proportional to the needs of the case" and the "burden . . . of the proposed discovery [would] outweigh[] its likely benefit." Fed. R. Civ. P. 26(b)(1).

Decl. Ex D (emphasis added). Every responsive communication is privileged: The request exclusively seeks attorney-client communications on the topic of this litigation, from the stage of pre-filing planning of the litigation through the present day. *See generally Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69-70 (D.D.C. 2017) (explaining that "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work[-]product doctrine" and that attorney-client privilege protects confidential communications made by someone who "is or sought to become a client" to "a member of the bar of a court or her subordinate and . . . in connection with this communication is acting as a lawyer . . . for the purpose of securing primarily either (i) an opinion on the law, (ii) legal services, or (iii) assistance in some legal proceeding") (brackets in original; internal quotation marks and citations omitted).

The depositions in which Defendant's counsel has newly expressed interest raise the same concerns. As former Senior Counsel to the President and the primary liaison between the White House and the Department of Justice from the pre-filing stages of this litigation until his departure from the White House in January 2021, Mr. Gast's role makes any attempt to take his deposition particularly fraught with privilege issues.

When the Court permitted the deposition of Ms. Cheung, it recognized the risks of that deposition invading privileged areas, and emphasized Defendant's representation that she was seeking only non-privileged information "*prior* to the initiation of this litigation," noting that this "representation about seeking non-privileged pre-litigation information is fundamental to this Court's decision" to permit Ms. Cheung's deposition. Mem. Op of March 16, 2021 at 15 & n.11 (quoting *United States v. Phillip Morris Inc.*, 209 F.R.D. 13, 19 n.6 (D.D.C. 2002)). But Defendant's most recent discovery request goes far beyond this limitation in seeking the core attorney-client privileged communications relating to the planning and prosecution of this

litigation, and makes clear that Defendant could not make any such representation about Mr. Gast's deposition.[7]

Nor is this problem limited to Mr. Gast. All but one of the witnesses Defendant has belatedly expressed interest in deposing after the Court's March 16, 2021 order were White House attorneys or employed by the White House Counsel's Office during the period relevant to any potential testimony in this case, and three of those four occupied senior positions, including Mr. Gast, former Deputy White House Counsel Stefan Passantino, and former Senior Associate Counsel to the President David Jones. Resolution of the privilege issues posed by any and all of these depositions, as well as Defendant's May 21, 2021 discovery request, risks imposing a significant burden on both the parties and the Court. *See Chavous*, 201 F.R.D. at 3 n.4 (noting "the significant privilege issues presented by the plaintiffs' discovery requests warrant the conclusion

---

[7] Nor did Defense counsel adhere to this representation when deposing Ms. Cheung, as he repeatedly questioned Ms. Cheung about events taking place after the filing of this litigation and topics that this Court had ruled were off-limits—such as the referral of Ms. Newman's case to the Department of Justice, which this Court made clear "is beyond the scope of permissible discovery under Rule 26." Mem. Op. of March 16, 2021 at 9; *see, e.g.*, Cheung Dep. Tr. at 43:18-19 (Defendant's counsel asking Ms. Cheung "Did Scott Gast refer this matter to your division at the Department of Justice?"); *id.* at 51:2-4 (Defendant's counsel asking Ms. Cheung "Do you have any information about whether anybody opened up her boxes, inspected her boxes . . . after [this lawsuit was filed on] June 25, 2019?"). Defense counsel now claims that Plaintiff's counsel interposed inappropriate limitations on Ms. Cheung's deposition. *See* ECF No. 40 at 5-10. Not So. Ms. Cheung directly answered all the questions related to the three issues allowed by the court: (1) She never saw Defendant's boxes and doesn't know what was in the boxes, *id.* at 17:11-14; (2) she directed defendant and her counsel to White House counsel to directly pick up the boxes shortly after Defendant requested them, *id.* at 24:10-25:22 & 31:24-32:10; and (3) Defendant and her counsel failed to pick up the boxes despite Ms. Cheung's repeated emails; *id.* at 53:14-54:2; *see generally* Lynch Decl. Ex. A (containing all correspondence between Ms. Cheung and Defendant and her counsel prior to the filing of this action); *cf.* Mem. Op. of March 16, 2021 at 15 (permitting Defendant to depose Ms. Cheung on "the location and custody of defendant's boxes, defendant's attempts to retrieve them, and the Executive Office of the President's attempt to return them"). Defense counsel repeatedly violated the court's order by asking questions that unquestionably went far beyond the scope. The number of objections by Plaintiff's counsel directly corresponded to those violations of the scope of this Court's order.

that permitting discovery before the need for such discovery is determined would be wasteful and inefficient").

### D. A Stay of Discovery Would Not Prejudice Defendant, Who Has Obtained All Discovery She Has Pursued Prior to March 2021

Finally, a stay of discovery would not prejudice Defendant. *See Chavous*, 201 F.R.D. at 4 ("[T]he trial court inevitably must balance the harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery.") (internal quotation marks omitted; second brackets in original). Defendant has not been diligent in pursuing the discovery she now seeks. She propounded no discovery requests of any kind between November 18, 2019, and May 21, 2021, and did not notice a single deposition prior to May 2021, when she noticed Ms. Cheung's deposition. Nor can she claim that Mr. Gast—or all but one of the individuals deponents she has expressed interest in deposing subsequent to the Court's March 16 ruling—were unknown to her prior to that time.[8] Defendant had the opportunity to depose five of the six individuals at any time from the opening of discovery up to the point she filed her motion for summary judgment, but chose not to do so. Mr. Passantino and Mr. de la Vega were each listed as potential witnesses on *both* parties' initial disclosures in early November 2019; Defendant also listed both Messrs. Gast and Jones on her initial disclosures at that time. Lynch Decl. Exs. E & F. And while Defendant did not list Ms. Kunasek on her initial disclosures, her counsel expressed an intent to depose Ms. Kunasek (as well as Messrs. Passantino, Gast, and Jones) by email in October 2019, even before serving her initial disclosures—but never followed

---

[8] The lone exception, David Mills, has no personal knowledge of the relevant issues in the case and submitted a declaration in support of Defendant's motion for summary judgment solely to authenticate two documents in his capacity as Records Management Branch Chief, White House Information Governance, within the Executive Office of the President. *See* Declaration of David Mills, ECF No 24-6. Defendant did not challenge the authenticity of the documents in opposing the motion, and thus has no basis to depose Mr. Mills.

14

through with that intent.[9] *See* Lynch Decl. ISO Pls. Mot for Protective Order Ex. A, ECF No. 13-1. None of the individuals Defendant now seeks to depose were the subject of Plaintiff's motion for protective order, and Defendant had plenty of time to notice their depositions and serve her May 21, 2021 document request before moving for summary judgment. *See* Lynch Decl. Exs. G & H (May 23, 2020 email from Defendant's counsel to Plaintiff's counsel "request[ing]" depositions of, *inter alia*, Messrs. Passantino, Gast, and Jones and Ms. Kunasek and Plaintiff's counsel's response that "[t]he United States will respond to any discovery requests properly made pursuant to the Federal Rules of Civil Procedure and the Local Rules in a manner and on a schedule consistent with those rules" and offering to meet and confer on Defendant's counsel's requests). Instead, Defendant chose not to pursue any discovery for nearly a year and a half and then moved for summary judgment—implicitly conceding that no further discovery was necessary.[10] *Cf. U.S. v. Kellogg Brown & Root Services, Inc.*, 285 F.R.D. 133, 136 (D.D.C. 2012) ("The primary factor in determining whether good cause exists [to amend a scheduling order] is the diligence of the party seeking discovery before the deadline."). Defendant thus cannot be heard to complain that a

---

[9] Among the many other reasons that Ms. Kunasek's deposition should not be permitted is its likely "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" Fed. R. Civ. P 26(g)(1)(B)(i). Defendant's counsel previously made disparaging remarks on Twitter about Ms. Kunasek, who carried Defendant's personal effects to her. *See* John M. Phillips, Tweet of July 12, 2019 ("We will be picking up @omarosa's boxes the @WhiteHouse has kept for a year and a half today. What business transacts like this? I'm a 5'7" blonde. I'll meet you at the gate. This isn't Craigslist. It's the US Government. . . . Shame."), *available at* https://twitter.com/JohnPhillips/status/1149632043992539136 (last visited May 28, 2021).

[10] Indeed, as of this filing, Defendant has not served *any* notices of deposition in this case for *any* witness, with the exception of the notice for Ms. Cheung's deposition served on May 4, 2021. But Defendant cannot be heard to argue that emails between counsel asserting the desire for depositions are adequate substitute for notices of deposition. As Defendant's counsel contended in justifying his failure to appear for Ms. Cheung's first scheduled deposition, a deposition notice is necessary for any deposition to be scheduled or held. Lynch Decl. Ex. I (April 21, 2021 email from John Phillips stating that "[w]ithout a notice, [a deposition] wasn't scheduled" and that "I am not sure how one would assume an unnoticed deposition would be taken,"); *id.* (asking the rhetorical question "How would an unnoticed depo . . . go forward?").

discovery stay will prejudice her.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order: (1) that any further discovery in this matter shall be stayed pending resolution of the parties' cross-motions for summary judgment; (2) that the parties submit simultaneous briefs of no more than 15 pages within 30 days of the Court's order to address how any discovery that post-dated the parties' motions for summary judgment affects the arguments therein; and (3) that the parties submit reply briefs of no more than 10 pages within fourteen days thereafter.

Dated: May 28, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Christopher M. Lynch*
Christopher M. Lynch
D.C. Bar # 1049152
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4537
Fax: (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Plaintiff*