## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:19-cv-1868 (RJL)** |
| **OMAROSA MANIGAULT NEWMAN,** | |
| **Defendant.** | |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Minute Order of June 14, 2021, Plaintiff respectfully submits this brief to supplement the summary judgment record regarding the discovery taken in this case from March to May 2021. That discovery addressed two topics: (a) the Defendant's termination date from her government employment and (b) the personal effects Defendant left in the White House after the termination of her government employment.[1]

The additional discovery does not create any genuine issue of disputed material fact but rather confirms Plaintiff's arguments in its motion for summary judgment. Specifically, this discovery demonstrates the lack of support for Defendant's arguments and highlights the knowing and willful nature of Defendant's violation. Summary judgment should be entered for Plaintiff.

---

[1] Defendant had sought evidence supporting Defendant's theory that the referral of this action to the Department of Justice was retaliatory. *See* Mem. Op. at 8 & n.3, ECF No. 35. However, the Court observed that "any referral to the Department of Justice is *not* an element of" Plaintiff's Ethics in Government Act claim, and that Defendant "has not identified any authority providing a legal defense based on *how* a case was referred." *Id.* at 8-9. The Court therefore held that "any discovery into the process through which this case was referred to the Department of Justice is beyond the scope of permissible discovery under Rule 26." *Id.* at 9.

## ARGUMENT

I.     **Defendant's Attempt to Dispute Her Termination Date Is Immaterial, as Her Termination Report Was Undisputedly Years Late**

As explained in Plaintiff's Motion for Summary Judgment, Defendant's argument that her termination was effective January 20, 2018, instead of December 19, 2017, is immaterial, because Defendant's Termination Report was not filed within thirty days of either date. *See* Pl.'s Mot. for Summ. J. at 27-29, ECF No. 24 at 34-36; Pl.'s Reply ISO Mot. For Summ. J. at 6-8, ECF No. 31 at 10-12; *see also* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 2-5, ECF No. 33 at 2-5.

There is no dispute that Defendant left her employment at the White House in mid-December 2017, and neither returned nor did any further work for the White House thereafter. *See, e.g.*, Declaration of Omarosa Manigault Newman ("Newman Decl.") ¶¶ 2, 11, ECF No. 32-1. There is no dispute that Defendant was advised around the time of her termination that her Termination Report was due within 30 days of her termination date, and there is no dispute that she did not submit a report of any kind in that time—or any report that could be submitted to the Office of Government Ethics ("OGE") until May 2021, more than three years after her termination had undisputedly occurred.[2] *See, e.g.*, Declaration of Scott de la Vega ("de la Vega Decl.") Ex. B, ECF No. 24-4 at 29 (email advising Defendant on January 3, 2018, that her Termination Report

---

[2] Financial disclosure forms like Defendant's must first be certified by the employing agency—in Defendant's case, the White House—before being certified by OGE. *See* 5 U.S.C. app. 4 § 106(a)(1). In Defendant's case, OGE concluded on July 1, 2021 that it would decline to certify her termination report, consistent with its past practice, because it was received more than two years after Defendant's termination date. *See, e.g.,* Termination Report of Russell C. Deyo at 2 ("Decline to certify since OGE did not receive the final report until more than 2 years after the filer terminated federal employment."), *available at* https://extapps2.oge.gov/ 201/Presiden.nsf/PAS+Index/4E26EC2BF71E1449852583E90027E9E3/$FILE/Russell-C-Deyo-2017-278.pdf (last visited July 6, 2021).  OGE declining to certify a report neither removes a filer's obligation to provide the required information nor absolves the agency of the responsibility for collecting that information. *See, e.g.*, OGE Program Advisory of Nov. 14, 2019, PA-19-13 at 2, *available at* https://www.oge.gov/Web/oge.nsf/Legal%20Docs/D147E89488F16462852585BA 005BEC14/$FILE/PA-19-13.pdf?open (last visited July 6, 2021).

was due January 18, 2018); Declaration of David Jones ("Jones Decl.") Ex. C, ECF No. 23-3 at

127 (initial draft Termination Report submitted September 11, 2019); *see also* Newman Decl.

¶¶ 34, 38; Defendant's Statement of Material Facts ¶¶ 6, 11-13, ECF No. 32 at 1-3. Thus, whether

the effective date of Defendant's termination was January 20, 2018, as she claims, or December

19, 2017, as White House records establish, is immaterial.

The discovery conducted in 2021 does not change those dispositive facts. Rather, while

cumulative of discovery already in the record, the additional documents produced by the

Government conclusively establish that Defendant's official termination date was December 19,

2017.[3] *See, e.g.*, Decl. of Christopher Lynch ISO Pl.'s Suppl. Brief ISO Mot. for Summ. J. ("Lynch

Decl.") Ex. A (12/21/17 email from Melinda Stell, Director of White House Personnel, to Alice

Bartek-Santiago with the subject "Separation – O. Manigault" stating "**Separation December 19,**

**2017**") (bold in original); *id.* Ex. B (email notifications to Defendant from December 29, 2017-

January 19, 2018 advising Defendant of the January 18, 2018 due date for her Termination Report).

Indeed, Defendant's White House personnel file contains numerous official documents from

December 2017 and January 2018 that consistently reflect Defendant's December 19, 2017

effective separation date, including Defendant's continuation of health benefits election form

(executed January 24, 2018 by the authorized agency official), her certified report reflecting her

final leave balances (certified December 27, 2017), Defendant's conversion of health insurance

status (certified December 28, 2017), and her official Notification of Personnel Action reflecting

---

[3] The only documents produced by Defendant subsequent to the Court's Order of March 16, 2021
appear to be images of the personal effects Defendant collected from the White House in July 2019
and two videos that appear to be of Defendant opening the boxes containing those personal effects.
None of the documents would have been subject to the Nondisclosure Agreement that Defendant
invoked in justification of her failure to provide this information before Plaintiff prevailed on its
motion to compel her discovery responses. *See* Def.'s Response to Pl.'s Mot. to Compel, ECF No.
19 & *id.* Ex. B, ECF No. 19-2.

the separation (approved and executed December 19, 2017). *Id.* Ex. C (excerpts from Defendant's White House personnel file of then-contemporaneous documents consistently reflecting December 19, 2017 separation date).

In sum, the additional discovery confirms Plaintiff's prior evidence in the record. Defendant's termination date was December 19, 2017, as the Government made clear at the time, since that time, and throughout these court proceedings. *See, e.g.*, de la Vega Decl. Ex. B at 2, ECF No. 24-4 at 30 (Dec. 19, 2017 Memorandum to Defendant stating "[a]s a commissioned officer, you are . . . required to file a termination financial disclosure report within 30 days of leaving government service – **your report is due no later than <u>January 18, 2018</u>**") (bold and underlining in original); Jones Decl. Ex. B, ECF No. 24-3 at 19-125; Decl. of Stefan Passantino Exs. G at 1, ECF No. 24-2 at 34; *id.* Ex. H at 1, ECF No. 24-2 at 41 (Defendant's SF-50 Notification of Personnel Action for Defendant's termination listing "effective date" as "12-19-2017"); *id.* Ex. J at 2, ECF No. 24-2 at 55.  There is no factual dispute on that point.[4]

Moreover, regardless of the actual termination date, Defendant was not justified in refusing to submit her Termination Report because of her claimed date discrepancy. Defendant knew of her obligation to file a report within 30 days of her termination and knew that she had not done so, confirming that her violation of EIGA is "knowing and willful." *See, e.g., United States v. Tarver*, 642 F. Supp. 1109, 1111-12 (D. Wyo. 1986) (EIGA's "knowing and willful" standard is met where

---

[4] The only support Defendant has presented for her alternate date are statements reported in her declaration provided in her opposition to Plaintiff's motion for summary judgment. *See* ECF No. 32-1 ¶¶ 2-9. But those statements predated the uncontroverted decision on December 19, 2017 to make her termination effective immediately. *See* Passantino Decl. ¶ 7. Moreover, it is well established that an unsupported declaration cannot create a genuine issue of material fact to defeat summary judgment. *See Dawson v. Reukauf*, 751 F. Supp. 2d 146, 150–51 (D.D.C. 2010) ("conclusory statements unsupported by any evidence in the record, aside from [a party's] own self-serving affidavits" and "mischaracteriz[ations of] evidence contained in the record" are insufficient to preclude summary judgment); Pl.'s Mot for Summ. J. at 20.

the defendant "refused to comply, although he possessed full knowledge of the Act."); *see also id.* at 1110, 1111 (awarding civil penalty to government in EIGA action filed after the defendant "submitted a financial statement [under threat of litigation] but refused to enter a consent decree or to pay a civil penalty").

## II.      Defendant's Lack of Diligence in Retrieving Her Personal Effects from the White House Does Not Excuse Her Willful Violation

Defendant's own failure to recover her personal effects from the White House does not excuse her failure to file her Termination Report; to the extent it is relevant at all, her dilatoriness is further evidence of a willful violation. *See* Pl.'s Mot. for Summ. J. at 29-32, ECF No. 24 at 36-39; Reply at 8-10, ECF No. 31 at 12-14. Pl's Opp. at 2-5. With the completion of discovery, the record as herein supplemented demonstrates that there are at least four independent bases for the Court to conclude that Defendant's failure to file her report was willful notwithstanding her claim about her personal effects: (1) Defendant's violation was complete for over a year before she even suggested that her personal effects were necessary to complete her Termination Report; (2) Defendant delayed collecting her personal effects after she first contended that her personal effects were necessary to complete her report; (3) Defendant waited two months (double the statutory limit to complete a Termination Report) after receiving her personal effects to submit an incomplete and deficient report; and (4) Defendant failed to correct her initial deficient submission for nearly two years after being informed it was deficient.

**1.      December 2017-May 2019: Defendant Does Not Contend that Her Personal Effects Have Anything to Do with Her Termination Report**. As discussed in Plaintiff's Motion for Summary Judgment, Defendant made no mention of her need for her personal effects to complete her Termination Report for more than a year after it was due, despite numerous contacts with the White House Counsel's Office about her Termination Report. *See* Pl.'s Mot for Summ. J

at 29; Mot. to Dismiss ¶ 14 & Ex. B (audio recording), ECF No. 5. Before May 6, 2019, Defendant's only expressed interest in obtaining the personal effects she left in the White House was to obtain wedding photos that she believed were among them. *See, e.g.*, ECF No. 24 at 20-21, 23 n.7. At the time, she claimed—contrary to her current representations—that "the only hold up" in completing her report was her dispute about her termination date. *See, e.g.*, Mot. to Dismiss ¶ 14 & Ex. B.  The recent discovery confirms that the only concern Defendant expressed about her personal effects before May 2019 related to her wedding pictures, and not her Termination Report. *See* Lynch Decl. Ex. D (January 23, 2018 email from Defendant to Jared Kushner and Ivanka Trump stating "[i]n those items are my wedding photo proofs and other personal items that I value").

In response to the Department's letter advising of its intent to bring this action unless Defendant agreed to contact the Department by May 6, 2019 to discuss resolving the matter without litigation, Defendant for the first time claimed that her personal effects were needed to complete her Termination Report, which by then was already a year late. Lynch Decl. ISO Pl.'s Statement re Discovery Disputes Ex. A ECF No. 41 Ex. A ("ECF 41-1 Ex. A") at 5 (April 11, 2019 Letter from DOJ to Defendant); *id.* at 6 (Defendant's May 6, 2019 response).

Thus, the undisputed record allows for only two possibilities: Either Defendant knowingly failed to inform the White House that she needed her personal effects to complete her Termination Report for over a year as they pleaded with her to complete the report—which itself would establish the willfulness of her failure to timely file—or there was never any connection between her failure to retrieve her personal effects from the White House and her failure to file her Termination Report, and her belated contention that the two were related was a *post hoc* explanation developed after being faced with the prospect of litigation. Neither helps Defendant.

**2.      May 2019-July 2019: Defendant Fails to Diligently Retrieve Her Personal**

6

**Effects after Belatedly Claiming Her Personal Effects Are Necessary to Submit Her Termination Report.** Recent discovery also independently establishes the willfulness of Defendant's failure to file her Termination Report between her first assertion that she needed her personal effects and her eventual retrieval of those items. Specifically, as further set forth below, when Defendant first claimed that she needed her personal effects, she was promptly informed that the White House would return her materials and provided a contact at the White House with whom she could directly coordinate her return.  But Defendant then waited for two months—more than twice the statutory deadline to submit a Termination Report in the first place—and the initiation of this litigation, to act on that information and retrieve her personal effects.

Defendant was first contacted by the Department of Justice about this matter in April 2019. Ashley Cheung, former trial counsel in this matter, emailed Defendant a letter on April 23, 2019, stating that this action had been authorized and that the Department intended to initiate litigation on or about May 27, 2019. ECF No. 41-1 Ex. A at 4-5.[5] The letter offered Defendant the opportunity to resolve the matter without litigation by contacting Ms. Cheung before May 6, 2019. *Id.* In response, Defendant emailed Ms. Cheung on May 6, 2019, the last possible date the Department provided to respond to the letter. In that email, Defendant claimed for the first time that "[m]uch of the information that I need to complete this termination report . . . is contained in" boxes of personal effects she had left at the White House. *Id.* at 6. At the time, Defendant's Termination Report was already more than 15 months late.

Ms. Cheung replied that she would look into the situation, and on May 10, she advised Defendant by email that the White House had located documents and intended to return them to Defendant. *Id.* at 8, 10. Ms. Cheung asked Defendant whether she would like to pick up the

---

[5] The entirety of Ms. Cheung's correspondence with Defendant and her counsel before the filing of this action is available at ECF No. 41-1 Ex. A.

documents or have them mailed to her, and asked Defendant to provide a mailing address if she chose the latter. *Id.* at 10.

Defendant waited five days before responding that she was copying her attorney concerning the return of her personal effects; later that day, Defendant's attorney asked about the volume of materials at issue. *Id.* at 13, 15. Ms. Cheung responded the next day, on May 16, 2019. *See id.* at 18. Ms. Cheung—who did not have the boxes in her possession, *see* Lynch Decl. Ex. E at 17:11-18:12—provided Defendant's counsel a point of contact at the White House Counsel's office with whom he could "deal directly regarding the return of Ms. Manigault's personal effects." ECF No. 41-1 Ex. A, at 18. Ms. Cheung further explained that the return of Defendant's personal effects was a separate issue from the potential litigation regarding Defendant's EIGA violation. *Id.*

Neither Defendant nor her attorney responded to Ms. Cheung or sought to coordinate the return of the boxes with the White House for over a month. During this time, Ms. Cheung repeatedly emailed Defendant's counsel to determine whether Defendant wished to resolve the matter without litigation. *See id.* at 22 (May 28, 2019 email); *id.* at 26 (June 4, 2019). In this correspondence, Ms. Cheung noted that "[i]f your client wishes to resolve this matter without litigation, we must hear from you no later than June 17." *Id.*

On June 17, 2019, the extended deadline for Defendant to avoid litigation, and over a month after Ms. Cheung provided Defendant's counsel with a contact to coordinate the return of her personal effects, Ms. Cheung wrote directly to Defendant, copying Defendant's counsel, after having received no response from him to two emails. *See id.* at 30. Ms. Cheung explained that she had made several attempts to contact Defendant's attorney and he had not responded, and asked Defendant to confirm that he remained her attorney. *Id.* Defendant's counsel replied that the scope of his representation was limited to the return of Defendant's personal effects and that he "hadn't received any information about the EIGA." *Id.* at 33. After Ms. Cheung responded, Defendant's

counsel replied "[a]re we getting the boxes or not? That seems to be the primary issue here." *Id.* at 41; *see id.* at 37. Ms. Cheung again forwarded her email of May 16 providing Defendant's counsel with a point of contact at the White House Counsel's Office with whom he could deal directly to obtain Defendant's personal effects, on which neither Defendant nor her counsel had acted in the intervening month. *Id.* at 45; *see id.* at 50.

Because Defendant was then unrepresented as to the EIGA claim, ECF No. 41-1 Ex. A at 33, Ms. Cheung wrote to Defendant again on June 18, 2019, offering her a further extension until June 21, 2019 to discuss resolving that claim without litigation. *Id.* at 54. Defendant did not reply, and this action was filed on June 25, 2019. *See* Compl., ECF No. 1.

In her deposition, Ms. Cheung succinctly summarized Defendant's and her counsel's lack of diligence in retrieving Defendant's personal effects:

> Q Prior to June 25, 2019, do you agree that Omarosa was diligent in attempting to obtain her boxes of information from the United States Government?
> A No.
> Q Why not?
> A Because I sent you the point of contact with whom you could deal directly regarding the return of her personal effects on May 16th; I did not receive a response. I sent a follow-up email to you on May 28th, 2019; I did not receive a response. I sent another follow-up email on June 4th, 2019, to you; I did not receive a response. I sent a follow-up email on June 17th to Ms. Manigault; I did not receive a response until June 17th.

> Lynch Decl. Ex. E (Cheung Dep. Tr. at 53:14-54:2).

Only after this litigation was filed did Defendant and her counsel reach out to the designated point of contact to coordinate the return of her personal effects; Defendant retrieved them shortly thereafter, on July 12, 2019. *See* Def's Statement of Material Facts ¶ 12, ECF No. 32 at 3; ECF 41-1 Ex. A at 18 (May 16, 2019 email from Ashley Cheung to John Phillips).

**3.      July 2019-September 2019: After Receiving Her Personal Effects, Defendant Submits a Deficient Report that Did Not Require Using Those Personal Effects.**  Two months after retrieving her personal effects, on September 11, 2019 (the same day she filed a motion to dismiss this action) Defendant first submited any report. *See* Def's Statement of Material Facts ¶ 6.

Defendant's September 2019 submission confirms that her personal effects had no connection to her failure to file her Termination Report and demonstrates Defendant's indifference to EIGA's requirements. *See* Jones Decl. Ex. C, ECF No. 24-3 at 127-52. Excluding the instructions, the form consists of 10 pages: one page of personal identification information and nine pages each containing one category of financial information to be provided, one of which is inapplicable to Termination Reports. *Id.* at 140-49; *see id.* at 133 (noting that Part 4 is inapplicable to Termination Reports). Of the eight required sections, Defendant left four blank. *Id.* at 141, 143, 147, 149. In the four sections for which she entered any information, the information she provided was available from sources other than the items she had left in the White House. *See id.* at 142 (listing two sources of Defendant's own assets, including a trust and a retirement account, whose value the trust administrator and her bank could have provided); *id.* at 145 (listing two sources of her husband's employment assets and retirement accounts which presumably he could have provided Defendant); *id.* at 146 (listing income from three television sources without providing any specific amounts); *id.* at 148 (listing Defendant's consolidated student loan debt that her loan servicer could have provided).

Although Defendant had her personal effects at the time she completed this form, Defendant has never identified a single document from among those effects that she needed to prepare her submission. The only support Defendant has placed in the record regarding the relevance of her personal effects is her assertion that "[t]he personal items included financial

10

records, travel documents, emails and other important correspondence related to my employment on the Trump campaign, transition, inauguration and my tenure in the White House." Newman Decl.¶ 23. Defendant has not identified or placed in the record any document among the items she retrieved that she actually used in preparing her September 2019 submission. Nor has she identified any documents that she expected to find among her personal effects necessary to prepare this report but ultimately did not find. When asked in discovery about such documents, Defendant identified only documents related to official travel, which is not even reported on the Termination Report. *See* Pl.'s Mot. for Summ. J. at 30-31, Jones Decl. ¶¶ 25-28; Decl. of Christopher Lynch ISO Pl's Mot for Summ J. Ex. E at 1-2, ECF No. 24-7 at 45-46. Thus, Defendant cannot demonstrate a genuine issue of material fact stemming from her belatedly retrieved personal effects.

**4.     September 2019-December 2020: After Being Promptly Advised that Her September 2019 Submission Was Deficient, Defendant Failed to Complete Her Report for an Additional 19 Months.** Finally, Defendant's conduct subsequent to her deficient September 2019 submission additionally and independently establishes her willfulness. After reviewing Defendant's September 2019 submission and determining it was deficient, representatives of the White House Counsel's Office reached out to Defendant's counsel promptly after he advised that he was authorized to discuss the submission with them. Jones Decl. ¶ 12. After Defendant's counsel failed to respond to multiple telephone messages, the White House Counsel's Office detailed the deficiencies by email. *Id.* ¶¶ 12-13 & Ex. D.

As outlined in Plaintiff's Motion for Summary Judgment, *see, e.g.*, Pl.'s Mot for Summ. J. at 6, 9-10, 17-19, 24, 31-32; Jones Decl. ¶¶ 8, 11-24, Defendant failed to correct the deficiencies or even access the report on line to realize that her claim that the online report had a wrong

termination date was incorrect.[6] Moreover, Defendant failed to communicate *at all* with the White House Counsel's Office between November 20, 2019 and May 23, 2020—a period during which Defendant failed to submit a revised report. Jones Decl. ¶¶ 14-20 & Ex. E; *see* Minute Orders of Dec. 6, 2019 & May 21, 2020.

After the Court lifted the stay of discovery in this litigation, Defendant's counsel emailed representatives of the Plaintiff on May 23, 2020 and June 10 and 11, 2020. Rather than address the deficiencies in Defendant's September 2019 submission, however, these communications raised again the incorrect claims about the online report containing the wrong termination date and asserted the new, unsupported claim that he "need[ed] to know what the[] [deficiencies in the September 2019 submission] are and have asked repeatedly and been ignored," Jones Decl. ¶ 21, a contention contrary to the November 2019 email from the White House Counsel's Office to which Defendant's counsel had responded. *See also* Decl. of Christopher Lynch in Support of Pl.'s Mot for Summ. J. Ex. C, ECF No. 24-7 at 37 (June 10, 2020 letter from Defendant's counsel incorrectly asserting that "we have never received any correspondence from the White House Ethics Office" and "we have not received a list of any deficiencies with her submitted termination report"); Jones Decl. Ex. F (June 11, 2020 email from Defendant's counsel to White House Ethics Counsel); *cf.* Jones Decl. Ex. D (Nov. 18, 2019 email enumerating deficiencies in Defendant's September 2019 submission).  In the June 11, 2020 email, Defendant's counsel set forth a list of specific unfounded assertions about what Defendant claimed was necessary to complete her report. *See* Jones Decl. Ex F. The White House Counsel's Office responded on June 18, 2020, addressing

---

[6] Defendant has claimed that the Termination Report available for her to prepare online contains an incorrect termination date. But Defendant has never substantiated this claim with competent evidence, because she cannot do so; indeed, it does not appear that Defendant has ever even accessed the online report. *See, e.g.,* Jones Decl. ¶ 8; Declaration of Diana Veilleux ¶ 8, ECF No. 24-5. The online Termination Report has *no* entry in the date field, as shown in the printed copy in the record. *See* Jones Decl. Ex. A, ECF No. 24-3 at 11.

each of those claims; neither Defendant nor her counsel responded to the White House Counsel's Office for another six months. *See* Jones Decl. ¶¶ 22-24 & Ex. F.

Throughout this period, Defendant remained under a statutory obligation to file her termination report, knew that her September 2019 submission was noncompliant, and undisputedly failed to provide a revised report. That, too, is sufficient to establish the willfulness of her violation. *See, e.g.*, *United States v. Gant*, 268 F. Supp. 2d 29, 33 (D.D.C. 2003) ("An individual knowingly and willfully fails to comply with the EIGA's filing requirements when that individual intentionally disregards the statute or is indifferent to its requirements.") (citations and internal quotation marks omitted).

Only after Plaintiff filed its motion for summary judgment in this case, on December 21, 2020, did Defendant submit a revised report. *See* Reply Decl. of Christopher M. Lynch in Supp. of Pl. United States of America's Mot. for Summ. J. Ex. A, ECF No. 31-1 at 4-23. On January 12, 2021, the White House Counsel's Office advised Defendant's counsel by email that there were numerous deficiencies in the December 2020 submission, enumerating each deficiency. *Id.* Ex. B, ECF No. 31-1 at 24-25. Only on April 21, 2021, five months later and after filing and fully briefing her own motion for summary judgment in this case—and 39 months after her Termination Report was due by law—did Defendant correct the deficiencies in her December 2020 submission and submit a Termination Report that could be certified by the White House Counsel's Office. Defendant has provided no explanation for her failure to submit a revised Termination Report between September 2019 and December 2020, nor has Defendant disputed that her September 2019 and December 2020 submissions were deficient.

In sum, Defendant was obligated by law to submit her Termination Report within 30 days of the termination of her government employment. 5 U.S.C. app 4 § 101(e). But Defendant:

    1)  waited over 16 months after her termination to claim that she needed her personal

effects from the White House to complete the report in the face of then-impending litigation;

2) waited two additional months to collect her personal effects, doing so only after litigation was filed;

3) waited an additional two months after retrieving her personal effects—on the day she moved to dismiss this action—to submit the facially deficient report that made no apparent use of them; and then

4) waited an additional 14 months after being advised of the deficiencies to provide yet another deficient report, on the deadline for her opposition to Plaintiff's motion for summary judgment in this case.

Throughout the 39-month period during which her Termination Report was overdue, Defendant undisputedly "possessed full knowledge of the [Ethics in Government] Act" and her obligations thereunder, but "refused to comply." *Tarver*, 642 F. Supp. at 1111-12; *see Gant*, 268 F. Supp. 2d at 33; 5 U.S.C. app. 4 § 101(e).

## <u>CONCLUSION</u>

For the reasons set forth above and in Plaintiff's prior summary judgment briefing, ECF Nos. 24, 31, & 33, the Court should: (a) grant Plaintiff's Motion for Summary Judgment; (b) deny Defendant's Motion for Summary Judgment; and (c) enter judgment for Plaintiff.

Dated: July 7, 2021                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       ALEXANDER K. HAAS
                                       Branch Director

                                       JACQUELINE COLEMAN SNEAD
                                       Assistant Branch Director


                                       */s/ Christopher M. Lynch*
                                       Christopher M. Lynch
                                       D.C. Bar # 1049152
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division,

14

Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4537
Fax: (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Attorneys for Plaintiff*