UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
        Plaintiff,                      Case No.:1:19-cv-1868 (RJL)
v.
OMAROSA MANIGAULT NEWMAN,
        Defendant.
_____/

## DEFENDANT, OMAROSA MANIGAULT NEWMAN'S RESPONSE TO PLAINTIFF'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT

### I. Introduction

On or about June 14, 2021, this honorable Court entered a Minute Order stating the following:

"Upon consideration of the parties' [40] [41] filings responsive to this Court's 04/29/2021 Minute Order on discovery in this matter, it is hereby ORDERED that discovery shall be STAYED pending resolution of the parties' cross-motions for summary judgment. It is further ORDERED that the parties shall each submit briefs of no more than 15 pages on or before 07/07/2021 to supplement the record regarding discovery conducted between March 2021 and May 2021. It is further ORDERED that the parties shall each submit reply briefs of no more than 10 pages on or before 07/21/2021. SO ORDERED"

In response, Plaintiff submitted a motion supplementing their motion for Summary Judgment, neglecting to mention the discovery conducted between March 2021 and May 2021 as ordered by this honorable Court. Defendant's response to that motion is as follows:

### II. Disputed Termination Date

In their Motion for Summary Judgment, Plaintiff argues whether Manigault Newman's termination was effective January 20, 2018, instead of December 19, 2017, is immaterial, because Defendant's Termination Report was not filed within thirty days of either date.

Defendant is intentionally attempting to mislead the Court from Defendant's core defense. Manigault Newman was impeded from completing her report when the United States government withheld her personal effects while simultaneously changing the date the reporting was to include.

1

This lack of cooperation and lack of communication abrogates willfulness and intent. Until the date was posted on the online form accurately, a date agreed to without political retaliation involved, it cannot be said that the date was irrelevant. It was a constant moving target-arbitrarily moved the last time because General Kelly simply did not like how she spoke to him. It is not irrelevant or immaterial and it is bad faith to continuously insinuate otherwise.

### III.     Defendant was not Given the Ability to Retrieve Her Personal Belongings

Plaintiff alleges Defendant's own failure to recover her personal effects from the White House does not excuse her failure to file her Termination Report. They claim her dilatoriness is further evidence of a willful violation.

Respectfully, this is absurd. Note, Manigault Newman was escorted off of White House grounds after her meeting in the situation room with General Kelly and was not granted permission or access to return. Thus, she was never afforded the opportunity to personally collect her personal items left in her office. Thereafter, the government engaged in a series of offers which always had conditions related to when and how she could retrieve her property.

Section 104(a) of the EIGA authorizes the Attorney General to bring a civil action in federal district court against any individual "who knowingly and willfully fails to file or report any information that such individual is required to report" under the EIGA. [5 U.S.C. app. 4 § 104(a)]. An individual knowingly and willfully fails to comply with the EIGA's filing requirements when that individual "intentionally disregards the statute or is indifferent to its requirements." *United States v. Tarver*, 642 F.Supp. 1109, 1111 (D.Wyo.1986); see also *United States v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir.1987) (defining "willfulness" for purposes of federal regulatory statutes as a disregard for the governing statute and an indifference to its requirements).

Early and often, Omarosa Manigault Newman requested her boxes. At one point, Stephan Passantino said he'd only give her boxes if she completed her report. On or about May 25, 2018, Stephan Passantino stated the following:

> "**SP:** Okay. And so, also…we've got some personal stuff of yours… Okay. Well, I will, I will just let them know that. I will find out what, as far as the Chief was concerned, what the final date was, and let you know…
> **OMN:** <u>So, are they holding up my items in exchange for that report? Is that what I'm hearing? Is that why my items…</u>
> **SP:** No, well. No. It's not as nefarious as that. It's just process that we have to do… I mean, at the end of the day, I've got two boxes of personal stuff. And, I've got your commission certificate. And, I want to, I just want to get this all wrapped up, so we can just trade whatever you have. Sounds like you don't have anything else.
> **OMN:** I don't.
> **SP:** Okay, yeah so, if we could just get this all done then we can figure out a time to get to you or somebody your stuff and your certificate.
> **OMN:** Yeah, I would like to get my personal items back…
> **SP:** Yeah, no, I've got 2 boxes of personal stuff and your certificate. So, we're all aligned to try to get this done. <u>Let me find out about what is the story on the dates and like I said, I'm just going to convey what I hear...</u>
> **OMN:** <u>So, as soon as that date is changed, I can complete the report and everything can kind of go from there.</u>
> **SP:** Right. And like I said, all I can promise is, I was there when we set the 20th. The only thing I can't guarantee is that subsequent to that, when we were together in the Situation Room, is something changed. But, I will report back whatever I hear. So, we will go from there. I'm going to type up an email right now, based on this conversation." Def. Mot. to Dismiss Corrected Complaint, Ex. B[1].

This conversation supports the claim that the United States attempted to weaponize this legislation after attempting to "trade" Manigault Newman's belongings in exchange for a completed termination report while also being indefinite about the termination date. It cannot go unnoticed that Defendant has requested the deposition of Mr. Passantino so that these issues may be explored in further detail. Yet, Plaintiff will not allow the deposition of Mr. Passantino despite

---

[1] Exhibit "B" is an electronically stored audio recording previously forwarded to this Honorable Court pursuant to Local Rule 5.4(e).

relying on his testimony in affidavit format. At all material times, this was theft, conversion, or minimally some aspect of wrongful taking of property which entirely abrogates willfulness and intent given the necessity of those boxes based on Manigault Newman's belief and the fact the boxes actually contained materials needed to complete this report. Although the boxes indeed contained financial records, as long as Omarosa Manigault Newman simply had a good faith belief they did and she needed them, the United States of America cannot in good faith claim that she was intentionally refusing to file. To the contrary, we even requested Plaintiff STAY THE PREMATURE LAWSUIT, GIVE HER BOXES, and Ms. Manigault Newman would file within 30 days of receipt. This was not deemed permissible and shows this was more than just fair litigation about a report.

It was not until July 12, 2019 when Manigault Newman's counsel personally went to the gates of the White House were some of her belongings returned. There, Defendant's counsel was presented with two boxes and one tube which were brought to the exterior gate of the White House.  The boxes retrieved from the White House contained Ms. Manigault Newman's financial records, bank statements, travel documents, tax returns, W-2's, emails and other important data required to fill out the requisite financial disclosure form. (Manigault Newman Decl. ¶ 23.) Ms. Manigault Newman has confirmed, under oath, items from these boxes were (1) perceived as necessary, (2) actually necessary, and (3) conveyed as necessary to Plaintiff. Id. This fact negates the "willful" element of the statute.

## IV.   Plaintiff is Attempting to Supplement Their Claim in this Motion

Plaintiff alleges that throughout the 39-month period during which her Termination Report was overdue, Defendant undisputedly "possessed full knowledge of the [Ethics in Government]

4

Act" and her obligations thereunder, but "refused to comply." Tarver, 642 F. Supp. at 1111-12; see Gant, 268 F. Supp. 2d at 33; 5 U.S.C. app. 4 § 101(e).

Note, this entire argument exceeds the scope of the Complaint and this Court's Order as the instructions were to supplement the record concerning discovery which transpired between March 2021 and May 2021. Making matters worse, The United States seems to want to unilaterally amend its argument from the one it made in its complaint. It cannot. At this time, Omarosa Manigault Newman has fully complied with reporting obligations. Plaintiff is attempting to move the goalposts to change the score. It is not only untrue but irrelevant to the matter at hand.

## V.  Conclusion

Manigault Newman has maintained that she needed her personal belongings to accurately complete the termination report and/ or needed to know the proper reporting period, which changed at least three times. Despite knowing this, the United States government has intentionally withheld Manigault Newman's belongs in effort to weaponize the statute in a manner that could only be interpreted as retaliation because she wrote a book about former President Trump. Former President Trump even bragged about suing Manigault Newman on the social media platform, Twitter. Additionally, Defendant's report was filed a short time after Defendant received her materials back from the White House, even though it filed this action before then. The Defendant has since amended her report again and has received no complaints or objections to it. Plaintiff cannot meet the requisite burden as a matter of law to show she refused to file willfully and intentionally. As such, Plaintiff's motion for summary judgment should be denied. The only material facts show Defendant was willfully attempting to comply.

As Defendant has argued in her own Motion for Summary Judgment, the core of section 101 of the EIGA is meant to penalize those who "knowingly" and "willfully" disregard the 30-day completion requirement. In this case of Manigault Newman, we see that Manigault Newman has attempted to constantly communicate with Plaintiff in order to obtain the information needed to resolve the report. Could she have done this better? Yes. However, so much of this matter was caught up in an adversarial fight at the hands of the President of the United States. Defendant was confronted with two serious impediments: (1) The electronic financial disclosure report sent to Defendant did not display the appropriate termination date and (2) The White House staff refused to relinquish possession of Defendant's personal belongings so that the report could be completed in a timely manner.

Additionally, Defendant has attempted to submit a completed report twice. Plaintiffs in this matter refuse to certify the termination report despite Defendant's good faith efforts to complete the report on two separate occasions. As such, Defendant's actions were not "willful" and cannot be seen as a violation of section 101 of the EIGA. Thus, Manigault Newman's motion for summary should be granted as it thoroughly outlines the interference that negated the "willful" element of the statute.

Plaintiff cannot use the Court's order concerning discovery to amend it claims against Defendant, Omarosa Manigault Newman. Actions such as this clearly exceed the scope of the Court's order and the Court should disregard all arguments made that are unrelated to the discovery conducted between March 2021 and May 2021.

Nevertheless, Plaintiff's summary judgment is not ripe, and was prematurely filed. This was an attempt by the Department of Justice to protect the Plaintiff and its agents from discovery. Defendant awaits discovery that is vital to her defense. Therefore, the granting summary judgment

in Plaintiff's favor would be inappropriate. Plaintiff has refused to cooperate with any and all discovery about (1) termination dates; (2) the return of Defendant's records; and (3) allowance of depositions of people who have first-hand knowledge about these matters (4) information concerning Defendant's affirmative defenses. Defendant has repeatedly requested deposition dates for witnesses and all have been delayed or denied. No dates have been given.

Per the Federal Rules of Civil Procedure, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26

During the deposition of Ashley Cheung, Defendant's counsel was met with obstructive objections that made the deposition remotely unusable. Counsel for Plaintiff attempted to over broadly apply this Court's order limiting that deposition in manner that resulted in Ms. Cheung ultimately only answering a few questions. When asking questions directly related to Manigault Newman's documents in the possession of White House Counsel Staff, Plaintiff's counsel objected. The objections were so excessive, basic foundation questions could not be asked. Again, we re-iterate, Manigault Newman is entitled to discovery if there any question about whether she violated the Ethics in Government Act. The obstructive tactics of the United States government is preventing Manigault Newman from preparing her defense.

Further, Scott Gast is identified as the White House personnel with the most knowledge about Manigault Newman's personal effects that were left in the White House upon her termination.

Specifically, Mr. Gast has personal knowledge as to the type of documents that were in the possession of the White House. This is essential to Ms. Manigault Newman's defense as she has continuously maintained that she needed the documents in the box to accurately complete the OGE Termination Report. We have asked for the deposition of Mr. Gast and have received no communication concerning setting that deposition.

Manigault Newman repeatedly requested discovery depositions in responses to the affidavits filed Stefan Passantino, David Jones, and Scott De La Vega in support of the United States' Motion for Summary Judgment. We requested to cross examine the sworn statements of these witnesses who filed affidavits to impeach their testimony. These witnesses would be used to establish that their actions and inactions prove Manigault Newman did not, and could not, exhibit the requisite intention not to file as she: (1) repeatedly requested a clarification of the date of her termination, which was ignored, (2) to requested possess of her boxes and the contents thereof (which included financial records), (3) for other information which was believed to be left in her office at the time she was terminated and escorted off the premises, (4) made requests for assistance from people related to her obligations and  (5) she was specifically told she would only receive her personal belongings (including financial records) ONLY IF AND WHEN she provided the subject report which needed those documents for completion thereof. Essentially, Manigault Newman was placed in an impossible situation. Manigault Newman must present testimony and evidence in her defense that is sufficient to show she did not meet the requisite standard of "knowingly" and "willful", thus this discovery is fundamental to her defense. Thus, summary judgment cannot be granted in favor of Plaintiff's without allowing Defendant the opportunity to complete the necessary discovery.

However, the record facts support Manigault Newman's Motion for Summary Judgment. She has proven her intent to file and an obstruction to filing by the United States of America government.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Christopher M. Lynch, Esq., Joseph H. Hunt, Esq., James J. Gilligan, Esq., Jacqueline Coleman Snead, Esq., United States Department of Justice Civil Division, Federal Programs Branch, 1100 L. Street, N.W., Washington, D.C. 20005, at Christopher.m.lynch@usdoj.gov; Jacqueline.Snead@usdoj.gov this 21ST day of July, 2021

                                                    Respectfully submitted,

                                                    Phillips and Hunt
/s/ John M. Phillips
JOHN M. PHILLIPS, ESQUIRE
DC Bar Number: 1632674
212 North Laura
Jacksonville, FL 32202
(904) 444-4444
Attorneys for Defendant
jmp@floridajustice.com
erica@floridajustice.com

9